No. 19-70022

In the

# United States Court of Appeals
## for the Fifth Circuit

RODNEY REED,

*Plaintiff-Appellant*,

v.

BRYAN GOERTZ,

*Defendant-Appellee.*

On Appeal from the United States District Court for the
Western District of Texas, No. 1:19-cv-794
Hon. Lee Yeakel, *United States District Judge*

## PLAINTIFF-APPELLANT RODNEY REED'S REPLY IN SUPPORT OF MOTION TO PERMIT SUPPLEMENTAL BRIEFING ON THE MERITS AND TO HOLD ORAL ARGUMENT

Cliff C. Gardner
Michelle L. Davis
Nicole A. DiSalvo
Gregory P. Ranzini
Peyton V. Carper
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
920 N. King St.
Wilmington, DE 19801

Barry C. Scheck
Jane Pucher
THE INNOCENCE PROJECT
40 Worth St., Ste. 701
New York, NY 10013

Parker Rider-Longmaid
  *Counsel of Record*
Hanaa Khan
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
parker.rider-longmaid@skadden.com

Andrew F. MacRae
MACRAE LAW FIRM PLLC
3267 Bee Cave Rd., Ste. 107, PMB 276
Austin, TX 78746

*Counsel for Plaintiff-Appellant Rodney Reed*

**PLAINTIFF-APPELLANT RODNEY REED'S REPLY IN SUPPORT OF MOTION TO PERMIT SUPPLEMENTAL BRIEFING ON THE MERITS AND TO HOLD ORAL ARGUMENT**

Reed's motion respectfully asks the Court to permit supplemental briefing and hold oral argument after this case returns from the Supreme Court in *Reed v. Goertz*, 143 S. Ct. 955 (2023). As the motion explains, this Court on remand must resolve the merits questions in Reed's 42 U.S.C. § 1983 challenge to Texas' postconviction DNA-testing law, Article 64 of the Texas Code of Criminal Procedure, as construed by the Texas Court of Criminal Appeals (CCA). Since briefing before this Court concluded in March 2020, the Supreme Court proceedings have sharpened the parties' merits arguments, and developments before the Texas courts have strengthened Reed's claims of innocence and reinforced the importance of this appeal. Reed respectfully submits that supplemental briefing and oral argument would promote fair process and assist the Court in resolving this case.

Goertz opposes briefing and argument, but his objections lack merit. Goertz's arguments that the constitutionality of Article 64 doesn't warrant further process rest on a misunderstanding of Reed's due-process challenge and conclusory and inaccurate statements about both the Supreme Court's decision and earlier unpublished decisions from panels of this Court. And

Goertz's arguments that this case isn't important enough for supplemental briefing and argument ignore both the mounting evidence of Reed's innocence since briefing concluded and the substantial expenditure of judicial resources on this case, including by this panel and nine Justices of the Supreme Court. The Court should permit briefing and argument.

**1.** Goertz first argues that "supplemental briefing following remand from the Supreme Court" isn't warranted because the example Reed provided (*Reagan National Advertising of Austin, Inc. v. City of Austin*, 64 F.4th 287 (5th Cir. 2023) (No. 19-50354)) "is inapposite." Opp. 2. Goertz's objection misses the point. The Court has discretion to permit supplemental briefing, and it frequently does so when the Supreme Court remands. *See, e.g., Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019) (No. 16-41674); *Brumfield v. Cain*, 808 F.3d 1041 (5th Cir. 2015) (No. 12-30256). That makes sense, because supplemental briefing allows the Court and the parties to focus on the remaining issues after Supreme Court review.

**2.    a.** Goertz contends that "[i]f the Supreme Court held [Reed] to a facial challenge, this Court must," too. Opp. 3. The Supreme Court did no such thing, but Goertz's unsupported assertion underscores why supple-

mental briefing would be helpful. Goertz has not explained why characterizing Reed's challenge as "facial" or "as applied" makes any difference. What *does* matter, and what Goertz ignores, are several aspects of Article 64 *as construed* by the CCA, as Reed explained before the Supreme Court. Reed Br. 1, 3-5, 14-16, 17-18, 20-22, 26-30, 36, 42-48, *Reed*, No. 21-442 (U.S.), *available on docket at* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/21-442.html; Reply 1-5, 7, 10-13, 16-22; Argument Tr. 32-34, https://www.supremecourt.gov/oral_arguments/argument_transcripts/2022/21-442_pnk0.pdf. The Supreme Court's response wasn't to classify Reed's challenge as "facial" or "as-applied"—in fact, the Court's opinion mentioned neither term. Instead, the Court simply acknowledged Reed's argument that Article 64's "stringent chain-of-custody requirement was unconstitutional and in effect foreclosed DNA testing for individuals convicted before 'rules governing the State's handling and storage of evidence were put in place.'" *Reed*, 143 S. Ct. at 960 (citation omitted). Supplemental briefing and oral argument would help refocus this Court's merits inquiry on the issue that matters—whether Article 64, as authoritatively construed by the CCA, is unconstitutional. *See infra* pp. 4-9.

