No. 19-70022

IN THE

# United States Court of Appeals for the Fifth Circuit

RODNEY REED,

*Plaintiff–Appellant,*

v.

BRYAN GOERTZ, Bastrop County District Attorney;
STEVE MCCRAW, Texas Department of Public Safety;
SARA LOUCKS, Bastrop County District Clerk;
MAURICE COOK, Bastrop County Sheriff,

*Defendants–Appellees.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division,
Cause No. 1:19-CV-0794-LY

## SUPPLEMENTAL APPELLEE'S BRIEF

ANGELA COLMENERO
Provisional Attorney General of
Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

MATTHEW OTTOWAY
Assistant Attorney General
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
matthew.ottoway@oag.texas.gov

*Counsel for Defendant–Appellee Goertz*

## CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Defendant–Appellee, as a governmental party, need not furnish a certificate of interested persons.

<div style="margin-left:40%">

s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General

*Counsel for Defendant–Appellee Goertz*

</div>

## STATEMENT REGARDING ORAL ARGUMENT

The parties' briefs—both before and after remand—adequately lay out the facts and legal arguments, and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ..................................ii

TABLE OF CONTENTS ....................................................... iii

TABLE OF AUTHORITIES................................................... v

INTRODUCTION................................................................ 1

STATEMENT OF JURISDICTION.......................................... 2

STATEMENT OF THE ISSUE.............................................. 2

STATEMENT OF THE CASE ............................................... 2

SUMMARY OF THE ARGUMENT ....................................... 3

ARGUMENT ..................................................................... 4

I.    Standard of Review for Dismissal on the Pleadings ..................... 4

II.   The District Court's Conclusion That Reed Failed to State a
      Claim upon Which Relief Could Be Granted Is Correct and
      Should Be Affirmed ............................................................ 5

      A.    Requiring an adequate chain of custody before
            permitting postconviction DNA testing is not
            fundamentally unfair ........................................... 6

            1.    Reed has forfeited his new arguments .......................... 6

            2.    Reed fails to show fundamental unfairness ................. 7

      B.    A demonstration of materiality before granting
            postconviction DNA testing is constitutional ..................... 18

      C.    Use of time limitations in a postconviction DNA testing
            scheme does not offend fundamental fairness..................... 26

            1.    Reed has once again forfeited his new arguments ...... 26

2.    Imposing time limitations on postconviction DNA testing does not violate due process ............................27

CONCLUSION ...................................................................... 30

CERTIFICATE OF SERVICE .................................................. 31

CERTIFICATE OF COMPLIANCE ......................................... 31

ELECTRONIC CASE FILING CERTIFICATIONS ................................ 32

# TABLE OF AUTHORITIES

## Cases

*Alvarez v. Att'y Gen. for Fla.*,
 679 F.3d 1257 (11th Cir. 2012) ............................................................ 25

*Ams. for Prosperity Found. v. Bonta*,
 141 S. Ct. 2373 (2021) ........................................................ 11, 12, 13, 28

*Anderson v. State*,
 831 A.2d 858 (Del. 2003) ...................................................................... 23

*Arizona v. Youngblood*,
 488 U.S. 51 (1988) ................................................................................ 15

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................ 4, 5

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................ 4, 5

*Bender v. Williamsport Area Sch. Dist.*,
 475 U.S. 534, 541 (1986) ........................................................................ 2

*Cookson v. State*,
 17 A.3d 1208 (Me. 2011).......................................................................17

*Cromartie v. Shealy*,
 941 F.3d 1244 (11th Cir. 2019) ....................................... 19, 23, 24, 28

*Cullen v. Pinholster*,
 563 U.S. 170 (2011) ............................................................................. 22

*Davis v. State*,
 992 S.W.2d 8 (Tex. App.—Houston [1st Dist.] 1996) ......................... 13

*Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*,
 557 U.S. 52 (2009) ....................................................................... *passim*

*Engle v. Isaac*,
 456 U.S. 107 (1982) ............................................................................... 8

*Ex parte Reed*,
 670 S.W.3d 689 (Tex. Crim. App. 2023)........................................... 3, 25

*Ex parte Reed*,
 2023 WL 4234348 (Tex. Crim. App. June 28, 82023)............................ 3

*Garcia v. Castillo,*
431 F. App'x 350 (5th Cir. 2011) .............................................. 6

*Gregory v. Thaler,*
601 F.3d 347 (5th Cir. 2010) ................................................. 24

*Harrington v. Richter,*
562 U.S. 86 (2011) ............................................................ 14

*Holberg v. State,*
425 S.W.3d 282 (Tex. Crim. App. 2014) ............................... 18

*Hooper v. Brnovich,*
56 F.4th 619 (9th Cir. 2022) ........................................... 12, 13

*House v. Bell,*
547 U.S. 518 (2006) .......................................................... 21

*McKithen v. Brown,*
626 F.3d 143 (2d Cir. 2010) ............................................... 19

*Medina v. California,*
505 U.S. 437 (1992) ....................................................... 5, 27

*Meinhard v. State,*
371 P.3d 37 (Utah 2016) ................................................... 23

*Murray v. Giarratano,*
492 U.S. 1 (1989) ............................................................. 21

*Osborne v. Dist. Attorney's Office for the Third Judicial Dist.,*
521 F.3d 1118 (9th Cir. 2008) ....................................... 21, 27

