No. 19-70022

In the

# United States Court of Appeals
## for the Fifth Circuit

RODNEY REED,

*Plaintiff-Appellant*,

v.

BRYAN GOERTZ,

*Defendant-Appellee*.

On Appeal from the United States District Court for the
Western District of Texas, No. 1:19-cv-794,
Hon. Lee Yeakel, *United States District Judge*

## PLAINTIFF-APPELLANT RODNEY REED'S
## SUPPLEMENTAL REPLY BRIEF

Cliff C. Gardner
Michelle L. Davis
Sarah Runnells Martin
Gregory P. Ranzini
Peyton V. Carper
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
920 N. King St.
Wilmington, DE 19801

Barry C. Scheck
Jane Pucher
THE INNOCENCE PROJECT
40 Worth St., Ste. 701
New York, NY 10013

Parker Rider-Longmaid
   *Counsel of Record*
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
parker.rider-longmaid@skadden.com

Jeremy Patashnik
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

Andrew F. MacRae
MACRAE LAW FIRM PLLC
3267 Bee Cave Rd., Ste. 107, PMB 276
Austin, TX 78746

*Counsel for Plaintiff-Appellant Rodney Reed*

# CERTIFICATE OF INTERESTED PARTIES

**A.** The case is No. 19-70022, *Reed v. Goertz*. The Appellant is Rodney Reed and the Appellee is Bryan Goertz.

**B.** The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case:

- Chipman Brown Cicero & Cole, LLP

- MacRae Law Firm, PLLC

- Office of the Attorney General of Texas

- Skadden, Arps, Slate, Meagher & Flom LLP

- The Innocence Project

These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Dated: October 23, 2023                    */s/ Parker Rider-Longmaid*
                                           Parker Rider-Longmaid

## REQUEST FOR ORAL ARGUMENT

Reed respectfully renews his request for oral argument, which he submits would aid the Court in its decisionmaking process. As Reed explained in his motion and reply seeking this supplemental briefing, *see* ECF No. 75, at 6; ECF No. 84, at 12-13, this is an important capital case to which this Court and the Supreme Court have both devoted significant resources. And "there is no escaping the pall of uncertainty over Reed's conviction." *Reed v. Texas*, 140 S. Ct. 686, 690 (2020) (Sotomayor, J., respecting the denial of certiorari). What's more, even after the Supreme Court remanded this case for consideration of Reed's 42 U.S.C. § 1983 claim on the merits, Goertz continues to claim (Suppl. Br. 2, 11-13, 24-26, 29) that this Court lacks jurisdiction. In Goertz's view, the *Rooker-Feldman* doctrine bars Reed from discussing the facts of his case to show why Goertz's withholding DNA testing in reliance on the Texas Court of Criminal Appeals' construction of Article 64 of the Texas Code of Criminal Procedure denies him due process. Reed respectfully submits that oral argument will help cut to the important constitutional issues, which, especially with so much at stake, warrant a full airing.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PARTIES ........................................................i

REQUEST FOR ORAL ARGUMENT ................................................. ii

TABLE OF AUTHORITIES ................................................. iv

INTRODUCTION AND SUMMARY OF ARGUMENT ................................1

ARGUMENT ................................................................3

    A.    The CCA's extratextual non-contamination requirement violates due process. ...........................................................3

    B.    The CCA's construction of Article 64's exoneration requirement is unconstitutional. .......................................11

    C.    The CCA's construction of Article 64's unreasonable-delay requirement also violates due process. .............................16

    D.    The requirements the CCA has read into Article 64 violate due process individually and collectively. ...................................20

CONCLUSION ...............................................................21

CERTIFICATE OF COMPLIANCE ....................................................22

CERTIFICATE OF SERVICE ..............................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Cook v. Foster*,
    948 F.3d 896 (7th Cir. 2020) ...............................................................14

*Cookson v. State*,
    17 A.3d 1208 (Me. 2011)......................................................................7

*Derden v. McNeel*,
    978 F.2d 1453 (5th Cir. 1992) .............................................................14

*District Attorney's Office for the Third Judicial District v. Osborne*,
    557 U.S. 52 (2009)........................................................... 1, 5, 8, 15, 16