**b.**    Relatedly, Goertz claims that the Court shouldn't hold oral argument because it has "addressed and upheld" Article 64 "on numerous occasions." Opp. 4-5. That unexplained assertion, accompanied by citations to two unpublished decisions that do not address Reed's challenge, again highlights why further briefing and argument would assist the Court.

*i.*    To understand why, start with what Reed *is* claiming, as discussed before the Supreme Court. In refuting Goertz's arguments that the *Rooker-Feldman* doctrine barred federal court jurisdiction, Reed explained his allegations that the chain-of-custody, Tex. Code Crim. Proc. art. 64.03(a)(1)(A)(ii), exculpatory-results, *id.* art 64.03(a)(2)(A), and unreasonable-delay requirements, *id.* art. 64.03(a)(2)(B), as construed by the CCA, violate due process. *See* Reed Br. 41-42, *Reed*, No. 21-442 (U.S.); Argument Tr. 19-21 (colloquy between Justice Barrett and counsel for Reed).

*First*, the non-contamination requirement the CCA grafted onto the chain-of-custody element violates due process because it turns the state's promise of postconviction relief through DNA testing into an illusory promise based on the state's own handling of crime-scene evidence. *See* Reed Br. 41, *Reed*, No. 21-442 (U.S.). The due-process guarantee requires states to abide by the promises they make to criminal defendants. *See, e.g., Doyle v.*

*Ohio*, 426 U.S. 610, 619-20 (1976) (silence after *Miranda* warnings cannot be used to impeach trial testimony); *Santobello v. New York*, 404 U.S. 257, 261-62 (1971) (state must honor promises made during plea negotiations); *Raley v. Ohio*, 360 U.S. 423, 437-39 (1959) (exercise of the promised right against self-incrimination cannot give rise to contempt). And Texas law makes two promises relevant here: prisoners can prove their innocence based on newly discovered evidence, *see* Tex. Code Crim. Proc. art. 11.071(5)(a)(1), and prisoners can obtain DNA testing under Article 64 if, among other things, the evidence sought to be tested has been subjected to a sufficient chain of custody, *id.* art. 64.03(a)(1)(A)(ii).

But the non-contamination requirement reneges on those promises for prisoners, like Reed, who were convicted before the state adopted rules governing the handling and storage of evidence. For those prisoners, the non-contamination requirement makes Article 64 "fundamentally inadequate to vindicate" the defendant's state-created liberty interest in proving his innocence. *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 69 (2009). The state—not the defendant—is responsible for preserving crime-scene evidence, and for a capital defendant that obligation persists until the defendant dies or is released on parole. Tex. Code Crim. Proc. art.

38.43(b), (c)(2)(A). Thus, alleged contamination is the *state's* responsibility, and it is fundamentally unfair to hold it against the prisoner. Indeed, the non-contamination requirement would allow Texas to prevent any prisoner from ever obtaining postconviction DNA testing simply by improperly handling the evidence. Br. of Eight Retired Judges 23, *Reed*, No. 21-442 (U.S.). It makes no sense to "place upon the defendant the burden of proving [the evidence's] history while it is held in government custody," *United States v. Fasano*, 577 F.3d 572, 577 (5th Cir. 2009), and the unfairness inherent in doing so violates due process. As a district court reasoned in finding another aspect of Article 64 unconstitutional, "[d]ue process does not countenance procedural sleight of hand whereby a state extends a right with one hand and then takes it away with another. To do so renders meaningless an express right and transgresses a principle of fundamental fairness." *Gutierrez v. Saenz*, 565 F. Supp. 3d 892, 911 (S.D. Tex. 2021), *appeal pending*, No. 21-70009 (5th Cir.).

What makes the broken promise particularly unfair is that the non-contamination requirement imposes a greater chain-of-custody burden on litigants seeking DNA testing than the burden prosecutors face when they seek to introduce evidence at trial. A prosecutor need only "produce evidence sufficient to support a finding that the item is what [he] claims it is."

Tex. R. Evid. 901(a); *see Dossett v. State*, 216 S.W.3d 7, 20-22 (Tex. App. 2006) (possibility that evidence had been contaminated was insufficient to exclude the evidence on chain-of-custody grounds). That's why this Court refused to interpret the federal DNA-testing statute, 18 U.S.C. § 3600(a)(4), to contain a non-contamination requirement. *See Fasano*, 577 F.3d at 576 (federal statute doesn't "impose a more exacting standard for a showing of the chain of custody … than would be demanded in a trial itself").