*Pennsylvania v. Finley,*
481 U.S. 551 (1987) .......................................................... 21

*Pruett v. Choate,*
711 F. App'x 203 (5th Cir. 2017) ...................................... 7, 8

*Reed v. Goertz,*
598 U.S. 230 (2023) ........................................................... 2

*Reed v. Goertz,*
995 F.3d 425 (5th Cir. 2021) ............................................... 2

*Reed v. State,*
541 S.W.3d 759 (Tex. Crim. App. 2017)................................. *passim*

*Rivera v. Illinois*,
   556 U.S. 148 (2009) ................................................................. 8

*Rollins v. Home Depot USA*,
   8 F.4th 393 (5th Cir. 2021).......................................................... 7

*Ryan v. Gonzales*,
   568 U.S. 57 (2013) ................................................................... 22

*Schlup v. Delo*,
   513 U.S. 298 (1995) ................................................................... 9

*Skinner v. Switzer*,
   562 U.S. 521 (2011) .............................................................. 6, 10

*Smith v. Phillips*,
   455 U.S. 209 (1982) ................................................................. 22

*Sossamon v. Lone Star State of Tex.*,
   560 F.3d 316 (5th Cir. 2009) .................................................... 14

*State v. Swearingen*,
   424 S.W.3d 32 (Tex. Crim. App. 2014) .................................... 20

*Tarver v. Kunzweiler*,
   2020 WL 6050572 (N.D. Okla. Oct. 13, 2020) ....................... 23

*Total Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n*,
   859 F.3d 325 (5th Cir. 2017) ..................................................... 4

*Trevino v. Thaler*,
   569 U.S. 413 (2013) ................................................................. 22

*United States v. Green*,
   882 F.2d 999 (5th Cir. 1989) ................................................... 24

*United States v. Salerno*,
   481 U.S. 739 (1987) ................................................................. 11

*United States v. Sipe*,
   388 F.3d 471 (5th Cir. 2004) ................................................... 24

*Wade v. Monroe Cty. Dist. Att'y*,
   800 F. App'x 114 (3d Cir. 2020) ........................................ 12, 13

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) ................................................................. 11

**Statutes**

18 U.S.C. § 3600(a)(10)(B)................................................................27

18 U.S.C. § 3600(a)(4)....................................................................8

42 Pa. Cons. Stat. § 9543.1(d)(1)(ii) ...................................8

42 U.S.C. § 1983 ...............................................................................1

Cal. Penal Code § 1405(g)(2) ....................................................8

Fla. Stat. § 925.11(f)(2)................................................................8

Tex. Code Crim. Proc. art. 38.43(g)......................................15

Tex. Code Crim. Proc. art. 64.03(a)(1)(A)(ii)....................9, 16

Tex. Code Crim. Proc. art. 64.03(a)(2)(A) .........................18

Tex. Code Crim. Proc. art. 64.03(a)(2)(B) .........................27

**Rules & Regulations**

Tex. R. Evid. 901 ............................................................................13

**Treatises**

23 C.J.S. Criminal Procedure § 1150 (2023)............................9

## INTRODUCTION

Plaintiff–Appellant Rodney Reed, a Texas inmate, was convicted and sentenced to death in 1998 for the kidnapping, sexual assault, and murder of Stacey Stites. In 2014, he moved for postconviction DNA testing in state court—months after the denial of federal habeas relief was effectively affirmed by this Court and on the day he was set for execution (a setting that was later stayed). The trial court denied the request, and the Texas Court of Criminal Appeals (CCA) affirmed.

More than two years later, and after Reed was set for execution a second time (again, later stayed), he filed an action pursuant to 42 U.S.C. § 1983, purporting to challenge Chapter 64 of the Code of Criminal Procedure, Texas's postconviction DNA testing scheme. The district court dismissed Reed's suit for failing to state a claim for relief which could be granted.

On appeal, this Court affirmed on the alternative ground that Reed's suit was untimely, but the Supreme Court disagreed and reversed. On remand, Reed repeats his arguments that Chapter 64 violates due process. It doesn't, and the Court should again affirm the lower court's dismissal.

1

## STATEMENT OF JURISDICTION

Defendant–Appellee Goertz does not believe that the district court possessed subject matter jurisdiction over the action, so this Court does not either, at least to the merits of the claims. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Goertz acknowledges, however, that both this Court and the Supreme Court have found otherwise. *Reed v. Goertz*, 598 U.S. 230, 234–35 (2023); *Reed v. Goertz*, 995 F.3d 425, 429–30 (5th Cir. 2021), *rev'd*, 598 U.S. 230 (2023).

## STATEMENT OF THE ISSUE

Whether the district court properly dismissed Reed's complaint for failing to state a claim upon which relief could be granted.

## STATEMENT OF THE CASE

Following this Court's decision that Reed's complaint was untimely, the Supreme Court found otherwise, reversed, and remanded.[1] *Reed*, 598 U.S. at 235. A couple months later, the CCA issued an exhaustive[2]

---

[1]     Both Goertz and the Court have previously laid out the procedural history of this case. Appellee's Br. 2–8, ECF No. 38; *Reed*, 995 F.3d at 427–29. Because this is a supplemental brief, Goertz will only discuss developments that have happened since the Court last ruled in this case. Goertz continues to rely on his previously filed appellee brief and does not waive any argument previously asserted.