*Dossett v. State*,
    216 S.W.3d 7 (Tex. App. 2006) ........................................................4, 7

*Doyle v. Ohio*,
    426 U.S. 610 (1976)............................................................. 5, 6, 16, 17

*Ex parte Reed*,
    670 S.W.3d 689 (Tex. Crim. App. 2023).............................................12

*Ex parte Young*,
    209 U.S. 123 (1908)............................................................ 9, 10, 16, 19

*Federal Communications Commission v.*
    *Fox Television Stations, Inc.*,
    567 U.S. 239 (2012).............................................................................17

*Gregory v. Thaler*,
    601 F.3d 347 (5th Cir. 2010) ...............................................................14

*Griffin v. California*,
    380 U.S. 609 (1965).......................................................................16, 17

*Guidroz v. Lynaugh*,
    852 F.2d 832 (5th Cir. 1988) ...............................................................14

*Harvey v. Horan*,
    285 F.3d 298 (4th Cir. 2002) ...............................................................12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Holmes v. South Carolina*,
547 U.S. 319 (2006)..........................................................................................1, 12

*Morrison v. Peterson*,
809 F.3d 1059 (9th Cir. 2015) ...........................................................................11

*Reed v. Goertz*,
598 U.S. 230 (2023)............................................................ 2, 9, 10, 11, 15, 16, 19

*Reed v. Goertz*,
995 F.3d 425 (5th Cir. 2021) ................................................... 2, 9, 10, 11, 15, 16

*Reed v. Texas*,
140 S. Ct. 686 (2020)..................................................................................... 19, 20

*Schlup v. Delo*,
513 U.S. 298 (1995)............................................................................................14

*Skinner v. Switzer*,
562 U.S. 521 (2011)..............................................................................................9

*United States v. Fasano*,
577 F.3d 572 (5th Cir. 2009) ...............................................................................4

*Yee v. City of Escondido*,
503 U.S. 519 (1992).........................................................................................4, 17

**STATUTES AND RULE**

18 U.S.C. § 3600(a)(10)(B)(iii) .........................................................................18

42 U.S.C. § 1983....................................................................................................2, 10

Tex. Code Crim. Proc. art. 11.071(5)(a)(1)........................................................3

Tex. Code Crim. Proc. art. 38.43(b)....................................................................3

Tex. Code Crim. Proc. art. 38.43(c)(2)(A)..........................................................3

Tex. Code Crim. Proc. art. 64........................................................ 1, 2, 3, 4, 5, 7,
........................................................................................ 8, 9, 10, 11, 12, 13,
........................................................................................ 15, 16, 17, 18, 19, 20

Tex. Code Crim. Proc. art. 64.03(a)(1)(A)(ii)....................................................3

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Tex. R. Evid. 901(a)..................................................................................4

## INTRODUCTION AND SUMMARY OF ARGUMENT

Texas grants prisoners the right to prove their innocence based on newly discovered evidence—including through DNA testing. Texas must afford adequate process "to vindicate [that] substantive right[]." *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 69 (2009). For three reasons—individually and collectively—the CCA's authoritative interpretation of Article 64 fails to do so and is therefore unconstitutional.

*First*, the CCA interprets Article 64's chain-of-custody requirement to include an extratextual non-contamination condition that prevents prisoners from accessing DNA testing because of purported deficiencies in how *the state* stores evidence. That non-contamination requirement is not necessary to ensure reliable results, doesn't apply in any other context, and makes Article 64 a fundamentally unfair illusory promise.

*Second*, the CCA interprets Article 64 to preclude DNA testing that could prove a prisoner's innocence by inculpating another suspect—even when posttrial developments suggest that the other suspect is guilty and the prisoner is innocent. Evidence that inculpates another suspect is, by definition, exculpatory. *See Holmes v. South Carolina*, 547 U.S. 319, 327 (2006).

- 1 -

*Third*, the CCA's interpretation of Article 64's unreasonable-delay requirement punishes prisoners like Reed who would have had no reason to pursue touch-DNA testing before the law's 2011 amendment or who have diligently pursued their innocence through other means before seeking DNA testing under Article 64.