In opposing supplemental briefing and oral argument, Goertz says that "no further discussion of evidence or factual developments is necessary or permissible." Opp. 3. But that's wrong, because information about DNA testing capabilities, *see* Mot. 4; Br. of Chase Baumgartner, *Reed*, No. 21-442 (U.S.), is relevant to whether the non-contamination requirement is fair. Because DNA testing can yield probative information even where crime-scene evidence was handled before adoption of storage and handling protocols, it's hard to imagine how letting prosecutors use such evidence but not prisoners comports with due process.

*Second*, Article 64's exculpatory-results requirement, as authoritatively construed by the CCA, violates due process because it requires courts to ig-

nore evidence inculpating third parties when analyzing whether exculpa-

tory DNA results would have resulted in a conviction had they been availa-

ble at trial. Reed Br. 41, *Reed*, No. 21-442 (U.S.). That rule deprives prisoners

of "a fair opportunity" to prove their innocence. *Chambers v. Mississippi*, 410

U.S. 284, 294 (1973). Similarly, the well-established postconviction rule for

assessing prejudice from constitutional violations requires considering "the

record as a whole." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). *Cf. Strick-*

*land v. Washington*, 466 U.S. 668, 695 (1984) (courts must consider "the totality

of the evidence" in assessing prejudice from defense counsel's deficient per-

formance). Ignoring exculpatory evidence—as Article 64 requires—is both

irrational and fundamentally unfair.

*Finally*, Article 64's requirement that the testing request not be for the

purpose of unreasonable delay also violates due process, because it makes

Article 64 fundamentally inadequate to vindicate a defendant's liberty inter-

est in proving his innocence by newly discovered evidence. For one thing,

the requirement permits a finding that a prisoner requested DNA testing for

an improper purpose just because he previously litigated his innocence

based on other evidence. *E.g.*, *Reed v. State*, 541 S.W.3d 759, 763-64, 777-79

(Tex. Crim. App. 2017). For another, it imposes an unconstitutionally unfair

hindsight requirement by allowing later amendments to Article 64 to support a finding that a prisoner should have known earlier that a particular kind of testing was available. Reed Br. 41-42, *Reed*, No. 21-442 (U.S.). That construction punishes prisoners for using postconviction procedures as they are intended—to seek relief from wrongful convictions. The unreasonable-delay requirement thus overrides the rest of Article 64, unjustly gatekeeping DNA-testing for those most likely to benefit from it.

*ii.* Now consider the unpublished decisions Goertz says (Opp. 4-5) support his merits position and foreclose supplemental briefing and oral argument, *Pruett v. Choate*, 711 F. App'x 203, 206-07 (5th Cir. 2017), and *Garcia v. Castillo*, 431 F. App'x 350, 353 (5th Cir. 2011) (per curiam). Neither *Pruett* nor *Garcia* addressed, much less rejected, challenges like Reed's to the non-contamination requirement, the exculpatory-results requirement, or the unreasonable-delay rule. Instead, the panel in *Pruett* rejected the argument that the factual finding of contamination in Pruett's case was unsupported and barred by res judicata, Opening Br. 15-17, 22-23, 25-26, *Pruett*, No. 17-70021 (5th Cir.); *see Pruett v. State*, No. AP-77,065, 2017 WL 1245431, at *11-12 (Tex. Crim. App. April 5, 2017), and the panel in *Garcia* merely held that "[u]ncontested evidence in the record" supported the district court's decision not to

permit DNA testing, *Garcia*, 431 F. App'x at 354. Neither unpublished decision supports Goertz's arguments.

**3.**     Goertz next urges the Court to deny supplemental briefing because Reed's case "is no more important today than it was three years ago." Opp. 3-4. That assertion ignores the evidence of innocence that has emerged since briefing before this Court ended. Contrary to Goertz's suggestion, the accumulating evidence of innocence warrants more process, not less.

**a.**     Recall that Reed's defense is that he and Stacey Stites, the victim, were having a consensual affair, and that somebody else killed Stites. In 2021, several witnesses testified at a state-court habeas hearing that Reed and Stites knew each other and were intimately involved around the time of her death. Reporter's Record (RR) vol. 3, 138:24-139:16, 159:10-25, *Ex parte Reed*, No. 8,701 (21st Dist. Ct. 2021); *id.* vol. 4, 17:2-23, 35:3-19, 278:16-22; *id.* vol. 5, 12:23-13:11; *id.* vol. 9, 109:2-16. This testimony undermines the state's theory that, because Reed and Stites were strangers, they could not have had consensual sex and so Reed must have sexually assaulted Stites. *See Reed v. Texas*, 140 S. Ct. 686, 686-87 (2020) (statement of Sotomayor, J., respecting the denial of certiorari).