[2]     The slip opinion came in at 129 pages. *Ex parte Reed*, No. WR-50,961-10, slip op. at 1–129 (Tex. Crim. App. June 28, 2023).

opinion, arising from Reed's tenth state habeas application, denying his claims of procedural and substantive innocence, suppression of evidence, and falsity. *Ex parte Reed*, 670 S.W.3d 689, 699–769 (Tex. Crim. App. 2023). His eleventh state habeas application, filed after this Court found Reed's suit untimely, was dismissed by the CCA as abusive. *Ex parte Reed*, No. WR-50,961-11, 2023 WL 4234348, at *1–8 (Tex. Crim. App. June 28, 2023).

On remand, Reed requested the ability to file supplemental briefing, Mot. Permit Suppl. Br. 1–7, ECF No. 75, which the Court permitted, Order 1, ECF No. 100-2. Reed has now filed his supplemental brief. Pl. Suppl. Br. 1–39, ECF No. 103. Goertz responds below.

## SUMMARY OF THE ARGUMENT

The district court properly dismissed Reed's complaint because he failed to identify any colorable or cognizable claim for relief. Even accepting Reed's allegations as true, he failed to adequately allege that the Chapter 64 was fundamentally unfair.[3] The lower court's dismissal should be affirmed.

---

[3]    In the lower court, Reed alleged that the denial of DNA testing under Chapter 64 denied him access to the courts (claim two), constituted cruel and unusual punishment (claim three), denied him the opportunity to prove his innocence (claim four), and violated the Texas Constitution (claim five).

# ARGUMENT

## I.     Standard of Review for Dismissal on the Pleadings

The dismissal of a complaint on the pleadings is reviewed de novo, "applying the same standard as the district court." *See Total Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n*, 859 F.3d 325, 332 (5th Cir. 2017). To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the complaint need not contain "'detailed factual allegations,'" it must provide more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

---

ROA.189-92. Reed's supplemental brief is limited to his due process allegation (claim one), so Goertz likewise limits his discussion as well.

'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## II. The District Court's Conclusion That Reed Failed to State a Claim upon Which Relief Could Be Granted Is Correct and Should Be Affirmed.

Convicted individuals have no substantive constitutional right to postconviction DNA testing, but if a State provides access, the procedures must satisfy procedural due process. *See Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69, 72–74 (2009). However, a "criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id.* at 68. Thus, a State "has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* at 69.

To demonstrate constitutional infirmity, a convicted individual must show that the postconviction procedures "are fundamentally inadequate to vindicate the substantive rights provided" such that the procedures "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 446 (1992)). *Osborne* "left slim room for the prisoner to show that the governing state law denies him procedural due process." *Skinner v. Switzer*, 562 U.S. 521, 525

5

(2011); *see Garcia v. Castillo*, 431 F. App'x 350, 353 (5th Cir. 2011) (unpublished).

### A. Requiring an adequate chain of custody before permitting postconviction DNA testing is not fundamentally unfair.

Reed first argues that Chapter 64's chain of custody requirement, which he calls an "extratextual non-contamination requirement," violates due process because it "(a) breaks promises Texas postconviction law makes to prisoners seeking to prove their innocence; (b) ignores reliability concerns produced by the prosecution; and (c) arbitrarily applies a different standard to inmates and prosecutors." Pl. Suppl. Br. 20; *see* Pl. Suppl. Br. 20–24, 32–34. He's wrong.

### 1. Reed has forfeited his new arguments.

Initially, Reed has forfeited his present chain-of-custody arguments because they are raised for the first time on appeal. ROA.184-89. In the court below, as it concerns his "extratextual non-contamination" complaint, Reed asserted that the CCA had a "flawed construction of the chain of custody requirement of [Chapter] 64," resulting in the denial of postconviction DNA testing for certain evidence, because it "ignored the unrebutted testimony of [his] experts that the potential additional DNA [from ungloved trial participants who handled the evidence] did not

preclude probative results, and such evidence could still be successfully tested." ROA.186. Thus, Reed argued, the "failure to appropriately apply the chain of custody requirement imposed by [Chapter] 64" was fundamentally unfair. ROA.186.

"A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal[.]" *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). That is what happened here because Reed, in his due process claim, did not argue that Chapter 64's chain-of-custody requirement was fundamentally unfair based on promises to litigate innocence, on the fact that inmates are not evidence custodians, and that prosecutors face a lower chain-of-custody burden at trial. There is "no principled basis for addressing [Reed's] forfeited argument[s] here." *Id.* at 398. Accordingly, they should not be considered.

### 2.    Reed fails to show fundamental unfairness.

In the court below, Reed simply argued "as to why the []CCA was incorrect in its application of Chapter 64[.]" *Pruett v. Choate*, 711 F. App'x 203, 206 (5th Cir. 2017) (unpublished). But this is not the same as proving that Chapter 64, or the CCA's interpretation of it, "'offends some principle of justice so rooted in the traditions and conscience of our people

as to be ranked as fundamental.'" *Id.* (quoting *Osborne*, 557 U.S. at 69). Here, "the []CCA carefully considered each of [Reed's] contentions as to Chapter 64; it reviewed the evidence with due diligence, then found that [Reed] was not entitled to . . . relief under Chapter 64." *Id.* at 206–07. Reed's complaint "boil[s] down to the bare claim that the []CCA misapplied Texas law[.]" *Id.* at 207. But a "'mere error of state law,' [the Supreme Court] ha[s] noted, 'is not a denial of due process.'" *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) (quoting *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982)). Hence, what Reed pled in the district court does not demonstrate a violation of due process. The same is true even considering his new arguments on appeal in the alternative.