Goertz's primary response is to cry "*Rooker-Feldman*" whenever Reed talks about his case to show why Goertz's reliance on the CCA's unconstitutional interpretation of Article 64 to deny him DNA testing violates his due-process rights. But this Court and the Supreme Court have already rejected Goertz's *Rooker-Feldman* argument. *Reed v. Goertz*, 598 U.S. 230, 234-35 (2023); 995 F.3d 425, 429-30 (5th Cir. 2021). And Goertz cites no authority suggesting that a 42 U.S.C. § 1983 claimant challenging a state's DNA testing law runs into *Rooker-Feldman* simply by discussing the facts of his case.

On the merits, Goertz attacks strawmen rather than grapple with the fundamental unfairness that Reed has identified in the CCA's interpretation of Article 64. He defends *generic* chain-of-custody, materiality, and unnecessary-delay requirements in DNA-testing laws, but doesn't address how the CCA's interpretation of those requirements *in Article 64* provides prisoners due process. Although Reed's life is at stake and Goertz holds the keys to

crucial DNA evidence, Goertz relies on a fundamentally unfair interpreta-

tion of Article 64 to deny Reed the process the Constitution requires to allow

him to vindicate his substantive right under Texas law to prove his inno-

cence.

## ARGUMENT

### A.    The CCA's extratextual non-contamination requirement violates due process.

**1.**    Texas law promises prisoners that they can prove their

innocence based on newly discovered evidence, *see* Tex. Code Crim. Proc.

art. 11.071(5)(a)(1), and obtain DNA testing under Article 64 to do so if,

among other things, the evidence has a sufficient chain of custody, *id.* art.

64.03(a)(1)(A)(ii). But Goertz relies on the CCA's extratextual non-

contamination requirement to deny Reed DNA testing. That non-contami-

nation requirement is fundamentally unfair and violates due process

because it breaks the promise Texas law makes to prisoners seeking to prove

their innocence. Reed Suppl. Br. 21-22. The state—not the defendant—is re-

sponsible for preserving crime-scene evidence. Tex. Code Crim. Proc. art.

38.43(b), (c)(2)(A). Yet the non-contamination requirement prevents prison-

ers from accessing evidence for DNA testing based on the state's own

procedures for handling evidence—even though a non-contamination requirement is unnecessary to protect against unreliable DNA results. *See* Br. of Chase Baumgartner 9-17, *Reed v. Goertz*, No. 21-442 (U.S.).

The non-contamination requirement also arbitrarily imposes a more stringent chain-of-custody burden on inmates seeking DNA testing than on prosecutors introducing evidence at trial. Reed Suppl. Br. 23-24. The authentication requirement at trial, *see* Tex. R. Evid. 901(a), doesn't require non-contamination, *see Dossett v. State*, 216 S.W.3d 7, 20-22 (Tex. App. 2006)*; cf. United States v. Fasano*, 577 F.3d 572, 576 (5th Cir. 2009).

    **2.**    Goertz's counterarguments lack merit.

    **a.**    Goertz first claims (Suppl. Br. 6-7) that Reed has forfeited his arguments about the CCA's non-contamination requirement. That's wrong. Reed argued before the district court that the CCA's "novel interpretation" of Article 64 "places an impossible burden on applicants with respect to evidence *over which they have no control*." ROA.265; *see also, e.g.*, ROA.29, 31-32, 36-37, 177-78. That's the same argument he makes on appeal. Besides, once a litigant asserts a claim, he "can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). So Goertz cannot get

anywhere by flyspecking differences between the way Reed explained his non-contamination argument before the district court and the way he has explained that same challenge before this Court.

**b.** Goertz's attempts to defend the non-contamination requirement on the merits fare no better.

*i.* Goertz asserts that "placing the chain-of-custody burden on postconviction movants" complies with due process because prisoners should expect to receive less process during postconviction proceedings than the process due at trial. Suppl. Br. 13-14. That misses the point. Reed's argument is not simply that it's unfair to shift the burden of proof to prisoners after conviction. The point is that it's unfair to deny prisoners DNA testing because of how *the state* handled the evidence.