**b.** At the same hearing, witnesses also testified that Stites and Jimmy Fennell—her fiancé and the last person known to have seen her alive—had a tumultuous, violent relationship. RR vol. 2, 308:22-309:12, *Ex parte Reed*, No. 8,701 (21st Dist. Ct. 2021); *id.* vol. 3, 179:17-180:20, 181:15-185:13; *id.* vol. 4, 16:1-17:1, 168:8-170:23, 194:17-195:12; *id.* vol. 5, 10:20-12:12, 29:22-30:3. At least three witnesses also testified that Fennell knew Stites was having an affair with a Black man, *id.* vol. 2, 276:10-22; *id.* vol. 3, 47:16-48:19, 115:15-116:10, and others yet testified that Fennell made disparaging comments about Stites at her funeral, *id.* vol. 3, 13:3-16; *id.* vol. 4 234:16-235:1. This evidence tends to inculpate Fennell, who was an early suspect in her murder. *Ex parte Reed*, 271 S.W.3d 698, 708 (Tex. Crim. App. 2008).

**c.** Reed's and the state's experts agreed at the hearing that the state's trial experts' testimony that spermatozoa can only remain intact for 24-26 hours was untrue. RR vol. 2, 133:25-134:2, *Ex parte Reed*, No. 8,701 (21st Dist. Ct. 2021); *id.* vol. 4, 88:17-89:10; *id.* vol. 8, 116:24-117:9, 120:8-122:16, 209:20-24, 280:14-21. The expert consensus undermines the state's theory that the sperm recovered from Stites's body was deposited no earlier than the night before her death. *Reed*, 140 S. Ct. at 687 (statement of Sotomayor, J., respecting the denial of certiorari).

**d.**     Reed also introduced expert testimony to show that the state's time-of-death window is at odds with post-mortem changes to Stites's body. RR vol. 8, 69:13-18, 70:22-71:2, *Ex parte Reed*, No. 8,701 (21st Dist. Ct. 2021). The state's experts couldn't offer any medical evidence to support the window, either, *id.* at 206:3-22, 298:19-299:10, further undermining the state's theory that Reed killed Stites after she'd left the home she shared with Fennell around 3 a.m., *Reed*, 140 S. Ct. at 687 (statement of Sotomayor, J., respecting the denial of certiorari).

This new evidence of innocence is significant, and warrants more process and closer study—not, as Goertz would have it, less—before the Court holds that it is fair to deny Reed DNA testing of key crime-scene evidence, including the murder weapon.

**4.**     Finally, Goertz contends that "obtaining new pro bono counsel doesn't warrant extra briefing either, no matter how successful they might be," and that this Court shouldn't hold oral argument because it didn't hold argument when it decided this appeal on timeliness grounds. Opp. 4-5. It's worth taking a step back. This capital case, with ever-mounting evidence of actual innocence, returns to this Court on remand after the Supreme Court held oral argument and reversed on the timeliness ground that Goertz found

unworthy of argument. Perhaps Goertz is concerned that further briefing and argument will undermine his position. But that rationale doesn't help this Court decide the important constitutional questions before it. Summary disposition isn't the answer. Reed respectfully submits that supplemental briefing and oral argument will help the Court reach the correct result.

*     *     *

Reed respectfully proposes that he submit a supplemental brief of up to 8,000 words within 40 days from the Supreme Court's issuance of a certified copy of its judgment, *see* Sup. Ct. R. 45.3; Mot. 2; that Goertz submit a supplemental brief of up to 8,000 words within 30 days of the filing of Reed's supplemental brief; and that Reed submit a supplemental reply brief of up to 4,000 words within 21 days of the filing of Goertz's supplemental brief. The case could then be set for oral argument.

Dated: May 19, 2023

Respectfully submitted,

*/s/ Parker Rider-Longmaid*

Cliff Gardner
Michelle L. Davis
Nicole A. DiSalvo
Gregory P. Ranzini
Peyton V. Carper
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
920 N. King St.
Wilmington, DE 19801

Barry C. Scheck
Jane Pucher
THE INNOCENCE PROJECT
40 Worth St., Ste. 701
New York, NY 10013

Parker Rider-Longmaid
  *Counsel of Record*
Hanaa Khan
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
parker.rider-longmaid@skadden.com

Andrew F. MacRae
MACRAE LAW FIRM PLLC
3267 Bee Cave Rd., Ste. 107, PMB 276
Austin, TX 7846

*Counsel for Plaintiff-Appellant Rodney Reed*

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because, as calculated by Microsoft Word, it contains 2,593 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f), and (2) this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.


Dated: May 19, 2023                    */s/ Parker Rider-Longmaid*
                                       Parker Rider-Longmaid

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, I electronically filed the foregoing motion and declaration with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: May 19, 2023                      */s/ Parker Rider-Longmaid*
                                         Parker Rider-Longmaid