Due process undoubtedly permits the States to impose restrictions on access to postconviction DNA testing, *see Osborne*, 557 U.S. at 69–70, and a chain-of-custody requirement falls within those broad bounds. The federal scheme, which is the "model for how States ought to handle the issue" of postconviction DNA testing, *id.* at 63, has one, 18 U.S.C. § 3600(a)(4), and so do many other state schemes, *see, e.g.*, Cal. Penal Code § 1405(g)(2); Fla. Stat. § 925.11(f)(2); 42 Pa. Cons. Stat. § 9543.1(d)(1)(ii). There is good reason to have such a requirement—it

ensures "the identity and *integrity* of physical evidence." 23 C.J.S. Criminal Procedure § 1150 (2023) (emphasis added). Chapter 64's chain-of-custody requirement promotes both goals, including the latter, permitting testing only if the evidence "has not been substituted, tampered with, replaced, or altered in any material respect." Tex. Code Crim. Proc. art. 64.03(a)(1)(A)(ii). There is nothing fundamentally unfair in ensuring evidentiary integrity.

Reed disagrees, saying that "Texas law promises prisoners that they can prove their innocence based on newly discovered evidence" and "the non-contamination requirement reneges on those promises based on the state's own handling and storage of evidence." Pl. Suppl. Br. 21; *see id.* at 21–23. In this, Reed effectively argues that Texas must provide postconviction DNA testing to all its inmates because there is an actual innocence exception to subsequent habeas applications.

Reed is attempting to transform a procedural due process claim into a substantive one. This is because, regardless of the state postconviction scheme, state prisoners may seek federal habeas relief and argue that actual innocence overcomes any bar to merits review. *See, e.g.*, *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995). Thus, under his view, any State that

provides any form of postconviction DNA testing must provide it without limit. But the Supreme Court has rejected Reed's disguised substantive due process argument. *See, e.g.*, *Skinner*, 562 U.S. at 525. And it has permitted limits on access to postconviction DNA testing, even when the inmate pursues a claim of actual innocence. *See Osborne*, 557 U.S. at 70 ("Alaska provides a substantive right to be released on a sufficiently compelling showing of new evidence that establishes innocence . . . . [but t]hese procedures are not without limits."). Chain of custody is one of those permissible limits, as Justice Alito explained more than a decade ago:

> [M]odern DNA testing is so powerful that it actually increases the risks associated with mishandling evidence. STR tests, for example, are so sensitive that they can detect DNA transferred from person X to a towel (with which he wipes his face), from the towel to Y (who subsequently wipes his face), and from Y's face to a murder weapon later wielded by Z (who can use STR technology to blame X for the murder). Any test that is sensitive enough to pick up such trace amounts of DNA will be able to detect even the slightest, unintentional mishandling of evidence.
>
> . . . .
>
> Then, after conviction, with nothing to lose, the defendant could demand DNA testing in the hope that some happy accident—for example, degradation or contamination of the evidence—would provide the basis for seeking postconviction relief. Denying the opportunity for such an attempt to game

> the criminal justice system should not shock the conscience of
> the Court.

*Osborne*, 557 U.S. at 82, 85 (Alito, J., concurring). Justice Alito's prescient opinion demonstrates why the lower court was right to dismiss Reed's procedural due process claim concerning chain of custody.

Further, by looking at the specific facts of *his* case—that items introduced at *his* trial were handled ungloved by trial participants (as per usual at that time), *Reed v. State*, 541 S.W.3d 759, 769–70 (Tex. Crim. App. 2017)—Reed is no longer facially challenging Chapter 64's chain-of-custody requirement. In other words, he's not focusing on whether there is "'no set of circumstances . . . under which the [law] would be valid,' *United States v. Salerno*, 481 U.S. 739, 745 (1987), or . . . that the law lacks 'a plainly legitimate sweep,' *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021). And by focusing on the facts of *his* case, he briefs himself into the *Rooker–Feldman* bar, because he is challenging the *application* of Chapter 64's chain-of-custody requirement to *him*, not its mere existence or authoritative interpretation by the CCA. *See, e.g.*, *Osborne*, 557 U.S. at 72 ("Just as with state law, Osborne cannot show that available discovery is facially inadequate, and cannot show

11

that it would be arbitrarily denied to him."); *Hooper v. Brnovich*, 56 F.4th 619, 626 (9th Cir. 2022) ("[The plaintiff] merely disagrees with the way in which the state courts applied the statute to the facts of his case."); *Wade v. Monroe Cty. Dist. Att'y*, 800 F. App'x 114, 119 (3d Cir. 2020) (unpublished) ("Unlike the claim in *Skinner*, Wade contends that the [state postconviction] court misinterpreted the DNA statute in his case specifically[.]").