Goertz doesn't grapple with this point—that by holding the state's handling of evidence against the prisoner, the non-contamination requirement makes Article 64 "inadequate" to vindicate the state-created liberty interest for prisoners to prove their innocence, including through DNA testing. *Osborne*, 557 U.S. at 69. Once Texas has promised prisoners that they have that substantive right, the due-process guarantee means that Texas has made certain "assurance[s]" "implicit" in that promise, including that the

right must not be extended in a "fundamentally unfair" manner. *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). And it is fundamentally unfair for Texas to offer prisoners the right to prove their innocence through DNA testing and then to make that right unavailable because of the way the state handled the evidence to be tested.

*ii.* Goertz's contention that "state officials are entitled to a presumption of good faith" is similarly not responsive. Suppl. Br. 14. Reed doesn't argue that Texas has acted or will act in bad faith (although the CCA's construction of the statute would allow law-enforcement officers who do act in bad faith to defeat a prisoner's request for DNA testing). Rather, Reed contends that it is fundamentally unfair to deny prisoners DNA testing based on unfounded contamination concerns when prisoners have no control over state protocols for handling evidence. And it is especially unfair to impose that requirement given that Texas does not impose a non-contamination requirement in any other analogous evidentiary setting. *Supra* p. 4.

*iii.* Goertz claims (Suppl. Br. 16-17 & n.4) that the CCA's extratextual non-contamination requirement is actually a component of the textual chain-of-custody requirement, apparently assuming that DNA evidence can be probative only if it contains no traces of contamination. That assumption is

wrong. Goertz relies primarily on a single sentence from a Maine case that said that the purpose of Maine's chain-of-custody requirement is to ensure the evidence has not been "contaminated or tampered with." Suppl. Br. 17 (quoting *Cookson v. State*, 17 A.3d 1208, 1213 (Me. 2011)). But even samples with a sufficient chain of custody—that thus would be admissible at trial—might contain some contamination. *See Dossett*, 216 S.W.3d at 20-22. That's why the Texas Department of Public Safety "has developed rigorous protocols for discovering and reporting DNA profiles despite potential contamination." Baumgartner Br. 9; *see* Reed Suppl. Br. 21-22.

Relatedly, Goertz's discussion (Suppl. Br. 8-11, 13-15) about why a *chain-of-custody* requirement is constitutionally permissible does not answer Reed's arguments. As Goertz himself ultimately recognizes (Suppl. Br. 16), Reed doesn't challenge a run-of-the-mill chain-of-custody requirement; he challenges the CCA's extratextual *non-contamination* requirement that denies DNA testing to prisoners simply because the *state* mishandled evidence. Whether Article 64 can constitutionally impose a generic chain-of-custody requirement doesn't address the CCA's unconstitutional construction of that provision, which transforms it into a fundamentally unfair non-contamination requirement.

*iv.*     Goertz wrongly claims (Suppl. Br. 9-10, 12) that Reed advocates a substantive due process right to DNA testing. Reed argues for no such thing. Texas decided to afford prisoners the right to prove their innocence through DNA testing, and Reed argues only that the Constitution entitles him to the process necessary to vindicate that right. *See Osborne*, 557 U.S. at 69. At bottom, Goertz's position is that the Supreme Court did not mean what it said when it held that a "state-created right" will "beget yet other rights to procedures essential to the realization of the parent right." *Id.* at 68. In other words, by pointing out that the Constitution does not guarantee an absolute right to DNA testing, Goertz fundamentally misunderstands Reed's claim. Once *Texas* extended a right to DNA testing in certain circum-stances, it triggered the Constitution's due-process guarantee that the procedures for vindicating that right be fundamentally fair.

The question is whether Article 64's requirements are adequate to vin-dicate the right Texas law confers. They are not, but that doesn't mean that "on-demand postconviction DNA testing" is the only constitutional option. Goertz Suppl. Br. 20. Whether a constitutional version of Article 64 can deny prisoners DNA testing is a different question from whether Article 64 can rely on, for example, a non-contamination requirement making Article 64

illusory because the state controls the evidence. As noted (at 7), Goertz doesn't grapple with the argument Reed is actually making.