In any event, in Reed's own case, "[t]he [trial] judge concluded that the remaining items that were not similarly handled and stored have been subject to a chain of custody sufficient to establish that they have not been substituted, tampered with, replaced, or altered in any material respect." *Reed*, 541 S.W.3d at 770. Thus, Reed's case demonstrates that a chain-of-custody requirement is not a complete bar to obtaining postconviction DNA testing (even if other requirements barred Reed). And, as explained above, chain-of-custody requirements heighten reliability, so it clearly has a legitimate sweep. Thus, a facial challenge to Chapter 64's chain-of-custody requirement fails. *See, e.g.*, *Ams. for Prosperity Found.*, 141 S. Ct. at 2387.

Reed further argues that placing the chain of custody burden on him, and presumably other Texas inmates seeking postconviction DNA testing, is fundamentally unfair because he is not the custodian of the evidence. Pl. Suppl. Br. 22–23. But again, Reed proved up chain of custody for all evidence not introduced at trial, *Reed*, 541 S.W.3d at 770, so a facial challenge fails, *see, e.g.*, *Ams. for Prosperity Found.*, 141 S. Ct. at 2387. And, to the extent that he complains about the handling of the trial evidence in *his* case, he goes beyond the limited facial challenge permitted. *See Hooper*, 56 F.4th at 626; *Wade*, 800 F. App'x at 119. And even if the facts of Reed's case can be considered, denying DNA testing when chain of custody fails isn't fundamentally unfair, as Justice Alito explained. *See Osborne*, 557 U.S. at 82, 85.

Further, placing the chain-of-custody burden on postconviction movants is not otherwise constitutionally objectionable. At a criminal trial, both parties have the obligation to demonstrate authentication before evidence can be introduced. *See, e.g.*, Tex. R. Evid. 901. Chain of custody is but one of the many ways to prove authentication. *See, e.g.*, *Davis v. State*, 992 S.W.2d 8, 10 (Tex. App.—Houston [1st Dist.] 1996, no pet.) ("An objection to the chain of custody is similar to an objection to

13

inadequate authentication or identification in that both objections complain of the lack of the proper predicate to admitting the item in question."). That the burden flips in postconviction, i.e., the defendant now must prove something to obtain relief, is the norm. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (holding that a habeas petitioner has the burden to demonstrate entitlement to relief). And here, where Reed met his burden with respect to some evidence, *Reed*, 541 S.W.3d at 770, he does not prove such scheme fundamentally unfair.

Reed then pivots to policy, arguing that making inmates shoulder the chain-of-custody burden will not sufficiently rebuke state officials when the chain fails, and it will allow corrupt ones to bar testing by purposefully improperly handling the evidence. Pl. Suppl. Br. 23. Goertz fails to see how such hypotheticals bear on the facial constitutionality of a statutory scheme, but regardless, state officials are entitled to a presumption of good faith. *See, e.g.*, *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009) ("[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties."). And to whatever extent remedial action was

warranted, Texas has undergone it. *See* Tex. Code Crim. Proc. art. 38.43(g) (requiring the Texas Department of Public Safety to create "standards and rules, consistent with best practices, relating to . . . the manner of collection, storage, preservation, retrieval, and destruction of biological evidence").

That Reed's capital murder trial occurred before the "advancement in touch DNA, a relatively new DNA technique that can develop a DNA profile from epithelial cells left by those handling the item," *Reed*, 541 S.W.3d at 769, requiring greater care by participants (including defense counsel) to not deposit epithelial cells on evidence introduced at trial, does not make the statute fundamentally unfair as to all individuals (or to him, if such a review is permissible), *see Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (holding that there was no due process violation when state officials failed to refrigerate biological samples); *see also id.* ("Part of it stems from our unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." (internal citation omitted)). And while Reed claims that,

despite this chain of custody failing, DNA testing *may* produce "highly probative and reliable results," Pl. Suppl. Br. 23, it won't be probative of who committed the crime, just who touched the evidence at trial, *see Osborne*, 557 U.S. at 82, 85 (Alito, J., concurring). Consequently, Reed fails to demonstrate fundamental unfairness.

Finally, Reed argues that Chapter 64 is fundamentally unfair because it creates a higher chain-of-custody burden on those seeking postconviction DNA testing than on prosecutors seeking to introduce evidence at trial. Pl. Supp. Br. 23–24. Reed's argument ignores the difference between biological material, e.g., epithelial cells, and where such material may be found, e.g., a belt. And this ignorance is why he continues to suggest that there's something other than Chapter 64's chain-of-custody requirement, what he dubs an "extratextual non-contamination requirement," which is somehow different than "non-tampering or non-comingling." Pl. Suppl. Br. 32–33. Whatever he wants to call it—contamination, tampering,[4] or comingling—it all bears on the

---

[4]    It is hard to understand how chain of custody could be different from tampering when the statute uses the phrase "tampered with[.]" Tex. Code Crim. Proc. art. 64.03(a)(1)(A)(ii). The same is true for contamination when a movant must show that the evidence, in this case touch DNA, has not been "altered in any material respect[.]" *Id.*

chain of custody for DNA evidence even if it might not be particularly relevant for traditional physical evidence.