**c.**    Goertz's *Rooker-Feldman* argument also fails. Indeed, both this Court and the Supreme Court have already rejected it. Law of the case bars Goertz from another turn on the merry-go-round. To recap, Reed explained before the Supreme Court that there is no *Rooker-Feldman* bar and that "[p]rospective declaratory relief is available under *Ex parte Young* because it will stop Goertz from using the CCA's unconstitutional construction to deny Reed DNA testing." Br. for Petitioner 22, *Reed v. Goertz*, No. 21-442 (U.S.). The Supreme Court agreed, holding that Reed's suit against Goertz can "target[] as unconstitutional the Texas statute" the CCA "authoritatively construed" and that Goertz relies on to deny Reed DNA testing. *Reed*, 598 U.S. at 234-35 (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)). And that ruling accords with this Court's earlier ruling that *Rooker-Feldman* does not bar Reed's suit. *Reed*, 995 F.3d at 429-30. Goertz may continue to "not believe that the district court possessed subject matter jurisdiction," Suppl. Br. 2 — evidence of the stubbornness that likely explains why Reed cannot get DNA testing—but he should respect the judiciary's conclusion and substantial

investment of resources and move on. *Cf.* Reed Reply Supp. Mot. Permit Suppl. Br. 1-2, ECF No. 84 (May 19, 2023).

In any event, Goertz's view (Suppl. Br. 11-13, 15) that Reed cannot discuss the facts of his case without transforming his case into an attack on the CCA judgment and running into the *Rooker-Feldman* bar makes no sense. For one thing, it's absurd to suggest that, in pursuing his § 1983 claim—which this Court has already acknowledged permissibly "challenges the constitutionality of Chapter 64, both on its face and as applied to [Reed]," *Reed*, 995 F.3d at 428—Reed cannot show the unconstitutionality of the CCA's construction of Article 64 by discussing how that construction bears on his case. Reed's argument isn't that the CCA erred in applying the law to his case, but that, if Article 64 means what the CCA says, then it's facially unconstitutional because it doesn't afford prisoners (including Reed) the constitutionally required process to vindicate their substantive right conferred by Texas law to prove their innocence. And, as the Supreme Court explained, Reed is challenging, under *Ex parte Young*, Goertz's reliance on the CCA's unconstitutional construction of Article 64 to deny him DNA testing. *See Reed*, 598 U.S. at 234. Whether Goertz is unconstitutionally denying Reed DNA testing necessarily depends on how Goertz has treated Reed.

Putting all that aside, Goertz is wrong that *Rooker-Feldman* bars as-applied challenges. Indeed, this Court already held that "[t]he *Rooker-Feldman* doctrine does not apply," while recognizing that Reed "challenges the constitutionality of Chapter 64, both on its face and as applied." *Reed*, 995 F.3d at 428-30. And the Supreme Court summarily rejected (*Reed*, 598 U.S. at 234-35) Justice Thomas' dissenting view that Reed couldn't proceed with as-applied claims (*id.* at 246-48). As another court of appeals explained, when a prisoner "seeks to invalidate" a state's "DNA testing statute on federal constitutional grounds, his claim is not barred by *Rooker-Feldman*," even if his "challenge is 'as applied.'" *Morrison v. Peterson*, 809 F.3d 1059, 1070 (9th Cir. 2015). Thus, even if Reed were bringing a purely as-applied constitutional challenge, *Rooker-Feldman* still would not bar the claim. And that's especially clear where, as here, Reed raises "categorical issue[s] not limited to the particulars of [his] situation." *Id.*