Maine's highest court appreciates the difference between the two contexts—"[t]he central point of the chain of custody requirement is to assure that the evidence is what it purports to be—that is, related to the crime—and that it has not been contaminated or tampered with such that testing of it will yield unreliable (and therefore irrelevant) results." *Cookson v. State*, 17 A.3d 1208, 1213 (Me. 2011). The CCA understood it, too, with Reed's help—"Reed's own witnesses conceded that the manner of the trial exhibits' handling contaminated or tampered with the evidence." *Reed*, 541 S.W.3d at 770. In other words, there's a difference between introducing DNA evidence and introducing the evidence where the DNA was found. Reed's attempt to compare the two doesn't prove the use of different standards, just different contexts. There is nothing fundamentally unfair in recognizing this difference, as the CCA reasonably did, and nothing fundamentally unfair in requiring an adequate chain of custody, as Chapter 64 reasonably does. Accordingly, the district court's dismissal on this point should be affirmed.

## B.    A demonstration of materiality before granting postconviction DNA testing is constitutional.

Reed next argues that Chapter 64's materiality requirement, which Reed calls an "exoneration requirement," violates due process because it improperly defines exculpatory result, and it doesn't consider posttrial developments. Pl. Suppl. Br. 24–27. Again, he's wrong.

To obtain testing under Chapter 64, movants must prove by a preponderance of the evidence that they "would not have been convicted if exculpatory results had been obtained through DNA testing." Tex. Code Crim. Proc. art. 64.03(a)(2)(A). As explained by the CCA, "'[e]xculpatory results' means only results excluding the convicted person as the donor of this material." *Reed*, 541 S.W.3d at 774. Then, in conducting the probabilistic review, a Texas court considers "whether exculpatory results 'would alter the landscape if added to the mix of evidence that was available at the time of trial.'" *Id.* (quoting *Holberg v. State*, 425 S.W.3d 282, 285 (Tex. Crim. App. 2014)).

"A requirement of demonstrating materiality is [a] common" feature in postconviction DNA testing schemes, *Osborne*, 557 U.S. at 63, such as requiring inmates to prove that their requests are "sufficiently material," and it is "not inconsistent with the 'traditions and conscience

18

of our people' or with 'any recognized principle of fundamental fairness,'" *id*. at 70 (quoting *Medina*, 505 U.S. at 446, 448). That is what Chapter 64 requires, and it is not fundamentally unfair. *See Cromartie v. Shealy*, 941 F.3d 1244, 1257 (11th Cir. 2019) (holding that Georgia's materiality requirement—"that the favorable DNA testing results create a reasonable probability that he would have been acquitted had those results been available at trial"—was constitutional because "the Supreme Court has already approved of this type of materiality standard in *Osborne*"). In fact, it would not be fundamentally unfair even if it had no presumption of exculpatory results at all. *See McKithen v. Brown*, 626 F.3d 143, 153 (2d Cir. 2010) (holding that New York's postconviction DNA testing scheme, "even when understood not to require state courts to assume that the DNA testing sought will produce exculpatory results, cannot be said to conflict with the 'traditions and conscience of our people' or 'any recognized principle of fundamental fairness.'").

Nonetheless, Reed argues that the CCA should be required, as a constitutional matter, to interpret "exculpatory" as presuming a match to another suspect because such results would substantiate a third-party defense. Pl. Suppl. Br. 25. But if the CCA were required to presume

19

another suspect's DNA was on every piece of evidence, "it makes it hard to imagine a case in which [it] would not grant DNA testing." *State v. Swearingen*, 424 S.W.3d 32, 39 (Tex. Crim. App. 2014). Reed's argument again calls for on-demand postconviction DNA testing, but "there is no such substantive due process right." *Osborne*, 557 U.S. at 72.

Even if Reed's argument is narrower, he still fails to show fundamental unfairness because the CCA largely utilized Reed's proposed definition of "exculpatory," assuming a redundant DNA profile belonging to Stites's fiancé, Jimmy Fennell, on all the items he sought to test (with sufficient chains of custody), yet it found that such was not enough to show likely acquittal. *Reed*, 541 S.W.3d at 773–77. This was partly based on Reed's evidence at the Chapter 64 hearing—"Reed's experts contradict his argument that touch DNA would prove the perpetrator's identity." *Id*. at 777. The court carefully considered whether exculpatory results on each such item would be sufficiently material, finding that Reed failed to establish that much of the evidence was even connected with the crime. *Id*. at 774–75. Reed plainly cannot establish a procedural due process violation based on the CCA's refusal to apply a particular materiality standard when it assumed arguendo Reed's

preferred standard—that Fennell was a redundant contributor. *Id*. at 777.

Nor has Reed shown that, as a matter of constitutional law, state courts must consider posttrial developments in determining whether DNA testing should be permitted. Indeed, the Supreme Court in *Osborne* reversed the respective circuit court when it framed the materiality analysis as an expansive "forward-looking" inquiry requiring a court to consider "all the evidence, old and new, incriminating and exculpatory.'" *Osborne v. Dist. Attorney's Office for the Third Judicial Dist.*, 521 F.3d 1118, 1135 (9th Cir. 2008) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)); *id*. at 1140 ("[A]ll new evidence may be considered in assessing the potential materiality of further DNA testing."). Nothing in the Supreme Court's *Osborne* opinion mandates that a state court employ, as the Ninth Circuit did, a materiality analysis equivalent to that which would apply to a claim of actual innocence. *Id*. at 1140.