### B.    The CCA's construction of Article 64's exoneration requirement is unconstitutional.

**1.**    The CCA's construction of the exoneration inquiry is fundamentally unfair because it both limits exculpatory DNA-testing results to those "excluding the convicted person as the donor of the material," ROA.296, and

ignores posttrial developments discrediting trial evidence. Reed Suppl. Br. 24-27. DNA results inculpating another suspect are textbook exculpatory, and thus typically admissible at trial. *See Holmes*, 547 U.S. at 327. Indeed, as if to prove the unfairness of its construction of Article 64, the CCA later faulted Reed, when denying one of his habeas petitions, for failing (in its view) to "affirmatively demonstrate[]" his innocence by "show[ing] that someone else" murdered Stites. *Ex parte Reed*, 670 S.W.3d 689, 761 (Tex. Crim. App. 2023). And ignoring the holistic evidentiary picture is particularly unfair in the context of DNA testing, which has time and again "prove[n] factual innocence," *Harvey v. Horan*, 285 F.3d 298, 305-06 (4th Cir. 2002) (Luttig, J., respecting the denial of rehearing). The result of the CCA's construction of the exoneration inquiry is that scientifically disproven evidence or recanted testimony that was offered at trial can foreclose DNA testing even when the prisoner may be able to show he is innocent with DNA results that are exculpatory because they implicate someone else.

> **2.**    Goertz's counterarguments fail.

> **a.**    Goertz attacks a strawman when he argues that the CCA's construction of Article 64's exoneration requirement is constitutional because "a requirement of demonstrating materiality" is common in postconviction

DNA testing schemes. Suppl. Br. 18-19. Reed isn't challenging a generic requirement that a prisoner must show DNA testing would be material. Instead, he challenges the unreasonably narrow nature of that inquiry under Article 64, which forces a court to ignore evidence of a prisoner's innocence that has emerged since trial. Reed Suppl. Br. 26.

That construction of Article 64 nullifies Texas's promise that a prisoner may prove his innocence through newly discovered evidence. Under the CCA's authoritative interpretation of Article 64, a prisoner cannot obtain DNA testing if exculpatory results would not have outweighed other evidence of guilt presented at trial — even if that evidence has been recanted or disproven. In other words, that interpretation allows for debunked theories of guilt to continue to prevent prisoners from obtaining DNA testing. If that's what Article 64 means, then it's fundamentally unfair.

**b.** Goertz attempts to justify the CCA's interpretation of Article 64's exoneration requirement by arguing that in a variety of postconviction contexts, including federal habeas review, prisoners often receive less process than they would have received during their trials. Suppl. Br. 21-24. But that argument ignores the combination of (i) the fundamental rule that basic constitutional principles still apply postconviction and (ii) the context of an

assertion of actual innocence. For example, even in habeas review, the Supreme Court has explained that the Constitution requires "principles of comity and finality" to "yield to the imperative of correcting a fundamentally unjust incarceration" so as to avoid "fundamental miscarriages of justice." *Schlup v. Delo*, 513 U.S. 298, 320-21 (1995).

Goertz's reference (Suppl. Br. 24) to the ineffective-assistance-of-counsel context simply reinforces that the Constitution sometimes requires courts to consider posttrial developments. For example, courts must consider out-of-court developments in conducting the deficient-performance prong of the ineffective-assistance-of-counsel analysis. *See Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010). And in evaluating prejudice, courts evaluate counsel's "performance as a whole" and "consider the cumulative effect of counsel's errors." *Cook v. Foster*, 948 F.3d 896, 908 (7th Cir. 2020); *see also Derden v. McNeel*, 978 F.2d 1453, 1457 (5th Cir. 1992) (en banc); *Guidroz v. Lynaugh*, 852 F.2d 832, 837 (5th Cir. 1988).

**c.**    Goertz also mistakenly argues that the CCA's interpretation of the exoneration requirement does not matter in this case because, he insists, the CCA "assumed arguendo Reed's preferred standard." Suppl. Br. 20-21. But, as Goertz repeatedly notes, Reed is not challenging the CCA's

judgment, so what the CCA assumed in reaching its conclusion in Reed's case is not at issue. The CCA's haphazard application of something closer to Reed's preferred standard as part of its alternative reasoning does not undo its construction of Article 64 to contain an unconstitutional exoneration requirement.

What's more, as Goertz admits (Suppl. Br. 20), the CCA's analysis on this point was essentially meaningless; it excluded those items (including the belt used to murder Stites) that it had previously found were barred from testing under Article 64 because they had purportedly been contaminated. *Supra* pp. 3-11. Most pieces of evidence left, by that point of the analysis, were (according to the CCA) items of "uncertain provenance or connection to the crime scene." ROA.302. Indeed, the interaction of the CCA's unconstitutional contamination and exoneration interpretations of Article 64 only underscores that the aggregate effect of the law denies prisoners like Reed due process. *Infra* p. 20.