Moreover, due process does not mandate that States provide *any* postconviction review. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). When a State does, it need not provide an attorney, even in capital cases. *Murray v. Giarratano*, 492 U.S. 1, 10 (1989) (plurality opinion). And due

process does not even mandate inmate competence during the postconviction process. *Ryan v. Gonzales*, 568 U.S. 57, 67 (2013). The point of this being that there is simply no precedent to suggest that states must, as a constitutional matter, offer an open-ended factfinding avenue when they enact postconviction DNA testing schemes. Direct appeal is generally limited to the record developed at trial even if new evidence arises during the pendency of review. *See, e.g.*, *Trevino v. Thaler*, 569 U.S. 413, 422 (2013). The same is true for federal habeas review. *See, e.g.*, *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). Reed does not explain why a State cannot do what the federal courts or government can do. *See Smith v. Phillips*, 455 U.S. 209, 218 (1982) ("It seems to us to follow 'as the night the day' that if in the federal system a post-trial hearing such as that conducted here is sufficient to decide allegations of juror partiality, the Due Process Clause of the Fourteenth Amendment cannot possibly require more of a state court system."). This is especially true as Texas provides a venue for Reed to air his "new" evidence via its habeas corpus process—and he has done so eleven times. The State does not have to disrupt its entire postconviction DNA testing scheme to give him another venue.

Texas is not alone in limiting the evidence to be considered when performing a materiality review. *See, e.g., Meinhard v. State*, 371 P.3d 37, 44 (Utah 2016) ("And other provisions of the code make clear that only DNA test results can establish factual innocence under Part 3 of the PCRA."); *Anderson v. State*, 831 A.2d 858, 867 (Del. 2003) ("When deciding whether evidence is materially relevant, the trial court must consider not only the exculpatory potential of a favorable DNA test result, but also the other evidence presented at trial."). Notably, a materiality review that focuses on the effect of trial is a well-worn rule in many constitutional contexts. *See Cromartie*, 941 F.3d at 1257 (rejecting challenge to Georgia's materiality standard, in part, because it is consistent with Supreme Court precedent in the suppression-of-evidence and ineffective-assistance-of-trial-counsel contexts); *Tarver v. Kunzweiler*, No. 20-CV-392, 2020 WL 6050572, at *5–6 (N.D. Okla. Oct. 13, 2020) (unpublished) (dismissing materiality challenge to Oklahoma's postconviction DNA testing statute). And these well-worn standards do not require an untethered reassessment of posttrial developments. Rather, they have causal nexuses, tying the error to the harm caused by it. For example, a reviewing court considers the effect of suppressed

evidence on the trial, not the suppressed evidence plus all other postconviction developments. *See, e.g.*, *United States v. Sipe*, 388 F.3d 471, 479 (5th Cir. 2004) ("[Materiality review] is intimately intertwined with the trial proceedings: because the court must judge the effect of the evidence on the jury's verdict, the *Brady* decision can never be divorced from the narrative of the trial."). Similarly, in the ineffective-assistance-of-trial-counsel context, for example, evidence undiscovered because of deficient performance is compared with the trial evidence, not with all posttrial developments. *See, e.g.*, *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) ("An applicant 'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989))). Employing a common component of a postconviction materiality standard in a postconviction DNA testing scheme makes sense and is not fundamentally unfair. *See Osborne*, 557 U.S. at 70; *Cromartie*, 941 F.3d at 1257.

Reed's primary retort is to appeal to the "facts" of his innocence case. Pl. Suppl. Br. 26–27 ("Postconviction developments show that much

of the [S]tate's trial evidence is false."). In other words, Reed is saying that because he's mustered a quantum of evidence that he believes proves innocence, he's more entitled to DNA testing. Again, this goes beyond a facial challenge and runs into *Rooker–Feldman*'s jurisdictional limitation. *See Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1262–63 (11th Cir. 2012) ("His as-applied procedural due process claim plainly and broadly attacks the state court's application of Florida's DNA access procedures to the facts of his case[.]"). Once again, this as-applied challenge to Chapter 64 is beyond the facial challenge permitted and barred under *Rooker–Feldman*. *See supra* Argument II(A)(2).

But if the Court is going to consider posttrial developments, the CCA's exhaustive consideration of Reed's innocence case settles the matter. There, the court rejected Reed's actual innocence arguments, including those focusing on the time-of-death inferences to be drawn from intact spermatozoa and physiological changes to Stites's body, along with allegations that Fennell confessed to killing Stites or that they were in an abusive, violent relationship. *Ex parte Reed*, 670 S.W.3d at 749–57. Reed does not explain why these rejected theories and evidence somehow mean an inmate is more entitled to postconviction DNA testing (or how

25

that could be consistent with a facial challenge to a postconviction DNA testing scheme). Thus, if Reed's claim is a facial challenge, it fails because materiality requirements are permissible under the Due Process Clause, and if it's an as-applied challenge, the Court lacks jurisdiction to entertain it and it is not otherwise successful in light of the rejection of Reed's innocence claims. Either way, the lower court's dismissal on this matter should be affirmed.

### C.    Use of time limitations in a postconviction DNA testing scheme does not offend fundamental fairness.

Finally, Reed complains that Chapter 64's prohibition on unreasonable delay violates due process because it "arbitrarily punishes prisoners for developing evidence of innocence" and renders amendments to Chapter 64, which he claims made touch DNA testing available under the scheme, a nullity. Pl. Suppl. Br. 27–30. For a final time, he's wrong.