**d.** Finally, Goertz retreats (Suppl. Br. 19-20, 24-25) to his substantive due process and *Rooker-Feldman* arguments, which, as noted, make no sense and the Supreme Court and this Court have rejected. *Reed*, 598 U.S. at 234-35; *Reed*, 995 F.3d at 429-30. Reed does not assert that all prisoners have

an unconditional right to DNA testing—only that Texas has failed to provide
adequate procedures for prisoners to vindicate the substantive liberty inter-
est Texas law confers. *See Osborne*, 557 U.S. at 69; *supra* pp. 8-9. And Reed
doesn't trigger *Rooker-Feldman* simply by using the facts of his case to illus-
trate that Goertz's reliance on the CCA's unconstitutional interpretation of
Article 64 has denied him due process, or because Goertz would characterize
Reed's arguments as "as applied." *Supra* pp. 10-11. Indeed, Reed's suit chal-
lenges Goertz's reliance on the CCA's unconstitutional construction of
Article 64 (as "the *Ex parte Young* doctrine allows," *Reed*, 598 U.S. at 234), and
so necessarily must discuss his own case.

**C.    The CCA's construction of Article 64's unreasonable-delay
requirement also violates due process.**

**1.**    The CCA's construction of Article 64's unreasonable-delay re-
quirement violates due process because it arbitrarily prevents prisoners
from obtaining touch-DNA testing after the 2011 amendments, even though
those amendments were the first notice that touch-DNA testing was availa-
ble, effectively punishing prisoners for working to develop other evidence
of innocence in the meantime. Reed Suppl. Br. 27-30. Punishing prisoners for
exercising their other legal rights before pursuing DNA testing under Article

64 is not any more fair in this context than it is in any other. *See, e.g.*, *Doyle*, 426 U.S. at 618-20; *Griffin v. California*, 380 U.S. 609, 612-15 (1965). And interpreting Article 64's unreasonable-delay requirement to preclude prisoners from seeking touch-DNA testing, because they should have anticipated that a 2011 amendment to the law would allow for that type of testing, punishes prisoners for not being fortunetellers and makes the amendment an illusory promise. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

**2.**    Goertz's counterarguments fail.

**a.**    Goertz again claims forfeiture. Suppl. Br. 26-27. But Goertz's own citation shows that Reed directly challenged the CCA's interpretation of the unreasonable-delay requirement. Reed argued, for example, that the CCA's construction "violated [his] rights to procedural due process by faulting him for not bringing a[n] A[r]ticle 64 motion prior to" when "the statute was amended." ROA.187. That's the same argument Reed makes on appeal, *see supra* pp. 16-17, and he is not strictly bound by the way he articulated the argument below, *see Yee*, 503 U.S. at 534.

**b.**    On the merits, Goertz's insistence that Article 64's unreasonable-delay requirement doesn't violate due process fails.

*i.*    Goertz mistakenly assumes that Reed attacks the mere existence of an unreasonable-delay requirement and not the CCA's *interpretation* of that requirement. His observation that other jurisdictions' DNA-testing laws contain unreasonable-delay requirements, and his conclusory characterization of Article 64's requirement as "generous," Suppl. Br. 27, do not respond to the specific deficiencies that Reed has identified. Goertz fails to address Reed's argument that the CCA's characterization of Article 64's unreasonable-delay requirement punishes prisoners for not foreseeing that the 2011 amendment to Article 64 would make touch-DNA testing available and who have diligently pursued other avenues to prove their innocence in the meantime.

The "federal counterpart" and the "model" for DNA-testing laws that Goetz cites (Suppl. Br. 27) proves the constitutional deficiencies with the CCA's interpretation of Article 64. In assessing the timeliness of a prisoner's request, the federal law expressly requires courts to "consider[] all relevant facts and circumstances surrounding" the request. 18 U.S.C. § 3600(a)(10)(B)(iii). Goertz doesn't cite any statute — or any court decision — that makes it harder to obtain DNA testing for prisoners who have pursued other means to demonstrate their innocence.