### 1.    Reed has once again forfeited his new arguments.

In the lower court, Reed argued that the untimeliness finding violated his due process rights because, as a matter of fact, he couldn't utilize Chapter 64 until it was amended in 2014. ROA.187. This is neither an argument that Chapter 64's timeliness requirement punishes inmates for developing other postconviction evidence nor that it prevents inmates

from utilizing amendments to the statutory scheme. Hence, the arguments are new and forfeited. *See supra* Argument II(A)(1).

## 2. Imposing time limitations on postconviction DNA testing does not violate due process.

Chapter 64 requires that a movant prove that the request for postconviction DNA testing "is not made to unreasonably delay the execution of sentence or administration of justice." Tex. Code Crim. Proc. art. 64.03(a)(2)(B). The requirement that DNA testing "must have been diligently pursued" is similar to requirements imposed "by federal law and the law of other States, and they are not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.'" *Osborne*, 557 U.S. at 70 (quoting *Medina*, 505 U.S. at 446, 448). Indeed, the federal counterpart, the model for such schemes, *id.* at 63, *presumes* untimeliness if the request is made five years after its enactment or three years after conviction, § 3600(a)(10)(B). Chapter 64's generous limitations period is therefore facially constitutional.

If the facts of Reed's case are relevant, he surely does not prove unconstitutionality—he waited thirteen years after the enactment of Chapter 64 to seek DNA testing, "and there does not appear to be any

factual or legal impediments that prevented Reed from availing himself of post-conviction DNA testing earlier." *Reed*, 541 S.W.3d at 779. Reed's dilatoriness was an appropriate basis on which the CCA denied DNA testing, and Reed fails to prove that the timeliness requirement of Chapter 64 is fundamentally unfair. *Cf. Cromartie*, 941 F.3d at 1256 (finding that the due diligence requirement in Georgia's postconviction DNA testing scheme did not violate due process).

Reed's attacks don't change that conclusion. For one, while *he* was supposedly developing actual innocence evidence between Chapter 64's enactment in 2001 and his request for DNA testing in 2014, that doesn't mean *everyone* seeking DNA testing has been diligent with their time. In other words, Reed fails to show that Chapter 64's timeliness requirement is unconstitutional in all situations. *See, e.g.*, *Ams. for Prosperity Found.*, 141 S. Ct. at 2387. But even giving Reed the benefit of the doubt, it's not fundamentally unfair to require him to diligently develop DNA evidence, *along with* whatever else he might want considered—and not wait until the day he was set for execution. *See Reed*, 541 S.W.3d at 779 ("The timing of Reed's motion is even more suspect when we consider that it

was filed on the same day the judge heard the State's motion to set an execution date filed three months earlier.").

The CCA specifically addressed—and rejected—Reed's assertion that he could not have sought touch DNA testing earlier than he did under Chapter 64. *Id.* Reed's disagreement with the CCA's conclusion belies any assertion that he is making a facial attack on the constitutionality of Chapter 64's procedures. Instead, he merely disagrees with the CCA's fact findings and its conclusion founded upon those facts. *See* Pl. Suppl. Br. 30 ("But, in the CCA's view, touch-DNA testing was available before the 2011 amendments, even though [Chapter] 64 included no provision purporting to allow it and no decision had granted touch-DNA testing under [Chapter] 64."). This is patently insufficient to state a plausible, facial due process claim, but is rather an impermissible as-applied challenge. *See supra* Argument II(A)(2), (B).

In any event, Chapter 64 clearly permits movants to seek DNA testing based on new technological developments, Tex. Code Crim. Proc. art. 64.01(b)(2)(A), it's just that Reed wasn't diligent in seeking to avail himself of those developments, and was clearly trying to stave off an execution date with litigation, *see Reed*, 541 S.W.3d at 779 (noting that

the CCA had addressed touch DNA testing under Chapter 64 four years

before Reed made his request). There is nothing fundamentally unfair

with Chapter 64's "punishment" of abusive, dilatory movants.

## CONCLUSION

For the above reasons, Goertz requests that the Court affirm the

district court's dismissal.

Respectfully submitted,

ANGELA COLMENERO
Provisional Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General
Texas Bar No. 24047707
    *Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1600
matthew.ottoway@oag.texas.gov

*Attorneys    for    Defendant–Appellee
Goertz*

## CERTIFICATE OF SERVICE

I do hereby certify that on September 1, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following attorney of record, who consented in writing to accept the NEF as service of this document by electronic means:

Andrew F. MacRae
MACRAE LAW FIRM PLLC
3267 Bee Cave Road
Suite 107, PMB 276
Austin, Texas 78746

Parker Rider-Longmaid
Hanaa Kahn
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM, LLP
1440 NEW YORK AVE., NW
WASHINGTON DC 20005

Cliff Gardner
Michelle L. Davis
Nicole A. DiSalvo
Gregory P. Ranzini
Peyton V. Carper
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM, LLP
920 N. King Street
Wilmington, Delaware 19801

s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's ruling permitting supplemental briefing. It contains 6,100 words, Microsoft Word for Office 365, Century Schoolbook, 14 points.

s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General

## ELECTRONIC CASE FILING CERTIFICATIONS

I do hereby certify that: (1) all required privacy redactions have been made; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus scanning program and is free of viruses.

s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General

32