*ii.*     Goertz again falls back (Suppl. Br. 29) on his argument that Reed cannot discuss the facts of his case because he is challenging the CCA's authoritative interpretation of Article 64 and not that court's underlying judgment. That argument fails for all the reasons discussed above. *See supra* pp. 9-11. Again, Reed claims, under *Ex parte Young*, that Goertz is relying on the CCA's unconstitutional construction of the law to deny Reed DNA testing because Reed diligently pursued his innocence in state habeas proceedings and because he could not foresee that a 2011 amendment would make touch-DNA testing available. *See Reed*, 598 U.S. at 234. The fact that *other* hypothetical prisoners might not have diligently pursued their innocence, *see* Goertz Suppl. Br. 28, doesn't make the law constitutional and does not make Goertz's reliance on the CCA's unconstitutional construction any less of a violation of Reed's due-process rights.

*iii.*     Finally, as a factual matter, Goertz is wrong (Suppl. Br. 28-29) that Reed has failed to diligently pursue DNA testing. Reed has worked tirelessly since his conviction to prove his innocence, including by seeking DNA testing. Reed first sought—and was denied—DNA testing in 1999, two years before Article 64 was enacted. ROA.172. In the intervening fifteen years before he requested DNA testing (again) under Article 64, Reed amassed a

"considerable body of evidence" in his state habeas proceedings that he was innocent. *Reed v. Texas*, 140 S. Ct. 686, 687 (2020) (statement of Sotomayor, J., respecting the denial of certiorari). And although Goertz asserts that the CAA "specifically addressed" Reed's argument that he could not have sought touch-DNA testing before Article 64's 2011 amendment, Suppl. Br. 29, Goertz provides no cogent explanation why Reed would have had any reason to do so before 2011. Before 2011, neither the text of Article 64 nor any prior CCA opinion suggested that type of testing was available.

### D. The requirements the CCA has read into Article 64 violate due process individually and collectively.

The non-contamination, exoneration, and unreasonable-delay requirements each violate due process. *Supra* pp. 3-20. And their combined effect only exacerbates that violation by ensuring that Article 64 is fundamentally inadequate to vindicate a prisoner's state-created right to prove his innocence. Reed Suppl. Br. 30-31. Goertz fails to address the cumulative effect of those three constitutional deficiencies and the fact that, for prisoners like Reed, Article 64 is available in theory but not in practice. The Constitution's due-process guarantee demands more.

# CONCLUSION

This Court should reverse and remand.


Dated: October 23, 2023   Respectfully submitted,

        */s/ Parker Rider-Longmaid*


Cliff Gardner       Parker Rider-Longmaid
Michelle L. Davis     *Counsel of Record*
Sarah Runnells Martin   SKADDEN, ARPS, SLATE,
Gregory P. Ranzini     MEAGHER & FLOM LLP
Peyton V. Carper     1440 New York Ave., NW
SKADDEN, ARPS, SLATE,   Washington, DC 20005
 MEAGHER & FLOM LLP  Telephone: 202-371-7000
920 N. King St.      parker.rider-longmaid@skadden.com
Wilmington, DE 19801

         Jeremy Patashnik
Barry C. Scheck     SKADDEN, ARPS, SLATE,
Jane Pucher       MEAGHER & FLOM LLP
THE INNOCENCE PROJECT  One Manhattan West
40 Worth St., Ste. 701   New York, NY 10001
New York, NY 10013

         Andrew F. MacRae
         MACRAE LAW FIRM PLLC
         3267 Bee Cave Rd., Ste. 107, PMB 276
         Austin, TX 7846


*Counsel for Plaintiff-Appellant Rodney Reed*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this supplemental reply brief complies with the type-volume limitation set out in the Court's May 23, 2023, order because, as calculated by Microsoft Word, it contains 3,999 words, within the order's limit of 4,000 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: October 23, 2023            */s/ Parker Rider-Longmaid*
                                Parker Rider-Longmaid

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2023, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 23, 2023         */s/ Parker Rider-Longmaid*
                              Parker Rider-Longmaid