SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 NEW YORK AVENUE, N.W.
WASHINGTON, D.C. 20005-2111
_____
TEL: (202) 371-7000
FAX: (202) 393-5760
www.skadden.com

DIRECT DIAL
(202) 371-7061
DIRECT FAX
(202) 661-4061
EMAIL ADDRESS
PARKER.RIDER-LONGMAID@SKADDEN.COM

FIRM/AFFILIATE OFFICES
_____
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON
_____
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

February 26, 2025

Lyle W. Cayce
Clerk of the Court
U.S. Court of Appeals for the Fifth Circuit
F. Edward Herbert Building
600 S. Maestri Place
New Orleans, LA 70130

> RE: *Reed v. Goertz*, No. 19-70022 (5th Cir.): Federal Rule of Appellate Procedure 28(j) letter regarding oral argument in *Gutierrez v. Saenz*, No. 23-7809 (U.S. Feb. 24, 2025) (transcript (Tr.) attached)

Dear Mr. Cayce:

At oral argument earlier this week before the U.S. Supreme Court in *Gutierrez v. Saenz*, No. 23-7809 (U.S.), the Office of the Attorney General of Texas repeatedly conceded that Reed has standing to pursue this 42 U.S.C. § 1983 action seeking DNA testing. The Attorney General's Office, which also represents District Attorney Bryan Goertz here, made those concessions through a Deputy Solicitor General presenting oral argument for Luis Saenz, the District Attorney refusing to let death-row inmate Ruben Gutierrez perform DNA testing.

As the Deputy Solicitor General correctly explained, Reed has standing because "there is a chance" that a favorable "declaratory judgment would, in fact, redress his injury." Tr. 65. That's because, as the Deputy Solicitor General noted, "Reed [is] challenging all the justifications" that District Attorney Bryan Goertz has relied on to continue denying Reed DNA

testing of key pieces of evidence. Tr. 62. And Reed "may well … prevail[] on those grounds and thereby eliminate[] the justification" for denying testing, because "those grounds are currently pending live" before this Court "right now." *Id*. Indeed, the Attorney General's Office made that concession repeatedly—and even acknowledged that the Supreme Court "rightly said" that Reed has standing. Tr. 98-99; *see also* Tr. 62, 65, 85-86, 91-92, 94-95, 100.

The Attorney General's Office's concession before the Supreme Court departs from its previous position before this Court. In its supplemental brief here, submitted after the remand from the Supreme Court, the Office said it "does not believe that the district court possessed subject matter jurisdiction over the action," even though it "acknowledge[d]" that "both this Court and the Supreme Court have found otherwise." Suppl. Br. 2.

As Reed has explained (Suppl. Br. 10-11), the Supreme Court has already concluded that Reed has standing. *Reed v. Goertz*, 598 U.S. 230, 234 (2023). That holding is binding on this Court no matter the Attorney General's Office's position on standing. Counsel nonetheless writes to inform the Court that the Attorney General's Office now agrees that Reed has standing.

Respectfully,

*/s/ Parker Rider-Longmaid*

Parker Rider-Longmaid

*Counsel for Plaintiff-Appellant*
 *Rodney Reed*

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) this letter complies with the type-volume limitation of Federal Rule of Appellate Procedure 28(j) because, as calculated by Microsoft Word, the body of the letter contains 333 words, and (2) this letter complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: February 26, 2025          */s/ Parker Rider-Longmaid*

                                                    Parker Rider-Longmaid


## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2025, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: February 26, 2025          */s/ Parker Rider-Longmaid*

                                                    Parker Rider-Longmaid

## ADDENDUM

Oral argument transcript in *Gutierrez v. Saenz*, No. 23-7809 (U.S. Feb. 24, 2025)

# SUPREME COURT
# OF THE UNITED STATES

IN THE SUPREME COURT OF THE UNITED STATES

- - - - - - - - - - - - - - - - - -

RUBEN GUTIERREZ,                    )

        Petitioner,         )

          v.                    ) No. 23-7809

LUIS SAENZ, ET AL.,                 )

        Respondents.        )

- - - - - - - - - - - - - - - - - -

Pages:  1 through 107

Place:  Washington, D.C.

Date:   February 24, 2025

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 206
Washington, D.C.  20005
(202) 628-4888
www.hrccourtreporters.com

```
 1      IN THE SUPREME COURT OF THE UNITED STATES
 2    - - - - - - - - - - - - - - - - - -
 3    RUBEN GUTIERREZ,                    )
 4                    Petitioner,         )
 5                 v.                     ) No. 23-7809
 6    LUIS SAENZ, ET AL.,                 )
 7                    Respondents.        )
 8    - - - - - - - - - - - - - - - - - -
 9
10                    Washington, D.C.
11                Monday, February 24, 2025
12
13          The above-entitled matter came on for
14    oral argument before the Supreme Court of the
15    United States at 10:04 a.m.
16
17    APPEARANCES:
18    ANNE E. FISHER, Assistant Federal Defender,
19        Philadelphia, Pennsylvania; on behalf of the
20        Petitioner.
21    WILLIAM F. COLE, Deputy Solicitor General, Austin,
22        Texas; on behalf of the Respondents.
23
24
25
```

1                    C O N T E N T S

2    ORAL ARGUMENT OF:                          PAGE:

3    ANNE E. FISHER, ESQ.

4         On behalf of the Petitioner            3

5    ORAL ARGUMENT OF:

6    WILLIAM F. COLE, ESQ.

7         On behalf of the Respondents          58

8    REBUTTAL ARGUMENT OF:

9    ANNE E. FISHER, ESQ.

10        On behalf of the Petitioner          105

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2                                    (10:04 a.m.)

3              CHIEF JUSTICE ROBERTS:  We will hear

4    argument this morning in Case 23-7809, Gutierrez

5    versus Saenz.

6              Ms. Fisher.

7              ORAL ARGUMENT OF ANNE E. FISHER

8                ON BEHALF OF THE PETITIONER

9              MS. FISHER:  Mr. Chief Justice, and

10   may it please the Court:

11              This Court recently held that Texas

12   prisoner Rodney Reed has standing to challenge

13   certain -- certain procedures contained in the

14   Texas post-conviction statute known as Chapter

15   64 because a declaratory judgment that those

16   procedures were unconstitutional would redress

17   Mr. Reed's injury by eliminating the

18   prosecutor's reliance on those same procedures

19   as a reason to deny testing.

20              This Court should hold that

21   Mr. Gutierrez has standing for the same reason.

22   The injury here is redressable because a

23   declaratory judgment that finds certain

24   procedures in Chapter 64 unconstitutional

25   eliminates those statutory procedures as a

1    lawful reason for Respondents to forbid testing.

2            But, even if this Court should apply a

3    more searching inquiry, Mr. Gutierrez would

4    still have standing.  It is important to

5    remember that the declaratory judgment at issue

6    here does more than simply focus on the

7    availability of DNA testing to show death

8    ineligibility.  It recognizes the inherent

9    conflict between the Chapter 64 statute and the

10   habeas death ineligibility statute, and it

11   requires that the procedures for obtaining DNA

12   testing do not obstruct the right that Texas has

13   given prisoners to seek habeas relief based on

14   newly developed evidence.

15           The CCA has never considered what

16   procedures in Chapter 64 are necessary to cure

17   the constitutional infirmity found by the

18   district court, nor has it ever determined

19   whether Mr. Gutierrez would be able to access

20   DNA evidence under a constitutional version of

21   the statute.

22           None of the reasons given by

23   Respondents for denying access to the evidence

24   are independent of the due process violation

25   found by the district court.  They are part and

1       parcel of decisions by the CCA made under an

2       unconstitutional version of the statute,

3       applying procedures found to be inadequate to

4       vindicate the right at the heart of the

5       declaratory judgment.

6               The district court's declaratory

7       judgment would eliminate all the reasons

8       Respondents rely on to deny testing and redress

9       Mr. Gutierrez's injury.

10              I welcome your questions.

11              JUSTICE THOMAS:  Didn't the CCA

12      consider the testing after the declaratory

13      judgment?

14              MS. FISHER:  No, Your Honor.  By the

15      time Mr. Gutierrez brought his case to the CCA,

16      the Fifth Circuit had already taken away the

17      declaratory judgment, a point the CCA was very

18      clear to make in their opinion.  So the binding

19      effect of that declaratory judgment wasn't

20      present and the CCA did not apply it.  So the

21      CCA has actually never decided this case with

22      the declaratory judgment in hand.

23              JUSTICE THOMAS:  So what else would

24      you have to do if this goes -- if you -- if the

25      declaratory judgment is reinstated?  What else

1    would you have to do at the CCA level?

2              MS. FISHER:  If we were to win the --

3              JUSTICE THOMAS:  Yes.

4              MS. FISHER:  -- if the Fifth Circuit

5    were to uphold the declaratory judgment, we

6    would first go to Respondents and see if they

7    would turn over the DNA assume -- under a

8    constitutional version of the statute.

9              If not, we would file another Chapter

10   64 motion, which would have the binding res

11   judicata effect by binding the parties to the

12   constitutional version of the declaratory

13   judgment, which requires adequate procedures to

14   vindicate the right in the habeas statute, and

15   we would ask the CCA to apply that res judicata

16   effect and we would ask for testing.

17             JUSTICE THOMAS:  But short of a court

18   order, it -- would the district attorney --

19   isn't it -- the prosecutor, isn't that

20   discretionary?

21             MS. FISHER:  Without a court order, it

22   is discretionary, Your Honor.  But, as this

23   Court decided in Reed, the -- the district

24   attorneys simply averring that they won't turn

25   over DNA evidence isn't enough to defeat

1    standing.

2            The district attorney in Reed also

3    made that argument, and this Court rejected that

4    argument.

5            JUSTICE SOTOMAYOR:  Can I get us back

6    to the question presented?

7            MS. FISHER:  Yes, Your Honor.

8            JUSTICE SOTOMAYOR:  Was does Article

9    III standing require a -- I'm reading the

10   question presented -- particularized

11   determination of whether a specific state

12   official will redress the plaintiff's injury by

13   following a favorable declaratory judgment?

14           So I thought this case was only about

15   standing because the court before didn't get to

16   the due process arguments, did it?

17           MS. FISHER:  I completely agree this

18   case is here about standing.  And our answer to

19   the question presented would be that you don't

20   need to look to whether a -- a particular

21   district attorney would grant relief.  Instead,

22   you would --

23           JUSTICE SOTOMAYOR:  Well, you need

24   likelihood of success that they might.  And we

25   assume that an official whose reasons are

1      declared unconstitutional wouldn't rely on them,

2      correct?

3                    MS. FISHER:  That's correct, Your

4      Honor.

5                    JUSTICE SOTOMAYOR:  All right.  So,

6      really, I thought this case was simply about was

7      Texas right in dismissing it for lack of

8      standing.

9                    MS. FISHER:  By Texas -- well, the --

10                   JUSTICE SOTOMAYOR:  I'm sorry.  Was

11     the court below right by dismissing this on --

12     by -- because of lack of standing?

13                   MS. FISHER:  Yes, Your Honor.  The

14     Fifth Circuit was not correct to dismiss this

15     for lack of standing because they basically

16     applied a new standard, a new test.  Reed simply

17     applied the -- the Lujan test, the same test

18     that was in Utah versus Evans.  We don't believe

19     that the standing determination in Reed was --

20     was designed to create some sort of new test.

21                   But the Fifth Circuit saw it that way,

22     and, as they said in their footnote, they chose

23     to go beyond what this Court did in Reed and

24     look at the state record.  And --

25                   JUSTICE ALITO:  Well, the -- I'm

1      sorry.  The -- the defendant in this case is the

2      district attorney, right?

3                MS. FISHER:  That's correct, Your

4      Honor.

5                JUSTICE ALITO:  And so would you agree

6      that you have to show that what you seek,

7      obtaining access to evidence for DNA testing,

8      would be redressed by a declaratory judgment

9      that applies to the district attorney?

10               MS. FISHER:  We would have to --

11               JUSTICE ALITO:  Has to be redressed

12     through the district attorney?

13               MS. FISHER:  Yes, Your Honor.

14     However, the district attorney isn't bound by a

15     declaratory judgment.  What they would be bound

16     by is the res judicata effect of the declaratory

17     judgment on the parties.

18               Should the district attorney choose

19     not to give the DNA, we could then go back to

20     state court and would have the declaratory

21     judgment in hand, and the state court would be

22     bound by the determination of the --

23               JUSTICE ALITO:  Well, let me ask it

24     this way.  Is this -- do you think the standing

25     argument is different because you sought a

1    declaratory judgment as opposed to an

2    injunction?

3              MS. FISHER:  Well, we were not able to

4    seek an injunction.  We tried to seek an

5    injunction in this case, and -- and we lost.

6    But we seek a declaratory judgment just like

7    Rodney Reed sought a declaratory judgment, just

8    like --

9              JUSTICE ALITO:  Well, would there be

10   standing if you sought an injunction?

11             MS. FISHER:  There would be --

12             JUSTICE ALITO:  That you'd -- you

13   would to have show that you could vindicate what

14   you seek by means of an order directed to the

15   defendant, that is, the attorney general?

16             MS. FISHER:  Yes.  We would have

17   sand -- standing if we sought an injunction.  If

18   the court had power to order the district

19   attorney -- attorney to turn over the evidence,

20   we would have standing to seek that.

21             JUSTICE KAVANAUGH:  And some of the --

22             JUSTICE KAGAN:  And you asked for

23   that, didn't you?  I mean, in -- if I read

24   paragraph 97 of your complaint, that asks, among

25   other things, for an injunction to the district

1      attorney, is that correct?

2              MS. FISHER:  That's correct, Your

3      Honor.

4              JUSTICE KAGAN:  And is there still a

5      possibility of getting that or not?

6              MS. FISHER:  No, Your Honor.

7              JUSTICE KAGAN:  Because?

8              MS. FISHER:  Well, we lost that --

9      we -- we weren't granted relief on that claim

10     and we did not appeal that claim, and so we're

11     not seeking relief on that claim through an

12     appellate process.

13             JUSTICE KAVANAUGH:  Some of the

14     awkwardness, I suppose, of the procedure here

15     stems really from Osborne and Skinner itself in

16     that it recognized a 1983 right in a context

17     where, arguably, habeas, that, certainly, the

18     dissenters pointed that out, but we are where we

19     are on that, and that seems to me to -- to

20     undergird some of the awkwardness here.

21             MS. FISHER:  I couldn't agree more,

22     Your Honor.  I think it's a -- it is a bit of a

23     sort of awkward construct to sue the district

24     attorney when it's a -- discretionary based on a

25     declaratory judgment, but that's what Osborne

1    and Skinner and now Reed have said that you do.

2              And the idea, I believe, is that the

3    declaratory judgment, while it wouldn't bind

4    or -- it wouldn't force the district attorney to

5    turn over the evidence, it would be a legal

6    ruling from a federal court that the procedures

7    in question were unconstitutional.  And we

8    believe that the district attorney, if they were

9    ordered by the Court to turn it over,

10   wouldn't -- would, of course, turn it over in

11   the state court or that they wouldn't rely on an

12   unconstitutional statute.

13             JUSTICE KAVANAUGH:  Now, when you get

14   back to state court -- say you won and the Fifth

15   Circuit said it's a procedural due process

16   problem.  You get back to state court, it's not

17   turned over by the prosecutor.

18             The state court would presumably go

19   through the Chapter 64 proceeding, right, and --

20   and figure out, okay, does this -- is he

21   entitled to the testing, or would it be, in

22   essence, harmless error even if he were entitled

23   to the testing, which is akin to what they've

24   done already, I guess.

25             MS. FISHER:  Well, our position, Your

1     Honor, is that the CCA has never actually

2     decided whether Mr. Gutierrez should get testing

3     under a constitutional version of the statute.

4               JUSTICE KAVANAUGH:  Mm-hmm.

5               MS. FISHER:  You are correct.  We

6     would go back to state court.  We would file

7     another Chapter 64 motion with a

8     constitutional -- asking for the court to apply

9     the constitutional determination made by the

10    federal district court.

11              JUSTICE KAVANAUGH:  And by

12    "constitutional," just so I'm under -- you mean

13    a system where you can bring a Chapter 64 not

14    just to show you're innocent of -- innocent of

15    the underlying crime but that you're ineligible

16    for the death penalty?  That's where the

17    procedural due process issue is?

18              MS. FISHER:  It's that plus more,

19    though, because it's not simply sort of slapping

20    on death eligibility to the current Chapter 64

21    statute, because the current Chapter 64 statute

22    is designed to figure out who should get DNA

23    testing to determine who's actually innocent of

24    the crime.

25              So all of the procedures that are

1    baked into Chapter 64, by -- by necessity, it's

2    logical, I'm sure Texas had reasons for doing

3    this, are designed to decide who should get DNA

4    testing to show they're actually innocent.

5              JUSTICE GORSUCH:  Ms. Fisher, that --

6    that's -- I'd just like to follow up on that

7    because, in the June order from the TCCA,

8    looking at Joint Appendix 478 and 479 -- and I'm

9    sure you're familiar with it -- they say, even

10   if 64 -- Chapter 64 does apply to the question

11   of death eligibility, that your client still

12   wouldn't receive relief because, effectively, as

13   Justice Kavanaugh pointed out, harmless error

14   here.

15             And -- and -- and what do we do about

16   that?  They seem to have anticipated this --

17   this very issue because it was before the

18   district court, though, you're right, the Fifth

19   Circuit came out the other way.  But this

20   issue's been lingering in the case for a long

21   time, and the TCCA has said now, I think twice,

22   that whether 64 applies to the death stage --

23   death penalty stage or not, your client would

24   not seek -- be eligible for relief.

25             Thoughts?

1           MS. FISHER:  Yes, Your Honor.  The

2    provision that -- when the CCA made that ruling,

3    they weren't considering the due process

4    violation found by the district court, which,

5    again, goes beyond simply asking does Chapter 64

6    in its current iteration allow for death

7    ineligibility.

8           What the due process violation found

9    by the district court addresses are the

10   procedures within Chapter 64 and whether or not

11   they're adequate to vindicate the right --

12          JUSTICE GORSUCH:  Well, I -- I -- I'm

13   sorry to interrupt you there, but the TCCA said,

14   given the evidence presented, the statute did

15   not operate unconstitutionally as to Appellant

16   because -- harmless error, effectively.  I'm

17   summarizing, but that's the gist of it.

18          Are you saying your due process claim

19   would preclude a court from applying a harmless

20   error test?

21          MS. FISHER:  No, Your Honor.  What I

22   am saying is that that determination by the

23   Texas CCA was not saying that the procedures in

24   Chapter 64 are inadequate and we need to look

25   how -- what -- what will make them adequate.

1            By limiting their determination to the

2    record evidence -- and you'll see -- I --  I'm

3    sure you've seen -- they simply sort of cut and

4    paste and recite the two sentences, the "even

5    if" determination --

6            JUSTICE GORSUCH:  Yeah.

7            MS. FISHER:  -- back from 2011.

8            JUSTICE GORSUCH:  That they'd

9    previously said, yeah.

10           MS. FISHER:  Right.  That

11   determination does not actually consider how to

12   make Chapter 64 a test that will vindicate the

13   right in a way that isn't illusory, and that's

14   because the --

15           JUSTICE GORSUCH:  I guess I'm

16   struggling to understand what you would have

17   them do besides say 64 applies to the death

18   penalty stage.  What's your due process

19   complaint besides that?

20           MS. FISHER:  They would have to

21   consider a broader scope of evidence.  The key

22   words in that "even if" holding that they had or

23   the -- what Your Honor cited is when they say

24   they limit it to the trial evidence or the

25   record evidence.

1          That limitation is a limitation that
2     was designed with the procedures in Chapter 64
3     that were supposed to figure out who's going to
4     get DNA to show they're actually innocent.  And
5     that's because, if you add DNA to the mix of
6     trial evidence, you can pretty easily figure out
7     if DNA is going to show someone is actually
8     innocent.
9          CHIEF JUSTICE ROBERTS:  Well, but
10    that's -- that's added to this, and you're sort
11    of figuring out, well, how -- how much is the
12    weight of the evidence.  Would it -- how much
13    would it take?  Like a tiny thimbleful of
14    additional evidence?  I mean, how is a court
15    supposed to figure that out?
16         MS. FISHER:  Well, this -- the -- a
17    petitioner could go before a federal court and
18    argue a due process claim because they had just
19    a little bit of new evidence, but I would
20    suspect that that petitioner would be turned
21    down because of a 12(b)(6) ruling.  So it would
22    still have to be meaningful evidence.
23         No court has considered this evidence,
24    and it really is the scope of evidence that's
25    critical here because those prior decisions by

1    the CCA didn't look at the right that was being

2    squelched in the due -- in the habeas petition.

3                    JUSTICE KAVANAUGH:  When you're

4    bringing --

5                    JUSTICE JACKSON:  But I thought --

6                    JUSTICE ALITO:  Are -- are --

7                    JUSTICE KAVANAUGH:  -- when you're

8    bring --

9                    JUSTICE ALITO:  No, go ahead.

10                   JUSTICE KAVANAUGH:  When you're

11   bringing the new claim, you're going to argue, I

12   gather, and have argued that there's more than

13   just DNA since the trial?

14                   MS. FISHER:  That's exactly it.  To

15   file a claim that a petitioner is

16   death-ineligible --

17                   JUSTICE KAVANAUGH:  And can you

18   explain what that is?  I'd be interested in you

19   listing what that is.

20                   MS. FISHER:  Yes.  So what

21   Mr. Gutierrez would need to present in his claim

22   to show that he's death-ineligible would be two

23   different types of new evidence.  It would need

24   the DNA because he'd have to show that he wasn't

25   actually in the home and that he didn't actually

1      kill the decedent.

2              But he'd also have to show evidence to

3      show that he wasn't a major participant of the

4      crime.  This is the Enmund/Tison liability.

5              That evidence is not going to be in

6      the form of record evidence or DNA.  That's

7      going to be newly developed evidence like we

8      have found, which would include things like --

9      and this is not an exhaustive list -- but it

10     would include things like a statement from the

11     primary suspect, Avel Cuellar's nephew, that

12     Mr. Cuellar, who everyone in the trailer park

13     believed had killed her when this happened, had

14     actually approached him about committing this

15     very crime two weeks before the crime and that

16     after the crime he had hundreds of thousands of

17     dollars buried in the trailer park near his

18     home, and there were hundreds of thousands of

19     dollars that were not accounted for after this

20     crime occurred.

21             JUSTICE ALITO:  But --

22             MS. FISHER:  They would have to do a

23     lie detector test that the -- wasn't discovered

24     by trial counsel.

25             All things that would go to his role

1    because Mr. Gutierrez was tried under the law of

2    parties.

3         JUSTICE ALITO:  What does that have to

4    do with the question whether the limitation in

5    the Texas statute to evidence that shows

6    innocence as opposed to death ineligibility is

7    constitutional?

8         That's a separate question, isn't it?

9    Whether it's -- you're -- are you arguing that

10   it's a violation of his constitutional rights

11   for Texas to say that in this context -- for the

12   Texas courts to say, in this context, we are

13   only considering evidence that's already in the

14   record?

15        MS. FISHER:  No, Your Honor.  We

16   wouldn't argue it separately because it's part

17   of the procedures that don't -- that make the

18   right to file the habeas illusory, and if I may

19   explain.

20        The limitation is designed to limit

21   the access to evidence to people who can show

22   they're actually innocent who weren't also a

23   party to the crime.

24        The law of parties actually really is

25   critical here because the reason Mr. Gutierrez

1     was told by the CCA that he couldn't access

2     evidence to show that he didn't actually kill

3     the decedent -- or, excuse me, wasn't in the

4     house was because he was still -- there was

5     enough record evidence to show he was still a

6     party to the crime.

7              And so it didn't really matter if he

8     was the person who killed the decedent or was in

9     the home.  There was enough evidence to show he

10    was a party.  And if he was a party, then DNA

11    evidence wouldn't exonerate him.

12             JUSTICE ALITO:  Well, I understand --

13             JUSTICE BARRETT:  Counsel --

14             JUSTICE ALITO:  -- I understand all

15    that.  But, when you talk about this other

16    evidence, you're raising all sorts of other

17    issues.  It's -- is it newly discovered

18    evidence?  Could you have had access to this

19    evidence at the time of trial?  Does it meet all

20    of the other requirements of newly discovered

21    evidence?  To what extent, if any, is any of

22    that constitutionally required?

23             Your own -- that doesn't seem to have

24    anything to do with the question whether this

25    differentiation under Texas law between evidence

1      that shows lack of guilt and evidence that shows

2      death ineligibility is constitutional.

3              MS. FISHER:  Justice Alito, adding DNA

4      evidence simply to the record evidence will

5      almost never show that someone's not a major

6      participant of the crime, which is what someone

7      needs to show to show that they're

8      death-ineligible.  It's that other part of the

9      evidence that I was addressing with Justice

10     Kavanaugh.

11             And so, because the 5(a)(3) section,

12     this habeas section on death ineligibility,

13     requires -- is -- is a section designed to show

14     death ineligibility based on newly developed

15     evidence, when the Chapter 64 test for who

16     should get evidence doesn't consider that same

17     scope of evidence, the right to file the chap --

18     the subsequent habeas petition remains illusory.

19             JUSTICE BARRETT:  Ms. Fisher, can I

20     bring you back to standing?  So you sued the

21     DA -- I just want to make sure that I understand

22     exactly what you want out of this.  Is it your

23     position that the DA -- even though the decision

24     whether to give DNA evidence is discretionary

25     when made on the part of the DA, is it your

1     position that a declaratory judgment would

2     influence that judgment because the DA takes

3     Article 64 into account in making that decision,

4     even if it doesn't bind him, that he would take

5     it into account and it would be a factor, and

6     so, if it were unconstitutional, it would be

7     taken out of the bundle of factors that might

8     influence the DA's discretionary decision?  Is

9     that your position?

10              MS. FISHER:  I believe -- I -- if I'm

11    understanding Your Honor correctly, yes in the

12    sense that it's not that it would influence them

13    but that the reasons they have cited are tied in

14    to the unconstitutional --

15              JUSTICE BARRETT:  "They" have cited?

16    The DA has cited?

17              MS. FISHER:  The reasons Respond --

18              JUSTICE BARRETT:  Because you sued the

19    DA.  This can't be about the Texas courts.

20              MS. FISHER:  The reasons the

21    Respondents have cited in their merits brief

22    are -- are -- for not turning over the evidence

23    are not simple recalcitrance.  They didn't

24    simply say, well, we really just don't want to

25    turn over the DNA.  They cited reasons that were

 1          found within the statute.

 2                    And if those reasons, those statutory

 3          reasons, were found to be unconstitutional, we

 4          believe that the District Attorney's Office

 5          wouldn't rely on those.

 6                    JUSTICE BARRETT:  So it would be the

 7          equivalent -- you sought an injunction

 8          initially, as you told Justice Kagan, trying to

 9          get the DNA evidence.  That's off the table.

10                    MS. FISHER:  Yes.

11                    JUSTICE BARRETT:  Now, if we imagine

12          this as an injunction, it would be an injunction

13          enjoining the DA from taking account of the

14          merits reasons that you say he cites, which

15          really kind of go back to Article 64?

16                    MS. FISHER:  Well, it always goes back

17          to Article 64, Your Honor, because of the

18          discretionary nature.  And I --

19                    JUSTICE BARRETT:  But Article 64 is a

20          jurisdictional provision that binds the court.

21          So I'm trying to tie up -- you have to have a

22          redressability argument to the DA.  And in Reed,

23          I think that's the way to understand Reed, that

24          it was going to the DA's discretionary

25          determination that the DA could not consider --

1      all of this is assuming at the pleading stage,

2      right, that the DA, if it was unconstitutional,

3      couldn't take that into account even if it

4      didn't bind him because it was an

5      unconstitutional reason in the same way, say,

6      race would be an unconstitutional reason.

7              So I am trying to figure out what you

8      want out of the DA.

9              MS. FISHER:  It's the same thing in

10     Reed.  The reasons that they're saying they

11     won't turn over the -- the DNA now are also

12     based on unconstitutional reasons.  The --

13             JUSTICE BARRETT:  Article 64?

14             MS. FISHER:  Not in its entirety.  The

15     procedures that barricade the right to develop

16     the habeas separately --

17             JUSTICE BARRETT:  Does the DA have to

18     consider Article 64?  Could the DA deny evidence

19     for reasons entirely apart from Article 64?

20             MS. FISHER:  I would say no, Your

21     Honor, because the whole purpose of a 1983 is to

22     prevent state actors from acting in ways that

23     violate constitutional rights.  And if a

24     provision -- if a federal court found that

25     provisions in 1983 -- I'm sorry, in Chapter 64

1    were unconstitutional and violated due process

2    and the district attorney decided to rely on

3    those same unconstitutional issues --

4              JUSTICE BARRETT:  No.  No, no, no, no,

5    no.  I said not -- I -- the question that I

6    asked you was could the DA deny access to the

7    DNA evidence, just putting Article 64 entirely

8    aside, just saying, listen, I don't believe in

9    giving DNA evidence, you can go to the court and

10   try to get it, but it's the policy of this

11   office not to hand it over.

12             MS. FISHER:  Yes, the DA could here,

13   and the DA could in Reed as well.

14             JUSTICE BARRETT:  Okay.

15             JUSTICE JACKSON:  But would that

16   defeat standing?  I mean, what -- I don't

17   understand that to be an argument for you not to

18   be able to press forward in this situation where

19   the DA, you say, has relied on 64.

20             MS. FISHER:  Exactly.  If they were to

21   just simply say we're not turning it over, that

22   wouldn't impact our standing in this case.

23   That's the argument that Reed's -- that the

24   district attorney in Reed made to this Court

25   both in oral argument and briefing.  Reed --

1       the --

2               JUSTICE JACKSON:  And it seems to be

3       the argument that is propelling the Fifth

4       Circuit here.  In other words, to the extent

5       that there are other bases for the DA to deny

6       this evidence, it's not redressable.  That's

7       what I sort of understood to be the core of

8       their analysis, and I -- I'm worried about that.

9               MS. FISHER:  Absolutely.  And, again,

10      that's why 1983 is the right tool for this,

11      because, if they're going to rely on reasons

12      other than Chapter 64, a constitutional version

13      of Chapter 64, to deny evidence, well, then

14      that's basically the argument that -- that the

15      district attorney in Reed brought to this Court

16      and this Court rejected.

17              The district attorney in Reed briefed

18      and argued that a declaratory judgment will not

19      make it more likely that they will turn it over.

20      They will not --

21              JUSTICE JACKSON:  Because there were

22      these other reasons.

23              MS. FISHER:  Yes.

24              JUSTICE JACKSON:  And the Court said

25      that's not -- in this situation -- I mean, I --

1    let me just go back to your initial statement

2    about whether or not you see Reed as setting up

3    a new test or just re-articulating

4    redressability as it has traditionally been

5    understood.

6           I thought that was the case, that Reed

7    was not suggesting that now redressability is

8    evaluated based on a determination of how likely

9    it is that the person will actually get the

10   relief that they are seeking, meaning there are

11   no other bases that would preclude them from

12   getting that relief.

13          Am I right about that?

14          MS. FISHER:  You are right, Your

15   Honor.  And the -- the position that we've taken

16   is that Reed doesn't change the test.  We

17   believe that it's the Fifth Circuit and

18   Respondents who are arguing that Reed somehow

19   created this higher bar and that now you have to

20   do things you didn't have to do before to show

21   standing.

22          But our position is that when you

23   apply Reed as it's written, we fit exactly under

24   that category because it's the Chapter 64

25   reasons, as it was in Reed, that are the reasons

1    the district attorney are denying access to the

2    evidence.  And if they applied a constitutional

3    version of the statute, then they couldn't rely

4    on those same reasons.  They would eliminate

5    those reasons.

6                JUSTICE KAGAN:  But, if I could go

7    back to, I think, the -- the -- the thrust of

8    Justice Barrett's question, I mean, suppose that

9    the DA here said, you know, notwithstanding what

10   anybody says about Chapter 64, we're just not

11   turning this over, you know, and pounds the

12   table 10 times so you know that they're serious.

13               Does that defeat your standing?

14               MS. FISHER:  May I answer, Your Honor?

15               CHIEF JUSTICE ROBERTS:  Sure.

16               MS. FISHER:  That would not defeat

17   standing because the declaratory judgment would

18   still have the res judicata effect of binding

19   the party to the determination that the statute

20   was unconstitutional.

21               We could then go to the state court

22   and argue that they would have to respect that

23   declaratory judgment.  And so we would have a

24   mechanism, and the declaratory judgment would be

25   the key to that mechanism because that's what

1          would change, to use the words of Reed, the

2          legal status between the parties.  It's the

3          binding effect of the declaratory judgment in

4          state court that could get around their

5          recalcitrance by simply saying we just don't

6          want to turn it over.

7                    CHIEF JUSTICE ROBERTS:  If your theory

8          is correct, are you saying that -- are you

9          looking for a requirement that the government

10         exercise discretion in light of this evidence or

11         say they don't have any discretion but to grant

12         relief?

13                   MS. FISHER:  No -- we're not looking

14         for something to force or compel the district

15         attorney to turn it over.  The declaratory

16         judgment just doesn't have that power.

17                   But that doesn't -- that doesn't

18         defeat Article III standing, and it doesn't --

19                   CHIEF JUSTICE ROBERTS:  Well, I guess

20         my question was, it -- it could, though,

21         couldn't it?  I mean, if the district attorney

22         said, look, the way I see the case, the way the

23         evidence looks at it, this DNA evidence is not

24         going to have any effect whatever, and if it's

25         not going to have any effect whatever, that's

1    not enough to get standing.  Standing may not

2    require much, but it requires something.

3              MS. FISHER:  If they were saying that

4    based on -- not on Chapter 64 reasons, well,

5    that wouldn't implicate the standing in our --

6    in our lawsuit to -- to declare Chapter 64 --

7    certain provisions of Chapter 64

8    unconstitutional because our 1983 puts Chapter

9    64 at the center of the unconstitutional

10   actions.

11             CHIEF JUSTICE ROBERTS:  Thank you.

12             Justice Thomas?

13             JUSTICE THOMAS:  Is Texas required to

14   have a -- constitutionally to have a procedure

15   like Chapter 64?

16             MS. FISHER:  No, Your Honor.  There's

17   no substantive right to DNA testing.

18             JUSTICE THOMAS:  So, if it was

19   completely discretionary, what would your case

20   look like?

21             MS. FISHER:  You mean if Chapter 64

22   didn't exist?

23             JUSTICE THOMAS:  Was completely

24   discretionary with the -- with the DA.

25             MS. FISHER:  And if -- if Chapter

1      60 -- if the ability to turn over DNA evidence

2      was completely discretionary to the district

3      attorney, we would have to rely on what the

4      district attorney would do.

5                  JUSTICE THOMAS:  So how is it any

6      different now where the court has said that you

7      have not complied with the requirements, the

8      other requirements of Chapter 64?  The CCA?

9                  MS. FISHER:  Because the CCA has never

10     considered if we should get testing under a

11     version of the statute that cures the

12     constitutional infirmity found by the district

13     court.

14                 JUSTICE THOMAS:  So it's a

15     constitutional infirmity in a procedure that's

16     not constitutionally required.

17                 MS. FISHER:  Well, once the State of

18     Texas chooses to give that right, then due

19     process attaches.

20                 JUSTICE THOMAS:  So what -- what's

21     your objective?  What do you ultimately intend

22     to show with the DNA?

23                 MS. FISHER:  What we hope to show with

24     the DNA is that if we combine DNA with our other

25     newly developed evidence, that the court will

1     find that we make -- that the CCA will find that

2     we make the threshold showing under 5(a)(3) that

3     Mr. Gutierrez is death-ineligible.  We may not

4     win that.

5          JUSTICE THOMAS:  Because?  He's

6     death-ineligible because?

7          MS. FISHER:  Because he wasn't a major

8     participant in the crime, because he didn't

9     actually kill, attempt to kill, or anticipate a

10    life would be taken.  And he does -- and he

11    doesn't meet the --

12         JUSTICE THOMAS:  So how would it show

13    that?  How would the DNA show that?

14         MS. FISHER:  The DNA would be one

15    component because the -- the -- Texas's theory

16    in this case is that Mr. Gutierrez was not

17    inside the house initially and didn't intend for

18    anyone to get hurt.  They admitted this in their

19    penalty phase --

20         JUSTICE THOMAS:  But Mr. Gutierrez

21    said he was in the house.

22         MS. FISHER:  Yes.  Well, the DNA would

23    also show that that -- that statement which he

24    has maintained is -- is not true.  It would --

25    it would bolster that argument that he's been

1     making.

2            But, if I may, Justice Thomas, and

3     I -- I -- I say this respectfully, we don't have

4     to show that we would ultimately win that

5     lawsuit.  That's not required to show that we

6     have standing.

7            CHIEF JUSTICE ROBERTS:  Justice Alito?

8            JUSTICE ALITO:  What if it were

9     absolutely -- if it were absolutely clear that a

10    decision that Chapter 64 is unconstitutional in

11    the way the district court found would have no

12    effect whatsoever on the district attorney?

13    Would you have standing?  Would you satisfy

14    redressability?

15           MS. FISHER:  Yes.  And, again, that's

16    the position the district attorney took in Reed

17    because the binding effect --

18           JUSTICE ALITO:  Well, how would it

19    be -- how would you satisfy redressability?

20           MS. FISHER:  Because the binding

21    effect of the declaratory judgment would allow

22    us to go back into state court and ask the state

23    court to give effect to the determination of the

24    federal court that Chapter 64 is

25    unconstitutional in the way that the procedures

1    block the ability to develop a subsequent habeas

2    petition.

3              JUSTICE ALITO:  So you just -- you

4    think you have standing because a -- a

5    declaratory judgment would do you some good even

6    though it would have no effect whatsoever on the

7    district attorney who was the defendant in this

8    case?  That's your position?

9              MS. FISHER:  Yes, because it -- it

10   would be a tool that we would use in the state

11   proceedings under a new Chapter 64 motion, which

12   is no different than Rodney Reed.  It's --

13             JUSTICE ALITO:  What if you had sued

14   the mayor of Brownsville?  We're suing the mayor

15   of Brownsville because we think that -- that my

16   client's due process rights were violated by the

17   denial of DNA testing.

18             A declaratory judgment there that that

19   was unconstitutional would give you the same

20   weapon you want here.

21             MS. FISHER:  Well, we wouldn't -- we

22   would have a traceability problem then, Your

23   Honor, because the mayor wouldn't be involved in

24   denying access to the evidence that we need.  So

25   we would fail Article -- sorry, prong 2 of the

1    standing test in Your Honor's hypothetical.

2              JUSTICE ALITO:  What if the district

3    attorney held a news conference and he swore on

4    a stack of Bibles that a declaratory judgment --

5    that the declaratory judgment that you want

6    would have absolutely no effect on my decision

7    to turn over DNA evidence because I agree with

8    the Texas Court of Criminal Appeals that it

9    would not influence the decision on death

10   eligibility.  Plus, I also agree with the trial

11   court that all of this was done for purposes of

12   delay.

13             Would you have standing?

14             MS. FISHER:  If that was simply a

15   declaration made by the district attorney, we

16   would -- if the statute were to be found

17   unconstitutional, because we would still have a

18   right to take the constitutional version of the

19   statute as declared by the federal court and the

20   res judicata effect, that it would bind the

21   parties to that determination, to state court.

22             And that's exactly the position that

23   Rodney Reed is in.

24             JUSTICE ALITO:  Let me just take you

25   back briefly to the questions Justice Thomas was

1    asking about the DNA evidence.

2              The most that you could possibly show

3    from this DNA evidence -- and correct me if I'm

4    wrong because you know the facts of this case

5    inside out and backwards.  I don't.  But I

6    gather that what you want to prove with the DNA

7    evidence is that other people were in the home.

8              MS. FISHER:  With the DNA evidence,

9    we'd want -- that's correct.

10             JUSTICE ALITO:  Okay.  How would that

11   make your client death-ineligible?  How would

12   that tend to show that he's death-ineligible?

13             MS. FISHER:  Because --

14             JUSTICE ALITO:  Suppose somebody else

15   was -- suppose that you get -- it wouldn't be

16   surprising if you found Cuellar's DNA on --

17   on -- on some of this, right?  He found the --

18   he -- he found the victim.

19             Anyway, suppose you can prove other

20   people were there.  How does that help your

21   client?

22             MS. FISHER:  Because, to show that

23   Mr. Gutierrez is death-ineligible in a 5(a)(3)

24   subsequent habeas, we have to show two things.

25   We'd have to show both that he wasn't in the

1    house, and the DNA would help with that, but we
2    also have to show his role as one that was not a
3    major participant, and --

4             JUSTICE ALITO:  Well, the DNA can't
5    show that he wasn't there.

6             MS. FISHER:  And that --

7             JUSTICE ALITO:  At most, it could show
8    that other people were there.

9             MS. FISHER:  Yes, but that would be
10   one component.  And that's exactly why a test in
11   Chapter 64 that limits the evidence to the
12   record evidence isn't looking at the right
13   that's being squelched when, in 5(a)(3), you can
14   present both types of evidence.

15            And, again, Your Honor, we wouldn't
16   have to actually show, to show that we have
17   redressability and standing, that we're going to
18   win the subsequent habeas.

19            JUSTICE ALITO:  No, I understand that,
20   but I'm just wondering how long has -- this
21   litigation has been going on for more than 25
22   years, right?  I mean, how much -- I just am
23   interested in knowing whether it's going
24   anywhere.

25            MS. FISHER:  Although it may feel that

1      way, Your Honor, Mr. Gutierrez filed for his

2      first Chapter 64 motion before his federal

3      habeas in 2011.  He has done nothing but utilize

4      the procedures offered to him by the Texas

5      courts.

6             When he filed a second motion in 2019,

7      after current counsel came on, there were

8      substantial factual and legal changes in Chapter

9      64 that led him to file a second Chapter 64

10     motion, including the at-fault provision from

11     Chapter 64, which was one of the reasons he

12     wasn't allowed to have testing.  That was

13     removed.  So the law changed and the facts

14     changed.

15            One of the reasons that he was denied

16     testing is he wanted testing --

17            JUSTICE ALITO:  All right.  I -- I

18     understand.  Thank you very much.

19            MS. FISHER:  Thank you.

20            CHIEF JUSTICE ROBERTS:  Justice

21     Sotomayor?

22            JUSTICE SOTOMAYOR:  I'm trying to

23     break this case down in my own head, so can I

24     take it a step at a time?

25            MS. FISHER:  Please, Your Honor.

1           JUSTICE SOTOMAYOR:  There were, I

2    think, scrapings under the fingernails of the

3    victim.

4           MS. FISHER:  Yes.

5           JUSTICE SOTOMAYOR:  There was a hair

6    that was entwined in her finger or somewhere

7    on -- on -- on her body.

8           MS. FISHER:  Correct.

9           JUSTICE SOTOMAYOR:  There were other

10   things that suggest that DNA testing might not

11   just show that Mr. Cuellar was there but might

12   show that both Garcia brothers were there,

13   correct?

14          MS. FISHER:  Not only is that correct,

15   the CCA found in two -- 2011 that if the DNA in

16   those highly probative biological materials that

17   were covered -- recovered for the very

18   purpose --

19          JUSTICE SOTOMAYOR:  That they weren't

20   Mr. Gutierrez's.

21          MS. FISHER:  If that -- yep.

22          JUSTICE SOTOMAYOR:  All right.  I

23   don't want to eat up a lot of time on this.

24          But, if the evidence were to show that

25   the other two were present, then that would give

1       some support to your client's claim or would

2       support your client's claim that he wasn't the

3       one who entered the apartment to do the killing?

4                  MS. FISHER:  Yes, Your Honor.

5                  JUSTICE SOTOMAYOR:  All right.  So,

6       putting that aside, you answered -- I -- I'm not

7       sure what your answer was to Justice Barrett or

8       to Justice Thomas.

9                  The Texas Code of -- Article 64.03

10      permits the court to order forensic testing.

11                 MS. FISHER:  Oh.  That --

12                 JUSTICE SOTOMAYOR:  So the court could

13      order the DNA -- could order the DA to do it,

14      correct?  It chose not to here.  You asked for

15      injunction.

16                 MS. FISHER:  Yes, yes.

17                 JUSTICE SOTOMAYOR:  So -- so --

18                 MS. FISHER:  If that was a cure, yes.

19                 JUSTICE SOTOMAYOR:  -- so you had

20      standing.  It is a right given to you under

21      Texas law to go in and ask for an injunction, so

22      you had standing to do that?

23                 MS. FISHER:  Yes.

24                 JUSTICE SOTOMAYOR:  Answer my

25      questions, okay?

1           MS. FISHER:  Yes.

2           JUSTICE SOTOMAYOR:  You didn't win,

3   but you didn't win because you continue, I

4   think, to argue two points.  One, that you can

5   seek testing for just death eligibility.  And

6   the district court said you're right, you don't

7   have to prove that you were actually innocent of

8   the crime.  You just have to prove that you were

9   not eligible or not guilty of the death penalty,

10  correct?

11          MS. FISHER:  No, Your Honor.  The --

12  the previous -- the -- the unconstitutional

13  version of Chapter 64, under which Mr. Gutierrez

14  filed for DNA testing, only allows it to go to

15  whether or not you're actually innocent.  It

16  didn't allow you to test to show that you were

17  death-ineligible.

18          JUSTICE SOTOMAYOR:  That's my point.

19  All right.  So -- but there's a second component

20  to your due process, that this declaratory

21  judgment, you say, includes -- I'm not quite

22  sure how -- but that includes -- by the way,

23  before I go on to that, Justice Thomas asked you

24  about is there a constitutional right to DNA

25  testing.  Osborne and Skinner say that there's a

1    constitutional right if the state elects to give

2    you testing, correct?

3              MS. FISHER:  Exactly.  The --

4              JUSTICE SOTOMAYOR:  So that was

5    Justice Kavanaugh's first question to you, that

6    once they elect to do it, then you have the

7    right to have a constitutional version of it,

8    correct?

9              MS. FISHER:  That's exactly correct,

10   Your Honor.

11             JUSTICE SOTOMAYOR:  All right.  And

12   you claim it's not constitutional for two

13   reasons.  One, as it's been construed or as

14   applied by somebody, okay, that it doesn't

15   permit death eligibility.  And, two, it doesn't

16   permit new evidence to show that you're not --

17   that you're innocent of the death eligibility,

18   correct?

19             MS. FISHER:  Those are two components

20   of the same due process violation.  And the

21   reasons they're two components of the same due

22   process violation is because the due process

23   violation encompasses the ways Chapter 64 limits

24   access to the testing, because Chapter 64 --

25             JUSTICE SOTOMAYOR:  So let me go back

1      there, okay?  Slow down.  I'm not trying to hurt

2      you.  I'm trying to clarify things, okay?

3              (Laughter.)

4              JUSTICE SOTOMAYOR:  Justice Gorsuch

5      asked you why the statement by the TCCA that

6      says, even if we spot you, they said, our

7      statute can reach just death eligibility, the

8      record evidence would still make you liable.

9              And you're saying that's not true

10     because the new evidence would show that you are

11     not death-eligible, correct?

12             MS. FISHER:  Correct, Your Honor.

13             JUSTICE SOTOMAYOR:  And what you're

14     saying, I think, is that that issue is the issue

15     that hasn't been looked at by the DA.

16             MS. FISHER:  I see what you're saying,

17     Your Honor.  Yes, that's correct.

18             JUSTICE SOTOMAYOR:  So that if you go

19     back to the DA with this wealth of new evidence

20     which he hasn't really looked at and he says to

21     you, even if I spot you the new evidence, it's

22     not convincing for A, B, and C reason, you might

23     lose, correct?

24             MS. FISHER:  We -- well, he could

25     certainly say that, and then we would file a

1    Chapter 64 motion --

2              JUSTICE SOTOMAYOR:  And -- and

3    contravene that, you would have standing to say

4    he's wrong about that.

5              MS. FISHER:  That's right.  We would

6    ask the court to determine if we would be

7    eligible for testing with the new evidence.

8              JUSTICE SOTOMAYOR:  Exactly.  And so

9    then you would still come back into court and

10   you could then ask the court for that injunction

11   again?

12             MS. FISHER:  Yes, that's correct.

13             JUSTICE SOTOMAYOR:  Looking at the new

14   evidence?

15             MS. FISHER:  Yes, exactly.

16             JUSTICE SOTOMAYOR:  All right.  Thank

17   you.

18             MS. FISHER:  Yes.

19             CHIEF JUSTICE ROBERTS:  Justice Kagan?

20             Justice Gorsuch?

21             JUSTICE GORSUCH:  Ms. Fisher, sorry to

22   belabor the point, but there's a hypothetical

23   we've been kind of dancing around in a lot of

24   the questions, and that is let's suppose that

25   the record were entirely clear that the district

1    attorney and the TCCA would have multiple other

2    grounds on which to deny relief even assuming

3    Article 64 -- Chapter 64 applied to death

4    eligibility.

5              Would -- would it be redressable then?

6              MS. FISHER:  It depends if those other

7    grounds were wrapped up in the due process

8    violation or not.  And the issue --

9              JUSTICE GORSUCH:  Let's say they

10   aren't, okay?

11             MS. FISHER:  Oh --

12             JUSTICE GORSUCH:  Undue delay, for

13   example, wouldn't be wrapped up in anything,

14   okay?  So let's just hypothesize again there are

15   multiple independent grounds.  Redressable?

16             MS. FISHER:  If -- well, our injury

17   would still be redressable in federal court.  We

18   would just lose in the --

19             JUSTICE GORSUCH:  How -- how is that?

20             MS. FISHER:  Well, because we wouldn't

21   know if it was for undue delay until --

22             JUSTICE GORSUCH:  No, no, let's say we

23   know.  That -- you're fighting the hypothetical,

24   counsel, a little bit.  We know.  Let's just

25   hypothesize that right now we would know that

1    there are multiple independent grounds on which

2    your -- your request would be denied that are

3    independent of the thing you're complaining

4    about.  Redressable?

5             MS. FISHER:  I'm trying to imagine

6    Your Honor's hypothetical with the undue delay

7    example.

8             JUSTICE GORSUCH:  It's an example.

9             MS. FISHER:  If that determination

10   were made at the time of the filing of the new

11   motion under the constitutional version, then we

12   would lose at the --

13            JUSTICE GORSUCH:  I'm saying we know.

14   Let's say the -- that the district attorney and

15   the trial court in -- in Texas has said 17

16   times -- just hypothesize with me -- that even

17   if Chapter 64 applied, there's undue delay here,

18   wouldn't be entitled to anyway, end of case.

19            And let's say I have six other

20   independent reasons.  Just hypothesize with me.

21   I wouldn't think that there would be

22   redressability in that case if we knew those

23   facts to be so.

24            MS. FISHER:  If the independent

25   reasons were not part of the due process

1    violation, then Your Honor would be correct.

2         JUSTICE GORSUCH:  Thank you.

3         CHIEF JUSTICE ROBERTS:  Justice

4    Kavanaugh?

5         JUSTICE KAVANAUGH:  A few questions.

6         First, on how long this has been --

7    been going on and just the history, my

8    understanding is, in 2015 and for several years,

9    Texas did not oppose the DNA testing.  Is that

10   under -- is that correct?

11        MS. FISHER:  That's correct, Your

12   Honor.  Mr. Gutierrez filed a -- a -- a motion

13   with prior counsel that was entitled Motion for

14   Miscellaneous Relief, where the only thing that

15   we asked for in that motion was DNA testing to

16   basically show he was death-ineligible.

17        At that time, District Attorney Saenz

18   wrote a -- a two-page response and said that

19   because of how severe and important these issues

20   are, they would not oppose testing.

21        JUSTICE KAVANAUGH:  Okay.  Second, on

22   the question raised by Justice Thomas -- and

23   Justice Sotomayor touched on this -- they could

24   have a completely discretionary system, but if

25   you have a system that sets up a right, then

1      they have to have fair procedures.  That's

2      Osborne and Skinner, right?

3                MS. FISHER:  Absolutely.  Just because

4      a procedure didn't exist, if the state chooses

5      to give that right and there's a liberty

6      interest, then they must provide due process.

7                JUSTICE KAVANAUGH:  Yeah.  And then,

8      third, Justice Barrett's questions, which I

9      think are the prosecutor as defendant -- and

10      this goes back to my first question -- that --

11      that's the awkwardness of Osborne and Skinner.

12      It's very unusual.  Reed tried to do the best it

13      could with that without -- if you -- Reed went

14      the other way.  It totally eviscerates Osborne

15      and Skinner, I think.

16                MS. FISHER:  Absolutely.

17                JUSTICE KAVANAUGH:  I mean -- but that

18      leads to some awkward questions about what the

19      prosecutor will do.  And I just don't think --

20      this is more something to react to -- I don't

21      see how we can say something's not redressable

22      just because the prosecutor is going to say I'm

23      not going to comply with a court order.  You

24      know, if President Nixon said, I'm not going to

25      come turn over the tapes no matter what, you

1     wouldn't say, oh, I guess we don't have standing

2     to hear the executive privilege case.  I mean,

3     it just doesn't -- it doesn't work, I don't

4     think, to say a recalcitrant defendant can

5     defeat redressability in that way.

6                  MS. FISHER:  My reaction --

7                  JUSTICE KAVANAUGH:  I assume you agree

8     with that.

9                  MS. FISHER:  My reaction is I could

10     not agree with you more, Justice Kavanaugh.

11                 JUSTICE KAVANAUGH:  Yeah.

12                 On the other grounds, if there are

13     other grounds, those probably go to the merits,

14     but, I mean, that's -- that's what we have to

15     figure out here down the road.

16                 You could lose down the road because

17     there might not be a procedural due process

18     problem.  If there is a procedural due process

19     issue with the statute, you may not win -- the

20     DNA testing might not show.

21                 MS. FISHER:  We might not.  We may not

22     win DNA testing.

23                 JUSTICE KAVANAUGH:  And then, on the

24     DNA testing, just to get to this on Justice

25     Sotomayor's questions because I think this is --

1        there is -- if -- if Cuellar, Garcia, and

2        Gracia, if I have the names correct --

3                MS. FISHER:  You do.

4                JUSTICE KAVANAUGH:  -- are the people

5        with the blood in the trailer, particularly

6        Cuellar, that's going to be problematic for the

7        state's theory, not defeat it but problematic or

8        more problematic for the state's theory that

9        Gutierrez was in the trailer, correct?

10               MS. FISHER:  Yes, a fact recognized

11       even by the CCA.

12               JUSTICE KAVANAUGH:  And that goes to

13       the fingernail scrapings, the hair on the

14       finger, the blood-stained shirt?

15               MS. FISHER:  Yes.

16               JUSTICE KAVANAUGH:  Right?

17               MS. FISHER:  Yep.

18               JUSTICE KAVANAUGH:  If -- if -- if

19       Gutierrez is nowhere to be found, again, I think

20       that doesn't defeat the state's theory, but

21       that -- that's inconsistent -- it's not

22       inconsistent, but it undermines a little bit how

23       they perceived all this to have transpired in

24       the trailer.

25               MS. FISHER:  It does.  And it would be

1        part -- and that is why it's part of what we

2        would need to present in a death ineligibility

3        habeas.

4                JUSTICE KAVANAUGH:  And what did the

5        state -- what was the state's theory at trial

6        about what Cuellar's role was?

7                MS. FISHER:  Well, Cuellar was the

8        initial suspect.  If you look at the evidence

9        bags, they all --

10               JUSTICE KAVANAUGH:  Right.  Just on

11       the question, sorry.  I'm taking too long.

12               MS. FISHER:  They believed that --

13       that he -- they -- at trial, what the state

14       argued was that Cuellar was her nephew, and

15       while he was a drunk who was dependent on her

16       and fought with her often, his only role in this

17       was that he found her.

18               JUSTICE KAVANAUGH:  The state's theory

19       at trial was that Cuellar was not in the trailer

20       during the crime, correct?

21               MS. FISHER:  Absolutely correct.

22               JUSTICE KAVANAUGH:  Okay.  And if the

23       blood under the fingernail, if the scrapings and

24       the hair are Cuellar, that's a problem for their

25       theory?

1           MS. FISHER:  Yes.  There would be no

2    reason for his DNA to be under her fingernails.

3           JUSTICE KAVANAUGH:  Got it.  Okay.

4    Thank you.

5           CHIEF JUSTICE ROBERTS:  Justice

6    Barrett?

7           JUSTICE BARRETT:  Okay.  I just want

8    to go back to my questions earlier and -- and

9    follow up and clarify because Justice Kavanaugh

10   makes some good points about the awkwardness of

11   Osborne and Skinner and how this plays out.

12           Because of Skinner and Osborne, when

13   you -- you know, Texas has to provide fair

14   procedure.  That means that the DA is the

15   defendant in an Article 64 suit like the one

16   that you would file, like the one you did file,

17   saying that this violates procedural due

18   process.  He's the correct defendant, is that

19   correct?

20           MS. FISHER:  Correct.

21           JUSTICE BARRETT:  So it would give

22   meaning to the right and to your procedural due

23   process claim to have him be the defendant in

24   the Article 64 proceeding and be able to raise

25   that procedural due process claim in the context

1      of that proceeding, right?

2                MS. FISHER:  Yes.

3                JUSTICE BARRETT:  Okay.  Are you

4      arguing outside -- so we are outside of that

5      Article 64 proceeding, obviously, right now.

6                I'm just trying to understand the

7      nature of your argument because Reed says that

8      the reason why there was standing there -- and I

9      joined Reed -- it's substantially likely that

10     the state prosecutor would abide by such a court

11     order.  That's Justice Kavanaugh's point.  I

12     agree with that.

13               That there would be a significant

14     increase in the likelihood that the state

15     prosecutor would grant access to the requested

16     evidence.

17               So, to me, that's going to the state

18     prosecutor's discretionary decision whether to

19     hand over the evidence, which might be

20     influenced by application and his understanding

21     of Article 64, right?

22               MS. FISHER:  I would not say it goes

23     to his discretion, Your Honor, because the

24     district attorney in Reed came before this

25     Court --

1          JUSTICE BARRETT:  Okay.  I don't want

2    to talk about the arguments.  I want to talk

3    about the case.  And -- and are you arguing --

4    let -- let me just phrase it a different way.

5          Are you arguing that it's redressable

6    because of the preclusive effect of the judgment

7    if you went to another proceeding?  Is that your

8    basic argument for redressability?

9          MS. FISHER:  Yes, Your Honor.

10          JUSTICE BARRETT:  You're sure?  Okay.

11    Okay.  All right.  I'll take that answer.

12          CHIEF JUSTICE ROBERTS:  Justice

13    Jackson?

14          JUSTICE JACKSON:  So I guess I was

15    quite surprised at your response to Justice

16    Gorsuch -- Gorsuch's questions about the

17    independent grounds and the way in which they

18    might deny your redressability claim.

19          And I -- I -- I guess I'm a little

20    bit -- no, a lot -- concerned that that is

21    actually a different conception of

22    redressability than has been historically

23    understood and at least as I understood it.

24          I thought redressability related to

25    whether the injury could be remedied by court

1     order, that is, whether the court order was the

2     kind of thing that could remedy the injury that

3     is being claimed.

4             But that conception seems to suggest

5     that the question of redressability is whether

6     the court's order will actually remedy this

7     plate -- plaintiff's injury, that is, whether

8     there is anything else in the universe that

9     would prevent the plaintiff from getting relief.

10            I had not understood redressability to

11    amount to that, and the real concern, I think,

12    is that it imports into the threshold standing

13    jurisdictional analysis merits discussions about

14    all the defenses and other things that a

15    defendant might be able to raise in the context

16    of a motion to dismiss.

17            So I -- I think that under just --

18    under the hypothetical that Justice Gorsuch

19    posited, if there was a statute-of-limitations

20    problem, that the defendant could argue that the

21    person had no standing under redressability

22    because they still would not be able to get

23    relief under that concept of redressability.

24            And I had not perceived all of those

25    other things -- standing, undue delay, et

1    cetera, et cetera -- to be issues that the Court

2    had to resolve as a matter of their jurisdiction

3    upfront in this way.

4            So I'm worried about that.

5            MS. FISHER:  Justice Jackson, I

6    completely agree with your initial

7    understanding, and to the extent that I asked --

8    answered Justice Gorsuch's question to imply

9    otherwise, I did not intend to.

10           The hypothetical of his undue delay

11   could -- the way --

12           JUSTICE JACKSON:  I mean, isn't undue

13   delay a -- a merits -- I mean, we would -- we

14   would fight on the merits.

15           MS. FISHER:  Yes.

16           JUSTICE JACKSON:  We would litigate

17   whether or not there was undue delay.

18           MS. FISHER:  Yes.

19           JUSTICE JACKSON:  And if that becomes

20   a standing question, I'm now very confused --

21           MS. FISHER:  It's --

22           JUSTICE JACKSON:  -- about the theory

23   that is operating here to determine standing.

24           MS. FISHER:  No, it's not a standing

25   question, and I didn't mean to imply so.

1            The -- the statutory reasons are the

2      focus.  You don't have to prove that -- that

3      nothing can come up that will defeat your

4      ability to win the claim.

5            JUSTICE JACKSON:  And that's what they

6      seem to be saying.

7            MS. FISHER:  That's exactly what

8      they're saying, and that's what we're fighting

9      against.  And to the extent, with no disrespect

10      to Justice Gorsuch, that I answered it in that

11      way, I didn't intend to.

12            JUSTICE JACKSON:  Thank you.

13            CHIEF JUSTICE ROBERTS:  Thank you,

14      counsel.

15            Mr. Cole.

16                ARGUMENT OF WILLIAM F. COLE

17                ON BEHALF OF THE RESPONDENTS

18            MR. COLE:  Thank you, Mr. Chief

19      Justice, and may it please the Court:

20            The district court's declaratory

21      judgment did not redress Mr. Gutierrez's injury,

22      which is the denial of access to DNA testing

23      evidence.

24            Under Reed, the redressability

25      question turns on whether the declaratory

1    judgment would eliminate the state prosecutor's

2    justification for denying the testing and

3    thereby make it significantly -- increase the

4    likelihood -- significantly increase the

5    likelihood that the prosecutor would hand over

6    the evidence.

7            But, here, it would not.  Unlike in

8    Reed, here, there are several independent state

9    law grounds that the prosecutor has relied on to

10   deny access to the evidence, and those grounds

11   are unaffected by the district court's narrow

12   declaratory judgment here.

13           This case may also be moot, and we

14   know that not through supposition or through

15   speculation but because, after Mr. Gutierrez

16   obtained that judgment, he took it to state

17   court and tried to use it as a basis to compel

18   District Attorney Saenz to hand over the

19   evidence.

20           But, because of those independent

21   state law grounds grounded in Chapter 64, he

22   refused, and the Court of Criminal Appeals

23   upheld that decision for a third time.

24           That means the declaratory judgment

25   will not and did not redress his injury.

1          Gutierrez responds by first redefining

2     the scope of his injury in fact and then

3     attempting to refashion the scope of the

4     district court's narrow declaratory judgment.

5     But neither can establish jurisdiction.

6          From his operative complaint right

7     through his opening merits brief in this Court,

8     Mr. Gutierrez has consistently defined his

9     injury as the denial of access to DNA testing.

10    And his attempt in reply to refashion the scope

11    of the district court's declaratory judgment is

12    contrary to that -- the letter of that judgment

13    at J.A. 61A.  And it's all -- and the CCA has

14    already rejected that.

15         Because the Court lacks jurisdiction

16    twice over, it should affirm.  And I welcome the

17    Court's questions.

18         JUSTICE THOMAS:  Let's say there are

19    multiple justifications for not providing the

20    DNA testing and the declaratory judgment

21    eliminates several of those.

22         Wouldn't it make it more likely that

23    the testing would be available?

24         MR. COLE:  The question, Justice

25    Thomas, is whether it would get him access to

1    the evidence because the injury he's asserted

2    here and has continued to assert is denial of

3    access to the evidence.  And, under state law,

4    there are several statutory grounds he has to

5    jump through to get them.

6            So, if you eliminate a couple, but

7    some still remain, then, no, it would not

8    redress the injury, which, again, is the denial.

9            JUSTICE KAGAN:  I think that that was

10   true in Reed too.  I mean, if you just look at

11   page 233, which is the page before the critical

12   paragraph in Reed, it talks about how the Court

13   reasoned in denying Reed's motion, and then it

14   says that there were two reasons.  One was that

15   there wasn't this adequate chain of custody, and

16   the second was that Reed didn't demonstrate that

17   he would have been acquitted if the DNA results

18   were exculpatory.

19           And, essentially, that functioned in

20   the exact same way.  In other words, it's like,

21   even if the specific claim that Reed is making

22   were knocked off the table, we have a backup way

23   to defeat his request for evidence.

24           And the Court obviously thought that

25   that was irrelevant because, you know, a page

1      later, the Court makes no reference to that in

2      explaining why it is that Reed has standing.

3              MR. COLE:  So here's why I think this

4      case is just not Reed, Justice Kagan.

5              First, Reed, of course, was a pleading

6      stage challenge.  He actually at that point, as

7      you rightly point out, had several live

8      challenges to various grounds under the statute.

9              In fact, at that point, he may well

10     have prevailed on those grounds and thereby

11     eliminated the justification.  In fact, those

12     grounds are currently pending live before the

13     Fifth Circuit right now.

14             JUSTICE KAGAN:  Yeah, it's the same

15     thing as, you know, I think Justice Gorsuch

16     called it.  There's a kind of harmlessness

17     backup.  And so too there was in Reed, as the

18     Court noted.

19             MR. COLE:  The difference, though,

20     Justice Kagan is, in Reed, Mr. Reed was

21     challenging all the justifications.  Here,

22     Mr. Gutierrez is simply not.  He has not

23     challenged in his complaint several of the

24     independent statements.

25             JUSTICE JACKSON:  But -- but I don't

1      know that --

2              JUSTICE KAGAN:  Yeah, I think that

3      that's a -- a -- a pretty nit-picking way to

4      read this complaint.  And I think that

5      Ms. Fisher talked about this when she was up

6      there.

7              I mean, you can go through and you can

8      pick the, you know, oh, he's really challenging

9      the sentence-versus-conviction point.  But, at a

10     deeper level, he's challenging the whole realm

11     of procedures that prevents him from getting

12     access to DNA testing.

13             And it's most clear -- I'm going to

14     tell you -- in paragraph 81 if I can find it --

15     because he says:  By refusing to release the

16     biological evidence for testing, you've deprived

17     Gutierrez of his liberty interests in using

18     state procedures to obtain a reduction of his

19     sentence, in violation of his right to due

20     process of law.

21             So that says to me that there is -- if

22     you read the complaint with any degree of

23     generosity, there's just a claim here that a set

24     of procedures that would deprive this man in

25     these circumstances of DNA evidence is a set of

1    procedures that's violative of due process.

2         MR. COLE:  Well, with respect, Justice

3    Kagan, that is not how I read the complaint.

4    That's not how the district court read the

5    complaint.

6         I mean, there's a reason the district

7    court looked at the two grounds he alleged.  The

8    one ground was a challenge to the

9    preponderance-of-the-evidence standard, which is

10   too high.  The second ground was this

11   sentence-versus-conviction distinction.

12        And if you back up one page, it --

13        JUSTICE KAGAN:  There are certainly

14   these specific things.  I don't mean to say for

15   a moment that there aren't those specific things

16   addressed in his complaint.  But there's also a

17   kind of more general argument, which is like,

18   wow, you put all these procedures together,

19   we're in a world -- and -- and we're in --

20   and -- and they somehow manage to deprive this

21   person of DNA testing, that's violative of due

22   process.

23        And, you know, it's very similar what

24   I'm saying.  You've heard the argument before

25   because it's very similar to Judge Higginson's

1       argument below, where Judge Higginson is saying,

2       you know, Reed did not, like, pick apart every

3       aspect of the complaint and say exactly how this

4       aspect related to this Texas Court of Criminal

5       Appeals holding.  I mean, if it had done what

6       you're suggesting, it probably would have

7       reached a different answer.  It didn't do that.

8               MR. COLE:  Well, two responses,

9       Justice Kagan.

10              The first is that in Reed, that was a

11      complaint.  You're quite right to say so.  Here,

12      it's final judgment.  So we know the scope of

13      his claims.

14              The other thing is, again, in Reed,

15      those claims were live.  They're still live

16      today, in fact.  So there is a chance that the

17      declaratory judgment would, in fact, redress his

18      injury and get him the evidence.

19              Here, I -- I just -- I don't read the

20      complaint in the same way as you perhaps.

21              JUSTICE BARRETT:  So, counsel, will

22      you please --

23              JUSTICE JACKSON:  Can we just -- go

24      ahead.

25              JUSTICE BARRETT:  Will you please

1      explain to me how the process works in the DA's

2      office when there is a request for DA -- DNA

3      evidence made?

4                MR. COLE:  Sure.  So there's --

5      there's two ways, as -- and I think Justice

6      Thomas's dissent points this out in Reed.

7      There's two ways.  There is the Chapter 64 way.

8                JUSTICE BARRETT:  Right.

9                MR. COLE:  You go and get a court to

10     force them.  And then there can be -- it's

11     essentially a species of prosecutorial

12     discretion.  There could be an agreement to give

13     up the evidence.  But -- and I want to be very

14     careful about this because I think there was

15     some mixing and matching at the top-side

16     argument.  The discretionary component is just

17     simply not at issue here.  His complaint is very

18     clearly putting at issue Chapter 64, the

19     procedures.

20               And -- and this Court has said --

21               JUSTICE BARRETT:  But do -- I guess my

22     question is -- I -- I understand all that.  My

23     question is, understanding that Article 64

24     doesn't bind the prosecutor's exercise of

25     discretion, I mean, surely, it would make sense

1       for the prosecutor to have an eye towards

2       Article 64 knowing that that's the next stop,

3       right, and so to be making some sort of

4       judgments about whether Article 64 would permit

5       access to the evidence or not.

6               So what I'm asking is, what does the

7       prosecutor take into account?  What is the

8       policy?  Is Article 64 in the background as part

9       of the policy?

10              MR. COLE:  The -- yes, the prosecutor

11      considers Article 64.  As the Court put it in

12      Osborne, it's the state legislature who really

13      is the primary determinant of the grounds under

14      which a convict might be entitled to DNA

15      testing.

16              But, again --

17              JUSTICE JACKSON:  And, here, didn't

18      the prosecutors rely on Article 64 in denying

19      this?  I mean, didn't --

20              MR. COLE:  Yes.

21              JUSTICE JACKSON:  -- he say Article 64

22      is one of the reasons?

23              MR. COLE:  Those are the -- and to put

24      it in the terms of Reed, those are the

25      justifications that led --

1           JUSTICE JACKSON:  In -- in this case.

2           JUSTICE BARRETT:  But in the

3    discretion -- just let me finish this one.  But

4    in the -- in the discretionary phase is what

5    we're talking about, right?  So, as Justice

6    Jackson just said, that was a reason that the DA

7    denied access to the evidence on track

8    prosecutor, not track court?

9           MR. COLE:  So there's no evidence in

10   the record about that discretionary phase

11   because, again, that is just not at issue here.

12   And I want -- it's not put at issue in the

13   complaint.  He's not saying it's a procedural

14   due process violation for the prosecute to --

15   prosecutor to exercise or not discretion.  This

16   is wholly bound up in Chapter 64.

17           And you can see that throughout his

18   complaint, and the most evident pages are

19   paragraphs 79 through 81 at J.A. --

20           JUSTICE BARRETT:  So what did the

21   prosecutor consider in denying the evidence?

22           MR. COLE:  Well, we have the

23   justifications because we've had them since

24   2011.

25           JUSTICE BARRETT:  Okay.

1          MR. COLE:  We have -- again, we have

2     the identity factor, which the Court of Criminal

3     Appeals ruled against him.  We have the delay

4     factor.  And we have the alternative

5     conclusions.

6          JUSTICE BARRETT:  But those are

7     looking towards 64?

8          MR. COLE:  Those are in 64, yes,

9     again, because that's what he's challenging in

10     this case.

11          JUSTICE JACKSON:  All right.

12          JUSTICE BARRETT:  Right.  But just to

13     be clear, you're saying -- you're not talking --

14     I don't want to talk about track court.  I just

15     want to talk about track prosecutor.  And what

16     you're saying is that we have evidence of what

17     the prosecutor -- the reason why the prosecutor

18     denied access to the evidence?

19          MR. COLE:  The evidence in the context

20     of Chapter 64, yes.  Those are the reasons that

21     have been argued.

22          JUSTICE BARRETT:  Okay.  But are you

23     talking about track court or track prosecutor?

24          MR. COLE:  So, if track prosecutor

25     means the -- the internal deliberations in the

1      office, of course, there's no evidence of that

2      because it's not relevant to this case.  He's

3      not challenging the discretion.

4                  JUSTICE JACKSON:  So, Mr. --

5                  JUSTICE SOTOMAYOR:  I have a question

6      because -- if I might try to clarify this.

7                  JUSTICE BARRETT:  Sure.

8                  JUSTICE SOTOMAYOR:  There's always a

9      discretion of a prosecutor to do this and

10     sometimes it happens outside of formal process.

11     But we're not -- you're -- you're -- am I taking

12     you to be saying that under Article 64, if --

13     don't argue that they haven't -- if they met all

14     of the prerequisites, would you have a right to

15     say no to the court, I'm not going to give the

16     evidence?

17                 MR. COLE:  Of course not, Justice

18     Sotomayor.  If -- if the convicting court orders

19     the evidence, of course, we would provide that

20     evidence.

21                 JUSTICE SOTOMAYOR:  So, if they met

22     Article 64, you would feel bound to follow it,

23     correct?

24                 MR. COLE:  Oh, of course.  The court

25     would --

1          JUSTICE SOTOMAYOR:  All right.

2          JUSTICE BARRETT:  I -- I think you're

3    misunderstanding Justice Sotomayor.  You might

4    be.

5          I -- not if the Court orders it.

6    Obviously, the DA's going to comply with a court

7    order.  If the DA concluded, yeah, you know, you

8    satisfy everything about Article 64 and if we

9    went to court, in my judgment, it's pretty

10   evident that the trial court would give you the

11   evidence.  In that instance, would you turn over

12   the evidence?

13         MR. COLE:  I suspect so.  I mean,

14   again, that's not at issue.

15         JUSTICE GORSUCH:  If I understand it,

16   though, Chapter 64 has a lot of things in it,

17   right?

18         MR. COLE:  Yes, Your Honor.

19         JUSTICE GORSUCH:  And the one thing

20   that's been challenged is whether it applies to

21   the death penalty stage.

22         MR. COLE:  Quite right, Justice

23   Gorsuch.

24         JUSTICE GORSUCH:  All right.  And so,

25   getting past that hurdle, you still have the

1      other independent grounds.  They're in Chapter

2      64 too.

3                MR. COLE:  Quite right.

4                JUSTICE GORSUCH:  Right?  And so I

5      just want to make sure I understand the nature

6      of what you're saying.  You're saying an

7      independent prosecutor making his or her own

8      decision would take into account, of course,

9      if -- if a court were to hold that the -- that

10     it applies to death penalty proceedings, he'd

11     abide by that, but he'd still have independent

12     grounds that have been litigated and resolved on

13     which to deny the request?

14               MR. COLE:  That's correct in this

15     case.

16               JUSTICE GORSUCH:  In this case.

17               MR. COLE:  Of course, we -- I want to

18     be clear about this.

19               JUSTICE GORSUCH:  Yeah.

20               MR. COLE:  This prosecutor is a public

21     official.  He follows state and federal court

22     orders.

23               JUSTICE GORSUCH:  Of course.

24               MR. COLE:  And we are not --

25               JUSTICE GORSUCH:  Yeah.

```
 1              JUSTICE JACKSON:  Mr. Cole --

 2              JUSTICE SOTOMAYOR:  Now, counsel --

 3              JUSTICE JACKSON:  --  can I ask you --

 4    because I'm just trying to understand the theory

 5    of redressability here because I -- I think I

 6    have a different concept and I'm just wanting to

 7    make sure that I understand yours.

 8              Why isn't it enough for redressability

 9    purposes that a declaratory judgment would

10    eliminate some of the justifications that a

11    prosecutor has set forward as the reason why he

12    didn't -- denied the evidence?

13              I mean, traditionally, traditionally,

14    I would think, the way I conceive of

15    redressability, you might have an argument if

16    the declaratory judgment didn't eliminate any of

17    them.  We'd be sort of ships passing in the

18    night.  The prosecutor says, here are my

19    justifications to include this aspect of Article

20    64 or whatever.  And the person is asking for a

21    declaratory judgment that doesn't speak to that

22    at all.  Fine.  You might say no redressability.

23              But what you seem to be saying here is

24    no, we could have a declaratory judgment that

25    speaks to some of the justifications that the
```

1    prosecutor has put forward for denying the

2    evidence, but unless we have a situation in

3    which there is no other justification that could

4    possibly, you know, support this, you have no

5    redressability.

6              And I don't understand that piece of

7    it.

8              MR. COLE:  So here's why, Justice

9    Jackson.  It turns on the injury he's asserting.

10   The injury he's asserting is denial of the

11   access to the evidence.  That's binary.

12             JUSTICE JACKSON:  But that's not the

13   way they --

14             MR. COLE:  Either you get it or your

15   don't.

16             JUSTICE JACKSON:  But that's not the

17   way he has, at least in the briefing,

18   articulated it.  I thought the injury was

19   consideration of his access to the evidence

20   using an unconstitutional process.

21             MR. COLE:  That is his constitutional

22   claim, but his injury -- and I would direct you

23   to paragraph 81 of his operative complaint at

24   Joint Appendix 457A.  I think this nicely lays

25   that out because he says at the beginning, by

1    refusing to release the biological evidence for

2    testing.  So that's the conduct of the defendant

3    that he wants to remedy through the prosecutor.

4                JUSTICE JACKSON:  Yeah, but in a

5    discretionary world, if that's your concept of

6    injury, you would never have discretion -- you'd

7    never have redressability because the prosecutor

8    could always save the very narrow circumstance

9    in which the court, I guess, orders them to do

10   that very thing.  They could always say, well, I

11   wouldn't give it to you anyway, no matter what.

12               MR. COLE:  So this isn't about

13   discretion, and let me go to the redressability

14   component specifically within declaratory

15   judgments.  This Court said in Brackeen that

16   what saves declaratory judgments from the

17   advisory opinion problem is that they are

18   afforded preclusive effect in later imminent

19   litigation.  So, really, the -- the redress he

20   needs through this is that the declaratory

21   judgment will be afforded --

22               JUSTICE JACKSON:  Yes, but Brackeen

23   was talking about parties versus non-parties.  I

24   guess what I'm really, really worried about is

25   that this case, which seems very small and

1    narrow and about, you know, a particular guy

2    and -- and DNA testing and the interpretation of

3    this statute, could actually have major

4    implications for how we understand standing

5    because redressability, which has traditionally

6    not been where all the action is in terms of our

7    standing analysis, it has not been a major

8    hurdle for the Court to have to get over, under

9    your view comes -- comes out to be a situation

10    in which the Court has to essentially decide all

11    these other issues about whether or not the

12    person could ever get relief in order to

13    determine whether or not this claim is

14    redressable.

15            MR. COLE:  I don't think so, Justice

16    Jackson, and here's why.  This goes not to some

17    sort of discretion.  This is not like we're

18    saying the district attorney -- this case

19    concerns the district attorney pulling ideas out

20    of thin air.

21            Again, in the context of a Chapter 64

22    proceeding --

23            JUSTICE JACKSON:  Let me just ask you

24    this hypothetical.  If there was a

25    statute-of-limitations problem, could that be

1    used by the defendant in this circumstance,

2    the -- the -- the state, the state attorney, to

3    argue no redressability?

4              MR. COLE:  A federal statute of

5    limitations?  No, because that wouldn't be a

6    just -- a state law justification.

7              JUSTICE JACKSON:  Make it a -- no, I

8    mean a state -- a state law justifica- -- the

9    state has a statute of limitations, and that's

10   the problem or one of the problems.  He includes

11   statute of limitations as a part of the list of

12   things as to why this person is not going to get

13   the testing.

14             Are you saying that that

15   statute-of-limitations question could be

16   imported into the standing analysis as a grounds

17   for lack of redressability?

18             MR. COLE:  So, in Reed, if it is a

19   justification -- and, again, the -- the

20   declaratory judgment has to eliminate the

21   justification.

22             JUSTICE JACKSON:  I understand.

23             MR. COLE:  Then, yes.  Then, yes.

24             JUSTICE JACKSON:  Yes.  All right.

25             MR. COLE:  If that is a state law

```
1    ground that is a justification, then --
2              JUSTICE JACKSON:  So any other state
3    law ground that would preclude this person from
4    getting the relief they're seeking becomes a
5    redressability issue in -- under your theory?
6              MR. COLE:  So there is a finite set
7    of -- of facts here.  This is not like they're
8    going to be coming out of nowhere.  It's in the
9    statute.  It's in the common law.  Again, this
10   is Chapter 64.  So it's not like he's going to
11   be coming up with a bunch of obscure things that
12   he'll appeal.
13             JUSTICE JACKSON:  No, but in my
14   hypothetical, I'm just talking about theory.
15             MR. COLE:  Mm-hmm.
16             JUSTICE JACKSON:  You're -- you're
17   setting up redressability to require the
18   exclusion of any other ground for relief.
19             So I'm saying -- I'm just testing that
20   by saying any other ground for relief under your
21   theory would count as a redressability problem.
22             MR. COLE:  Because the injury that
23   must be redressed in this case is the denial of
24   evidence.  Again, it's binary.
25             JUSTICE JACKSON:  Yeah.
```

```
1              MR. COLE:  He has to get the evidence
2       or not.
3              JUSTICE KAVANAUGH:  Well, you say --
4       I'm just going to push on that.
5              MR. COLE:  Sure.
6              JUSTICE KAVANAUGH:  I mean, I think
7       some of your answers are really collapsing the
8       merits into redressability, but -- so I think
9       that's a concern.
10             But I understood the complaint and the
11      thrust of the argument to be the denial of fair
12      procedures with respect to the underlying right.
13             And we've long said -- I mean, Justice
14      Scalia's opinion in Lujan.  If this case is
15      about fair procedures, Justice Scalia's opinion
16      in Lujan said:  There's much truth to the
17      assertion that procedural rights are special.
18      The person who has been accorded a procedural
19      right to protect his concrete interests can
20      assert that right without meeting all the normal
21      standards for redressability and immediacy.
22             And I think procedural rights have
23      always been different because, if you could just
24      say, well, who cares about the procedures,
25      they're not going to win anyway, you're not
```

1    going to be able to get into court to argue for

2    the fair procedures.  And that seems to be on

3    point here.  Tell me why it's not.

4                MR. COLE:  So I don't think so,

5    Justice Kavanaugh, for this reason.  He is not

6    asserting a procedural injury here.  J.A. 430A,

7    J.A. 432A, J.A. 452A, J.A. 453A --

8                JUSTICE KAVANAUGH:  No, you've said --

9                MR. COLE:  -- that is his complaint.

10               JUSTICE KAVANAUGH:  -- you've said

11   over and over again -- I've read the complaint.

12   He -- you've said over and over again that he's

13   complaining about the denial of access to the

14   evidence.  That is the ultimate goal, obviously.

15               But the complaint is that Chapter 64,

16   as interpreted, is unconstitutional and a

17   violation of procedural due process to the

18   extent it only allows you to challenge your

19   conviction for the underlying crime and not your

20   ineligibility for the death penalty.

21               The argument is that that violates

22   procedural due process.  That may be a winning

23   argument, it may be a losing argument, but

24   that's a down-the-road argument, it strikes me.

25   But that's the challenge.

```
 1              MR. COLE:  So that seems to me to be
 2    his theory of why the Constitution is violated.
 3    But, when you go to the injury, when you're
 4    asking what's the defendant's conduct here --
 5              JUSTICE KAVANAUGH:  Well, you
 6    always -- this is, again, in the same footnote
 7    in Justice Scalia's opinion, in the whole
 8    opinion.  You always have a connected
 9    substantive interest at the end to stop the
10    project, for example, in the environmental case.
11              But your argument is that they didn't
12    comply with the procedures in order to stop the
13    project.  And you can't come in and say:  Oh,
14    the project's going forward anyway, so who cares
15    about the procedures, you're not -- you don't
16    get redressability.
17              I mean, that's just a stone-cold
18    loser, as -- as Justice Scalia said.
19              MR. COLE:  Well, again, I don't think
20    his injury is -- is the procedural point.  I
21    just don't view this as a procedural injury case
22    in the same way that say an APA case would when
23    there's a right to notice and comment or
24    something like that.
25              Again, I go -- I -- I would just go
```

1       back to his complaint and his -- his theory.

2                   JUSTICE SOTOMAYOR:  I -- I'm sorry --

3                   MR. COLE:  It was all about the --

4                   JUSTICE KAVANAUGH:  Can I ask one --

5       one more question just to make sure.  And I

6       don't think you're arguing this, but I just want

7       to make sure.

8                   Are you arguing that if you said we

9       will never turn over the DNA evidence, that that

10      declaration by you, the defendant, would defeat

11      redressability?

12                  MR. COLE:  No, of course not, because,

13      again, the question is whether the declaratory

14      judgment could then be taken into state court

15      and accorded preclusive effect.  The Court --

16      again, the Court here under Chapter 64 is the

17      one who would order that.  And so, obviously, we

18      would -- we would abide by the Court's order.

19                  JUSTICE KAVANAUGH:  By a court order.

20      Are you saying we will never -- if we say we

21      will never comply absent a future court order,

22      that that defeats redressability now for this

23      kind of suit?  Are you arguing that?

24                  MR. COLE:  I guess I'm not sure of the

25      context.  You're saying if -- if he just makes a

1      declaration that --

2              JUSTICE KAVANAUGH:  Yeah.  We will

3      never exercise our discretion to turn it over

4      absent a court order.  We will never do it

5      absent a court order down the road.  But there

6      is no court order yet, so, therefore, you

7      have -- you, federal court, right now do not --

8      there's -- it's not a redressable case.

9              MR. COLE:  So I think the distinction

10     here is that --

11             JUSTICE KAVANAUGH:  I think you are

12     arguing that.

13             MR. COLE:  So -- but the distinction

14     here, he's not challenging discretion.  So this

15     is not a case about whether the -- the district

16     attorney exercises discretion or not.  This is

17     purely a question under Chapter 64 whether he

18     can be compelled to hand over the evidence,

19     again, through the preclusive effect of a

20     declaratory --

21             JUSTICE KAVANAUGH:  That's a fair -- I

22     mean, the discretion is -- that's a fair point.

23     And it's the oddity or awkwardness of -- of the

24     prosecutor as -- as defendant.

25             MR. COLE:  Yeah.

1          JUSTICE KAVANAUGH:  I'll -- I'll stop

2     there.

3          JUSTICE SOTOMAYOR:  Counsel, maybe

4     this is an unfair question to you.  You can push

5     back, okay?

6          We've now spent so much time on

7     whether you should test or not.  And at one

8     point, you decided that you wouldn't object to

9     doing it, but now you're fighting it tooth and

10    nail.

11         It seems odd to be fighting it tooth

12    and nail when they have more evidence about the

13    potential culpability of Mr. Cuellar, including

14    that he failed the polygraph that was an

15    affirmative misstatement earlier in the case

16    that he had passed it.

17         They now have evidence that he had

18    money or was tied to money.  It would seem that

19    somehow we're fighting a legal issue that really

20    is less legal than it is -- don't you want to

21    know you got -- you're -- you're convicting the

22    right person for the right thing?  I mean, he's

23    going to spend time in jail no matter what

24    because he admits to being at least an accessory

25    to the robbery or a part of the robbery.

1          But at what point does this legal

2    maneuvering become counterproductive to the

3    state?  If you -- if you are sure of your

4    conviction and your theory, why not do the

5    testing?

6          MR. COLE:  So a couple of responses,

7    Justice -- Justice Sotomayor.

8          The first is that, again, the Texas

9    legislature has set the requirements for DNA

10   testing, and --

11         JUSTICE SOTOMAYOR:  But you told me

12   earlier that there's always prosecutorial

13   discretion outside of Article 64.  I'm not in

14   Article 64.  I'm in:  At what point do you

15   exercise your discretion?  Because you have it.

16         MR. COLE:  So a couple of responses.

17         So, first, they have presented some of

18   this evidence already to the CCA in a successive

19   habeas petition, which was rejected.

20         JUSTICE SOTOMAYOR:  And part of their

21   due process argument is that the court is

22   limiting itself to the record evidence and not

23   looking at what was developed later and that

24   that's a part of the due process.

25         MR. COLE:  And if I might address that

1    piece because I think that is important.  They

2    have not challenged that record facts

3    requirement.  Other plaintiffs have.  Mr. Reed

4    is challenging that currently in the Fifth

5    Circuit.

6              JUSTICE SOTOMAYOR:  Well, they

7    could -- they could go back to the district

8    court under Rule 60(b) and argue that you're

9    still not abiding by due process and they should

10   reopen.  So they could do that.

11             MR. COLE:  It's hard to see how that

12   would redress the injury because, again, they --

13   they did not prevail on final judgment on

14   their -- their challenge to the preponderance of

15   the evidence, but let me --

16             JUSTICE SOTOMAYOR:  Well, now that you

17   know that they can challenge the death penalty

18   and that means that they can prove they were

19   actually innocent of the death penalty, you

20   might -- that might have been a new circumstance

21   to justify them going back to the district court

22   and saying:  Look, they're doing what we told

23   you they were doing.  They're relying on only

24   trial record evidence, but that's a violation of

25   due process.  They should look at the new

1       evidence too.

2               MR. COLE:  Well, they just haven't

3       said that.  I suppose they could in the future,

4       but that doesn't give them redress here.

5               JUSTICE SOTOMAYOR:  Well, but the

6       point is that it's only a possibility, but

7       that's all they need to have standing.

8               MR. COLE:  Let me go to your --

9       your -- your main thrust of your argument --

10              JUSTICE SOTOMAYOR:  Yes.

11              MR. COLE:  -- or your -- your

12      question, though, so we don't get sidetracked on

13      that.

14              Mr. Gutierrez had the opportunity to

15      do testing at the beginning of trial.  It was

16      made available to him.  And the Court of

17      Criminal Appeals said he made a strategic choice

18      not to test the evidence.

19              You point to the 2015 period where

20      there was this -- this three-year period

21      where -- and this is at -- I would direct you to

22      J.A. --

23              JUSTICE SOTOMAYOR:  What he did at

24      trial was already present in 2015, and the

25      prosecutor agreed to test then.

1          MR. COLE:  And -- and he did not take

2    advantage of that there.  But the other thing is

3    the Court of Criminal Appeals, as Justice

4    Gorsuch was pointing at the -- at the top-side

5    argument, is that they've already said that even

6    if the evidence were exculpatory, it would not

7    change his sentence because, again, he -- his

8    statement puts him in the room.

9          JUSTICE SOTOMAYOR:  That's if they

10   believe -- he's been complaining that that

11   statement that put him in the room was coerced

12   because he had --

13         MR. COLE:  And no court --

14         JUSTICE SOTOMAYOR:  -- he had two or

15   three statements before that.  In each of them,

16   he was only an accessory to the robbery.

17         MR. COLE:  And no court in the country

18   has ever accepted that theory.  In fact, the

19   trial court at the presuppression hearing had an

20   evidentiary hearing where she had Mr. Gutierrez

21   and she had the officer, and they --

22         JUSTICE SOTOMAYOR:  But, if they had

23   Cuellar being more the actor, it might change

24   that calculus.

25         MR. COLE:  I don't see how it would

1    unsettle the -- the finding that this was a

2    voluntary confession.  I mean, again, the

3    baseline, the best he's got, is that he was

4    there and he was watching his friend stab Ms. --

5    Ms. Harrison while he was robbing her.

6    That's -- that's the baseline.

7         You asked, I think, at the top side

8    would Cuellar's D -- DNA be there.  But, as

9    Justice Alito pointed out, he was living there.

10   He was the nephew.

11        JUSTICE SOTOMAYOR:  But, if it was --

12        MR. COLE:  His DNA was probably there.

13        JUSTICE SOTOMAYOR:  --- in under her

14   fingernails and that was his hair, that would be

15   a very different case.

16        MR. COLE:  Oh, his hair wouldn't be

17   very surprising because he found her and he was

18   apparently very drunk when he found her and so

19   was not very careful.  He was touching the body.

20   He got blood all over him.

21        The main point, though, is the Court

22   of Criminal Appeals has three times already

23   held, even if you assume the evidence he wanted

24   to test, which, again, this is a DNA testing

25   case, even if you were to assume it's

1    exculpatory, it would not change the sentence

2    because he is eligible for the death penalty

3    under Enmund/Tison.

4            JUSTICE GORSUCH:  Mr. Cole, when we --

5    when we assess redressability in procedural due

6    process cases, Justice Kavanaugh is absolutely

7    right that that's a -- that's a -- that's a

8    different animal.  Why isn't this a procedural

9    due process claim that the procedures that the

10   TCCA used were unfair?

11           I mean, I -- I understand your point

12   is it's not a procedural claim; it's a

13   substantive one.  He wants access to this

14   evidence.  But you've heard some points in

15   the -- in the complaint pointed out, paragraph

16   81, for example, and I just want to get your

17   reactions.

18           MR. COLE:  Yeah, I'd be happy to,

19   Justice Gorsuch.  So the -- I understand him to

20   say:  I'm not able to access the -- the habeas

21   right under 11.071.  That seems to me to be

22   collapsing the things that this Court decoupled

23   in Skinner.  Justice Ginsburg's opinion for the

24   Court says no, no, no, we only focus on the

25   Article 64 procedures.  We separate -- separate

1      out the habeas issues so that we avoid the Heck

2      bar.

3              So, if he's complaining about his

4      access to the state -- to access state habeas,

5      that's just, I think, a separate issue here.

6              JUSTICE KAGAN:  No, no, no.  I mean, I

7      think that the question is why don't you -- a

8      fair reading of this complaint is you look at

9      the body of procedures that are in Chapter 64

10     and they're preventing me from getting testing

11     at this moment in time.

12             And so that is essentially a

13     procedural claim.  I mean, of course, he wants

14     the testing.  All complaints about procedures

15     are because you want something that the

16     procedures are going to lead to.

17             But, in chap -- in paragraph 81 and

18     other places, it's really clear.  It's like the

19     body of procedures here -- and he mentions some

20     of them specifically.  The body of procedures

21     here are preventing me from getting testing.

22     That's a violation of due process.

23             MR. COLE:  So I think he does have to

24     identify those procedures, though.  And he's

25     only identified a couple of them.  That's the

1    main problem.  He has not challenged all the

2    procedures that he needs to to get the remedy

3    for the injury.

4          Other plaintiffs may well have done

5    that, and some -- some, including Mr. Reed, are

6    challenging those today.  It's just I think some

7    of the idiosyncratic choices of this particular

8    litigant in this case that's -- that's --

9          JUSTICE GORSUCH:  Can -- can you --

10   that's what I want to get at, though.  I mean,

11   that -- it's one thing to say I -- I don't know

12   whether I'm entitled to it or not, but I didn't

13   get a fair day in court.  Got it.  Another thing

14   to say I'm entitled to this evidence.  Okay?

15   Those are two different injuries.

16         What's your best evidence that this

17   case, this complaint, should be read in the

18   second category?

19         MR. COLE:  Well, again, I would go

20   back to several cites that I was reading off

21   earlier from his complaint where he says he was

22   requesting an order declaring that defendants'

23   withholding of the evidence -- again, it's all

24   about access to the evidence.  J.A. 430, J.A.

25   432A, J.A. 452, 453, 457.  It's all over his

1    complaint.  That is what he's alleging.

2              JUSTICE JACKSON:  What about 456,

3    asserting that -- at least according to counsel

4    on the other side's representations, he was

5    asserting that the CCA's construction of Chapter

6    64 prevents Gutierrez from establishing that

7    he's ineligible for the death penalty?

8              MR. COLE:  Yeah, I think that's the

9    conviction-versus-sentence distinction that he's

10   alleging.  I mean, that's his theory about why

11   it's unconstitutional.  But his injury is,

12   again, denial of access to the evidence.

13             CHIEF JUSTICE ROBERTS:  Thank you,

14   counsel.

15             Justice Thomas, anything further?

16             JUSTICE THOMAS:  Just so it's clear,

17   how does the Chapter 64 proceeding work?  How

18   does it begin, and who adjudicates it?

19             MR. COLE:  So the defendant would

20   file -- or the -- the convict would file a

21   motion in state court and it would go before the

22   convicting court, who would then adjudicate it,

23   and then there's a direct right of appeal

24   directly to the CCA.

25             JUSTICE THOMAS:  So the oddity here is

1    that we are not dealing with a direct appeal of

2    a denial from the TCCA?

3              MR. COLE:  That's right.  And he could

4    have done that.  He could have filed a cert

5    petition under 28 U.S.C. 1257(a).

6              JUSTICE THOMAS:  Now how does the

7    discretionary process work?

8              MR. COLE:  I think it's not relevant

9    here.  I mean, it -- it works as an --

10             JUSTICE THOMAS:  I understand that,

11   but how would it normally work?

12             MR. COLE:  Well, I suppose they

13   would -- the -- the convict might go to the

14   DA -- his lawyers would go to the DA and ask

15   for -- ask for a turnover of the evidence, and

16   it would just be informal like that.  I mean,

17   it's essentially a prosecutorial discretion

18   issue.  It might vary from DA office to DA

19   office because it is a measure of prosecutorial

20   discretion.

21             JUSTICE THOMAS:  Thank you.

22             CHIEF JUSTICE ROBERTS:  Justice Alito?

23             JUSTICE ALITO:  I take -- I take Reed

24   at -- at face value, and I understand Reed to

25   say that there was redressability there because

1       there was a chance that a decision would lead

2       the district attorney to turn over the DNA

3       evidence.  Is that correct?

4               MR. COLE:  That's how I understand it,

5       Justice -- Justice Alito, yes.

6               JUSTICE ALITO:  All right.  So, here,

7       the district attorney is the defendant, and

8       there are multiple grounds on which the district

9       attorney could refuse to turn over the evidence.

10      The district attorney could rely -- could say, I

11      think that the -- the distinction between using

12      the evidence to prove lack of guilt and using

13      the evidence to prove death eligibility is

14      sound.  All right?  That would be effected by

15      the declaratory judgment that's sought.

16              But there are other grounds that

17      have -- that were mentioned by the Court of

18      Criminal Appeals and by the trial level court.

19      And I take -- I mean, the district attorney is

20      here.  The district attorney could turn over

21      this evidence.  The district attorney is

22      resisting it and citing to us the reasons that

23      were given by the Texas courts why the evidence

24      is not -- doesn't have to be turned over under

25      Article 64.

1          It's really hard for me to see for

2    that reason how a decision on this distinction

3    between death eligibility and guilt could make a

4    difference in the -- in the district attorney's

5    decision.

6          MR. COLE:  I agree with you, Justice

7    Alito, and we already know how it would turn out

8    because he -- he took the declaratory judgment

9    to state court, the one that he got and the most

10   relief he could get, and he still was unable to

11   get the redress.

12         JUSTICE ALITO:  We're not concerned

13   here about the -- the question of what good the

14   DNA evidence might do, but some of my colleagues

15   have gone into that in some depth.  So a couple

16   of things would be -- it would -- helpful to me

17   just in my understanding of the case to have

18   clarification on a couple of things.

19         The state's theory was that there were

20   three people involved here, right?

21         MR. COLE:  Three people in the overall

22   scheme, yes.

23         JUSTICE ALITO:  In the overall scheme.

24   And -- and where did that come from?  That came

25   from -- did it come from any place other than

1     Mr. Gutierrez's confession?

2           MR. COLE:  It was his confession.

3     There was also -- these weren't entered in

4     trial, but they came in in the Article 64

5     proceeding.

6           JUSTICE ALITO:  Yeah, but as far as

7     the evidence at trial was concerned, the idea

8     that there were only three people came from

9     Mr. Gutierrez himself?

10          MR. COLE:  That's right.

11          JUSTICE ALITO:  So establishing that

12    more than three people were involved in some way

13    in this would only affect the portion of

14    Mr. Gutierrez's confession that said that only

15    three people were involved?

16          MR. COLE:  Yes.

17          JUSTICE ALITO:  Okay.  Thank you.

18          CHIEF JUSTICE ROBERTS:  Justice

19    Sotomayor?

20          Justice Kagan?

21          JUSTICE KAGAN:  I want to make sure,

22    Mr. Cole, I -- I understand your distinction of

23    Reed, and as you said it to Justice Alito, it is

24    that there is this backup argument that even if

25    the evidence were exculpatory, it's not going to

1      avail him anything.

2              And -- and we went -- we -- we --
3      we -- we went over this before, but I want to
4      make sure I understand it because Reed had the
5      identical backup argument, right?  There's first
6      the argument about chain of custody, but then
7      the state trial court had said, look, he just
8      didn't demonstrate that he would have been
9      acquitted even if the DNA results were
10     exculpatory.

11             MR. COLE:  Mm-hmm.

12             JUSTICE KAGAN:  And the court clearly
13     did not care about that, that there was a backup
14     argument that could have done all the work in
15     the same way that you're saying your backup
16     argument could do all the work.

17             So what are we to make of that?  Did
18     we just forget about it between page 233 and
19     234?

20             MR. COLE:  No, that's not what I'm
21     suggesting, Justice Kagan, and here's why I
22     think the distinction is -- here's where I think
23     the distinction lies.  Mr. Reed was challenging
24     in his complaint all of the justifications, and
25     a declaratory judgment may well have eliminated

1      it.  And so I think the court rightly said,

2      yeah, it would -- it would eliminate those

3      justifications.

4              The difference here is Mr. Gutierrez

5      has not done that.

6              JUSTICE KAGAN:  Well, I -- I -- I

7      mean, maybe -- I'm not sure I do understand that

8      because, if you looked at Reed's complaint, it

9      was really, I thought, pretty similar to this in

10     the sense of -- and -- and the court says this

11     in the next paragraph.  It -- it says, you know,

12     the law -- what Reed argued primarily was that

13     the law's stringent chain-of-custody requirement

14     was unconstitutional in the same way that what

15     Mr. Gutierrez is arguing primarily is that

16     Chapter 64 is unconstitutional because it

17     doesn't apply to sentencing.

18             So there is a primary argument that

19     focuses on one procedure, but there's also a

20     sort of back -- you know, broad claim that if at

21     this point in these circumstances for this

22     person the Chapter 64 procedures are preventing

23     him from getting testing, that's a violation of

24     due process.

25             MR. COLE:  So I guess probably the --

1      the minor disagreement we're having is how

2      broadly you construe his claim.  It seems to me

3      that the -- all of the courts in this case have

4      construed it, you have to -- you have to

5      eliminate the justifications.  And there are

6      independent justifications.  The statute is

7      conjunctive.  And when you marry that up with

8      his injury, which is you've got --

9            JUSTICE KAGAN:  Yeah, but then -- but

10     then Reed loses too if that's the case.

11           MR. COLE:  I don't think so because it

12     was at -- at -- it was at the pleading stage.

13     And he -- again, he was challenging all of the

14     justifications.  Mr. Gutierrez has not

15     challenged all the justifications.

16           And that is the difference because you

17     have to challenge all the justifications to get

18     the access to the evidence.

19           JUSTICE KAGAN:  Thank you.

20           CHIEF JUSTICE ROBERTS:  Justice

21     Gorsuch?

22           Justice Kavanaugh?

23           JUSTICE KAVANAUGH:  Just a couple.

24           You mentioned that the declaratory

25     judgment was taken to the state court and didn't

1    affect the state court's decision.  But hadn't

2    the declaratory judgment been vacated by the

3    Fifth Circuit by the time that happened?

4              MR. COLE:  It had, but that was not a

5    factor in the court's decision at all.

6              JUSTICE KAVANAUGH:  That's a -- I

7    mean, that's a key point, though.

8              MR. COLE:  I --

9              JUSTICE KAVANAUGH:  Anyway.  In 2015,

10   when the state said we're okay with the DNA

11   testing, what happened?  I'm a little murky on

12   that.  It sounds like the state trial court just

13   didn't act for quite a while?

14             MR. COLE:  Yeah.  So the record's a

15   little spotty about that, but here's what it --

16   it appears to me had happened.  There was this

17   Motion for Miscellaneous Relief which may well

18   have been a procedurally improper motion, but

19   setting that aside, it appears that -- and --

20   and I would direct you to --

21             JUSTICE KAVANAUGH:  Well, it might

22   have been procedurally improper, but the state

23   said we're okay with the DNA testing, correct?

24             MR. COLE:  Well, so I would direct you

25   to J.A. 731 to 732.  The state said:  We're not

1    going to agree to it, but we're not going to

2    oppose it.

3              JUSTICE KAVANAUGH:  Okay.

4              MR. COLE:  And then it appears that it

5    just never got adjudicated for whatever reason.

6    The record doesn't say why.

7              JUSTICE KAVANAUGH:  Okay.  And then --

8    that's it.  Thank you.

9              CHIEF JUSTICE ROBERTS:  Justice

10   Barrett?

11             Justice Jackson?

12             JUSTICE JACKSON:  Can I just be clear

13   on the bottom line from sort of a bird's-eye

14   view here.  I understand your argument to be

15   that as a plaintiff, you have to propose an

16   order that would eliminate all of the

17   justifications for the denial in order to have

18   standing to challenge any one of them.  Is that

19   right?

20             MR. COLE:  To remedy your injury,

21   which is the denial of access to the evidence,

22   you have to eliminate the justifications.

23             JUSTICE JACKSON:  As you've stated it.

24   Would you concede that if the plaintiff stated

25   the injury in a more granular way, if they said

1       the injury was to -- the injury here was that

2       Chapter 64 is procedurally infirm and it is

3       preventing me from establishing what I need to

4       establish in order to get this relief, if that's

5       the statement of the injury, what --

6               MR. COLE:  I --

7               JUSTICE JACKSON:  -- what result?

8               MR. COLE:  Well, I'm not sure how that

9       would be the injury because, again, they need to

10      identify what's the conduct of the defendant

11      there.

12              JUSTICE JACKSON:  No, the injury is we

13      have this provision of law that is preventing me

14      from being able to make my claim.  That's the --

15      that -- that -- you're saying that can't be an

16      injury?

17              MR. COLE:  What I'm saying is that it

18      has to be conduct of the defendant.  I mean, we

19      need redress against a particular defendant.

20      And so what I'm saying is what's -- what is

21      the -- what is the defendant's conduct.

22              JUSTICE JACKSON:  And to the extent

23      the -- to -- to -- to the extent that the

24      defendant is relying on that provision of law to

25      ultimately deny me relief, what I'm saying is I

1    see you, defendant, relying on this provision of

2    law, but that provision of law has a procedural

3    due process problem.

4         MR. COLE:  But there -- but what is

5    the end result of the lawsuit is what I'm

6    getting at because, again, what -- if he wants

7    access to the evidence, which is what -- is

8    basically what a Skinner claim is --

9         JUSTICE JACKSON:  It just seems so

10   complicated to me in a world where standing

11   theory is typically pretty clear.  I mean, we --

12   we fight about whether or not there -- this

13   thing is an actual injury.  We fight about, you

14   know, the extent that the defendant caused it.

15        You're not claiming any of that.

16   You're sort of focusing in on this sleeper area

17   of standing law that is, you know, in a way

18   that's very odd to me.

19        MR. COLE:  Well, we're just trying to

20   be faithful to Reed, and as I read the Reed

21   case, it says -- it establishes a clear test.

22   It says it has to eliminate the justification --

23        JUSTICE JACKSON:  So you agree that

24   you -- that you're reading Reed to establish a

25   new test.  The test is that you have to

1    eliminate all other avenues of relief?

2              MR. COLE:  That's -- that's what Reed

3    said and so we take that at face value.  I'm not

4    sure that it --

5              JUSTICE JACKSON:  Thank you.

6              CHIEF JUSTICE ROBERTS:  Thank you,

7    counsel.

8              Rebuttal, Ms. Fisher?

9              REBUTTAL ARGUMENT OF ANNE E. FISHER

10                 ON BEHALF OF THE PETITIONER

11             MS. FISHER:  Thank you, Your Honor.

12   Very briefly.

13             Mr. Gutierrez has never changed his

14   theory that this is a procedural injury and that

15   it's the denial of access to DNA evidence to use

16   in a 5(a)(3).  That's clear throughout his

17   complaint.

18             What has changed is the Respondents'

19   reason why he doesn't have standing.  And so

20   these new issues that came up, like this -- the

21   point of the in the alternative holding was

22   raised for the first time by Respondents in

23   their 28(j) letter in the Fifth Circuit after

24   all the briefing has been completed.  And they

25   raise these two new supposedly independent

1      grounds in their merits brief for the very first

2      time.

3              Now they're allowed to do that because

4      it's a jurisdictional argument, but it's not

5      Mr. Gutierrez who keeps switching his position.

6      We are simply reacting to the brand-new

7      arguments that Respondents have come up with

8      late in the process as to why we don't have

9      standing.  None of these arguments were

10     mentioned in the district court, in response to

11     our complaint, or in our Fifth Circuit briefing.

12             My second point is simply that the

13     Fifth Circuit itself said that they went beyond

14     Reed.  When you look at Footnote 3, it said it

15     gives us pause that we are doing -- and I'm

16     going to paraphrase a little bit here -- but it

17     gives us pause that we are going beyond what

18     this Court did in Reed.

19             If you follow that new rule that the

20     Fifth Circuit imposed and basically force a

21     plaintiff to prove that they're going to win the

22     case just to show that it's redressable, that

23     would turn Article III standing on its head.

24             And with that, I -- I rest and thank

25     this Court.

1          CHIEF JUSTICE ROBERTS:  Thank you,

2   counsel.

3          The case is submitted.

4          (Whereupon, at 11:39 a.m., the case

5   was submitted.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**1**

10 [1] 29:12
10:04 [2] 1:15 3:2
105 [1] 2:10
11.071 [1] 90:21
11:39 [1] 107:4
12(b)(6 [1] 17:21
1257(a [1] 94:5
17 [1] 47:15
1983 [5] 11:16 25:21,25 27:10 31:8

**2**

2 [1] 35:25
2011 [4] 16:7 39:3 40:15 68:24
2015 [4] 48:8 87:19,24 101:9
2019 [1] 39:6
2025 [1] 1:11
23-7809 [1] 3:4
233 [2] 61:11 98:18
234 [1] 98:19
24 [1] 1:11
25 [1] 38:21
28 [1] 94:5
28(j [1] 105:23

**3**

3 [2] 2:4 106:14

**4**

430 [1] 92:24
430A [1] 80:6
432A [2] 80:7 92:25
452 [1] 92:25
452A [1] 80:7
453 [1] 92:25
453A [1] 80:7
456 [1] 93:2
457 [1] 92:25
457A [1] 74:24
478 [1] 14:8
479 [1] 14:8

**5**

5(a)(3 [5] 22:11 33:2 37:23 38:13
105:16
58 [1] 2:7

**6**

60 [1] 32:1
60(b [1] 86:8
61A [1] 60:13
64 [97] 3:15,24 4:9,16 6:10 12:19
13:7,13,20,21 14:1,10,10,22 15:5,
10,24 16:12,17 17:2 22:15 23:3
24:15,17,19 25:13,18,19,25 26:7,
19 27:12,13 28:24 29:10 31:4,6,7,
9,15,21 32:8 34:10,24 35:11 38:
11 39:2,9,9,11 42:13 43:23,24 45:
1 46:3,3 47:17 53:15,24 54:5,21
59:21 66:17,18,23 67:2,4,8,11,18,
21 68:16 69:7,8,20 70:12,22 71:8,
16 72:2 73:20 76:21 78:10 80:15
82:16 83:17 85:13,14 90:25 91:9
93:6,17 95:25 97:4 99:16,22 103:
2

**7**

64.03 [1] 41:9

731 [1] 101:25
732 [1] 101:25
79 [1] 68:19

**8**

81 [5] 63:14 68:19 74:23 90:16 91:
17

**9**

97 [1] 10:24

**A**

a.m [3] 1:15 3:2 107:4
abide [3] 54:10 72:11 82:18
abiding [1] 86:9
ability [2] 32:1 35:1 58:4
able [9] 4:19 10:3 26:18 53:24 56:
15,22 80:1 90:20 103:14
above-entitled [1] 1:13
absent [3] 82:21 83:4,5
Absolutely [8] 27:9 34:9,9 36:6
49:3,16 52:21 90:6
accepted [1] 88:18
access [33] 4:19,23 9:7 20:21 21:1,
18 26:6 29:1 35:24 43:24 54:15
58:22 59:10 60:9,25 61:3 63:12
67:5 68:7 69:11 74:11,19 80:13
90:13,20 91:4,4 92:24 93:12 100:
18 102:21 104:7 105:15
accessory [2] 84:24 88:16
accorded [2] 79:18 82:15
according [1] 93:3
account [6] 23:3,5 24:13 25:3 67:
7 72:8
accounted [1] 19:19
acquitted [2] 61:17 98:9
act [1] 101:13
acting [1] 25:22
action [1] 76:6
actions [1] 31:10
actor [1] 88:23
actors [1] 25:22
actual [1] 104:13
actually [23] 5:21 13:1,23 14:4 16:
11 17:4,7 18:25,25 19:14 20:22,
24 21:2 28:9 33:9 38:16 42:7,15
55:21 56:6 62:6 76:3 86:19
add [1] 17:5
added [1] 17:10
adding [1] 22:3
additional [1] 17:14
address [1] 85:25
addressed [1] 64:16
addresses [1] 15:9
addressing [1] 22:9
adequate [4] 6:13 15:11,25 61:15
adjudicate [1] 93:22
adjudicated [1] 102:5
adjudicates [1] 93:18
admits [1] 84:24
admitted [1] 33:18
advantage [1] 88:2

advisory [1] 75:17
affect [2] 97:13 101:1
affirm [1] 60:16
affirmative [2] 75:18,21
afforded [2] 75:18,21
agree [12] 7:17 9:5 11:21 36:7,10
50:7,10 54:12 57:6 96:6 102:1
104:23
agreed [1] 87:25
agreement [1] 66:12
ahead [2] 18:9 65:24
air [1] 76:20
akin [1] 12:23
AL [1] 1:6
ALITO [38] 8:25 9:5,11,23 10:9,12
18:6,9 19:21 20:3 21:12,14 22:3
34:7,8,18 35:3,13 36:2,24 37:10,
14 38:4,7,19 39:17 89:9 94:22,23
95:5,6 96:7,12,23 97:6,11,17,23
alleged [1] 64:7
alleging [2] 93:1,10
allow [3] 15:6 34:21 42:16
allowed [2] 39:12 106:3
allows [2] 42:14 80:18
almost [1] 22:5
already [5] 5:16 12:24 20:13 60:14
85:18 87:24 88:5 89:22 96:7
alternative [2] 69:4 105:21
Although [1] 38:25
among [1] 10:24
amount [1] 56:11
analysis [4] 27:8 56:13 76:7 77:16
animal [1] 90:8
ANNE [5] 1:18 2:3,9 3:7 105:9
another [4] 6:9 13:7 55:7 92:13
answer [7] 7:18 29:14 41:7,24 55:
11 65:7
answered [2] 41:6 57:8 58:10
answers [1] 79:7
anticipate [1] 33:9
anticipated [1] 14:16
anybody [1] 29:10
Anyway [6] 37:19 47:18 75:11 79:
25 81:14 101:9
APA [1] 81:22
apart [2] 25:19 65:2
apartment [1] 41:3
apparently [1] 89:18
appeal [4] 11:10 78:12 93:23 94:1
Appeals [8] 36:8 59:22 65:5 69:3
87:17 88:3 89:22 95:18
APPEARANCES [1] 1:17
appears [3] 101:16,19 102:4
Appellant [1] 15:15
appellate [1] 11:12
Appendix [2] 14:8 74:24
application [1] 54:20
applied [8] 6:16,17 29:2 43:14 46:
3 47:17
applies [5] 9:9 14:22 16:17 71:20
72:10
apply [7] 4:2 5:20 6:15 13:8 14:10
28:23 99:17
applying [5] 5:3 15:19

approached [1] 19:14
area [1] 104:16
aren't [2] 46:10 64:15
arguably [1] 11:17
argue [10] 17:18 18:11 20:16 29:
22 42:4 56:20 70:13 77:3 80:6 82:
8
argued [4] 18:12 27:18 52:14 69:
21 99:12
arguing [10] 20:9 28:18 54:4 55:3,
5 82:6,8,23 83:12 99:15
argument [42] 1:14 2:2,5,8 3:4,7 7:
3,4 9:25 24:22 26:17,23,25 27:3,
14 33:25 54:7 55:8 58:16 64:17,
24 65:1 66:16 73:15 77:1 80:21,
23,23,24 81:11 85:21 87:9 88:5
97:24 98:5,6,14,16 99:18 102:14
105:9 106:4
arguments [4] 7:16 55:2 106:7,9
around [2] 30:4 45:23
Article [34] 7:8 23:3 24:15,17,19
25:13,18,19 26:7 30:18 35:25 41:
9 46:3 53:15,24 54:5,21 66:23 67:
2,4,8,11,18,21 70:12,22 71:8 73:
19 85:13,14 90:25 95:25 97:4 106:
23
articulated [1] 74:18
aside [3] 26:8 41:6 101:19
asks [1] 10:24
aspect [2] 65:3,4 73:19
assert [2] 61:2 79:20
asserted [1] 61:1
asserting [3] 74:9,10 80:6 93:3,5
assertion [1] 79:17
assess [1] 90:5
Assistant [1] 1:18
assume [5] 6:7 7:25 50:7 89:23,25
assuming [2] 25:1 46:2
at-fault [1] 89:8
attaches [1] 32:19
attempt [2] 33:9 60:10
attempting [1] 60:5
attorney [45] 6:18 7:2,21 9:2,9,12,
14,18 10:15,19,19 11:1,24 12:4,8
26:2,24 27:15,17 29:1 30:15,21
32:3,4 34:12,16 35:7 36:3,15 46:1
47:14 48:17 54:24 59:18 76:18,19
77:2 83:16 95:2,7,9,10,19,20,21
Attorney's [2] 24:4 96:4
attorneys [1] 6:24
Austin [1] 1:21
avail [1] 98:1
availability [1] 4:7
available [6] 60:23 87:16
Avel [1] 19:11
avenues [1] 105:1
averring [1] 6:24
avoid [1] 91:1
away [1] 5:16
awkward [2] 11:23 49:18
awkwardness [5] 11:14,20 49:11
53:10 83:23

**B**

**back** [25] 7:5 9:19 12:14,16 13:6
16:7 22:20 24:15,16 28:1 29:7 34:
22 36:25 43:25 44:19 45:9 49:10
53:8 64:12 82:1 84:5 86:7,21 92:
20 99:20
**background** [1] 67:8
**backup** [6] 61:22 62:17 97:24 98:5,
13,15
**backwards** [1] 37:5
**bags** [1] 52:9
**baked** [1] 14:1
**bar** [2] 28:19 91:2
**BARRETT** [31] 21:13 22:19 23:15,
18 24:6,11,19 25:13,17 26:4,14
41:7 53:6,7,21 54:3 55:1,10 65:21,
25 66:8,21 68:2,20,25 69:6,12,22
70:7 71:2 102:10
**Barrett's** [1] 29:8 49:8
**barricade** [1] 25:15
**based** [6] 4:13 11:24 22:14 25:12
28:8 31:4
**baseline** [2] 89:3,6
**bases** [2] 27:5 28:11
**basic** [1] 55:8
**basically** [6] 8:15 27:14 48:16 104:
8 106:20
**basis** [1] 59:17
**become** [1] 85:2
**becomes** [2] 57:19 78:4
**begin** [1] 93:18
**beginning** [2] 74:25 87:15
**behalf** [8] 1:19,22 2:4,7,10 3:8 58:
17 105:10
**belabor** [1] 45:22
**believe** [8] 8:18 12:2,8 23:10 24:4
26:8 28:17 88:10
**believed** [2] 19:13 52:12
**below** [2] 8:11 65:1
**besides** [2] 16:17,19
**best** [3] 49:12 89:3 92:16
**between** [6] 4:9 21:25 30:2 95:11
96:3 98:18
**beyond** [4] 8:23 15:5 106:13,17
**Bibles** [1] 93:4
**binary** [2] 74:11 78:24
**bind** [5] 12:3 23:4 25:4 36:20 66:
24
**binding** [7] 5:18 6:10,11 29:18 30:
3 34:17,20
**binds** [1] 24:20
**biological** [3] 40:16 63:16 75:1
**bird's-eye** [1] 102:13
**bit** [6] 11:22 17:19 46:24 51:22 55:
20 106:16
**block** [1] 35:1
**blood** [3] 51:5 52:23 89:20
**blood-stained** [1] 51:14
**body** [5] 40:7 89:19 91:9,19,20
**bolster** [1] 33:25
**both** [4] 26:25 37:25 38:14 40:12
**bottom** [1] 102:13
**bound** [5] 9:14,15,22 68:16 70:22
**Brackeen** [2] 75:15,22
**brand-new** [1] 106:6

**break** [1] 39:23
**brief** [3] 23:21 60:7 106:1
**briefed** [1] 27:17
**briefing** [4] 26:25 74:17 105:24
106:11
**briefly** [2] 36:25 105:12
**bring** [3] 13:13 18:8 22:20
**bringing** [2] 18:4,11
**broad** [1] 99:20
**broader** [1] 16:21
**broadly** [1] 100:2
**brothers** [1] 40:12
**brought** [2] 5:15 27:15
**Brownsville** [2] 35:14,15
**bunch** [1] 78:11
**bundle** [1] 23:7
**buried** [1] 19:17

## C

**calculus** [1] 88:24
**called** [1] 62:16
**came** [8] 1:13 14:19 39:7 54:24 96:
24 97:4,8 105:20
**care** [1] 98:13
**careful** [2] 66:14 89:19
**cares** [2] 79:24 81:14
**Case** [49] 3:4,5 15:21 7:14,18 8:6
9:1 10:5 14:20 26:22 28:6 30:22
31:19 33:16 35:8 37:4 39:23 47:
18,22 50:2 55:3 59:13 62:4 68:1
69:10 70:2 72:15,16 75:25 76:18
78:23 79:14 81:10,21,22 83:8,15
84:15 89:15,25 92:8,17 96:17 100:
3,10 104:21 106:22 107:3,4
**cases** [1] 90:6
**category** [2] 28:24 92:18
**caused** [1] 104:14
**CCA** [22] 4:15 5:1,11,15,17,20,21 6:
1,15 13:11 15:2,23 18:1 21:1 32:8,
9 33:1 40:15 51:11 60:13 85:18
93:24
**CCA's** [1] 93:5
**center** [1] 31:9
**cert** [1] 94:4
**certain** [4] 3:13,13,23 31:7
**certainly** [3] 11:17 44:25 64:13
**cetera** [2] 57:1,1
**chain** [2] 61:15 98:6
**chain-of-custody** [1] 99:13
**challenge** [9] 3:12 62:6 64:8 80:
18,25 86:14,17 100:17 102:18
**challenged** [5] 62:23 71:20 86:2
92:1 100:15
**challenges** [1] 62:8
**challenging** [10] 62:21 63:8,10 69:
9 70:3 83:14 86:4 92:6 98:23 100:
13
**chance** [2] 65:16 95:1
**change** [5] 28:16 30:1 88:7,23 90:
1
**changed** [4] 39:13,14 105:13,18
**changes** [1] 39:8
**chap** [2] 22:17 91:17
**Chapter** [63] 3:14,24 4:9,16 6:9 12:

19 13:7,13,20,21 14:1,10 15:5,10,
24 16:12 17:2 22:15 25:25 27:12,
13 28:24 29:10 31:4,6,7,8,15,21,
25 32:8 34:10,24 35:11 38:11 39:
2,8,9,11 42:13 43:23,24 45:1 46:3
47:17 59:21 66:17,18 68:16 69:20
71:16 72:1 76:21 78:10 80:15 82:
16 83:17 91:9 93:5,17 99:16,22
103:2
**CHIEF** [22] 3:3,9 17:9 29:15 30:7,
19 31:11 34:7 39:20 45:19 48:3
53:5 55:12 58:13,18 93:13 94:22
97:18 100:20 102:9 105:6 107:1
**choice** [1] 87:17
**choices** [1] 92:7
**choose** [1] 9:18
**chooses** [2] 32:18 49:4
**chose** [1] 8:22 41:14
**Circuit** [15] 5:16 6:4 8:14,21 12:15
14:19 27:4 28:17 62:13 86:5 101:
3 105:23 106:11,13,20
**circumstance** [3] 75:8 77:1 86:20
**circumstances** [2] 63:25 99:21
**cited** [6] 16:23 23:13,15,16,21,25
**cites** [2] 24:14 92:20
**citing** [1] 95:22
**claim** [12] 9:10,11 15:18 17:18
18:11,15,21 41:1,2 43:12 53:23,
25 55:18 58:4 61:21 63:23 74:22
76:13 90:9,12 91:13 99:20 100:2
103:14 104:8
**claimed** [1] 56:3
**claiming** [1] 104:15
**claims** [2] 65:13,15
**clarification** [1] 96:18
**clarify** [2] 44:2 53:9 70:6
**clear** [5] 5:18 34:9 45:25 63:13 69:
13 72:18 91:18 93:16 102:12 104:
11,21 105:16
**clearly** [2] 66:18 98:12
**client** [4] 14:11,23 37:11,21
**client's** [3] 35:16 41:1,2
**Code** [1] 41:9
**coerced** [1] 88:11
**COLE** [101] 1:21 2:6 58:15,16,18
60:24 62:3,19 64:2 65:8 66:4,9 67:
10,20,23 68:9,22 69:1,8,19,24 70:
17,24 71:13,18,22 72:3,14,17,20,
24 73:1 74:8,13,16 75:12 76:15
77:4,18,23,25 78:6,15,22 79:1,5
80:4,9 81:1,19 82:3,12,24 83:9,13,
25 85:6,16,25 86:11 87:2,8,11 88:
1,13,17,25 89:12,16 90:4,18 91:23
92:19 93:8,19 94:3,8,12 96:16 97:6,
21 97:2,10,16,22 98:11,20 99:25
100:11 101:4,8,14,24 102:4,20
103:6,8,17 104:4,19 105:2
**collapsing** [2] 79:7 90:22
**colleagues** [1] 96:14
**combine** [1] 32:24
**come** [5] 44:9 49:25 58:3 81:13 96:
24,25 106:7
**comes** [2] 76:9,9
**coming** [2] 78:8,11

**comment** [1] 81:23
**committing** [1] 19:14
**common** [1] 78:9
**compel** [2] 30:14 59:17
**compelled** [1] 83:18
**complaining** [4] 47:3 80:13 88:10
91:3
**complaint** [30] 10:24 16:19 60:6
62:23 63:4,22 64:3,5,16 65:3,11,
20 66:17 68:13,18 74:23 79:10 80:
9,11,15 82:1 90:15 91:8 92:17,21
93:1 98:24 99:8 105:17 106:11
**complaints** [1] 91:14
**completed** [1] 105:24
**completely** [6] 7:17 31:19,23 32:2
48:24 57:6
**complicated** [1] 104:10
**complied** [1] 32:7
**comply** [4] 49:23 71:6 81:12 82:21
**component** [5] 33:15 38:10 42:19
66:16 75:14
**components** [2] 43:19,21
**concede** [1] 102:24
**conceive** [1] 73:14
**concept** [3] 56:23 73:6 75:5
**conception** [2] 55:21 56:4
**concern** [2] 56:11 79:9
**concerned** [3] 55:20 96:12 97:7
**concerns** [1] 76:19
**concluded** [1] 71:7
**conclusions** [1] 69:5
**concrete** [1] 79:6
**conduct** [5] 75:2 81:4 103:10,18,
21
**conference** [1] 36:3
**confession** [4] 89:2 97:1,2,4
**conflict** [1] 4:9
**confused** [1] 57:20
**conjunctive** [1] 100:7
**connected** [1] 81:8
**consider** [7] 5:12 16:11,21 22:16
24:25 25:18 68:21
**consideration** [1] 74:19
**considered** [4] 4:15 17:23 32:10
**considering** [2] 15:3 20:13
**considers** [1] 67:11
**consistently** [1] 60:8
**Constitution** [1] 81:2
**constitutional** [23] 4:17,20 6:8,12
13:3,8,9,12 20:7,10 22:2 25:23 27:
12 29:2 32:12,15 36:18 42:24 43:
1,7,12 47:11 74:21
**constitutionally** [3] 21:22 31:14
32:16
**construct** [1] 11:23
**construction** [1] 93:5
**construe** [1] 100:2
**construed** [2] 43:13 100:4
**contained** [1] 3:13
**context** [8] 11:16 20:11,12 53:25
56:15 69:19 76:21 82:25
**continue** [1] 42:3
**continued** [1] 61:2
**contrary** [1] 60:12

**contravene** [1] 45:3
**convict** [3] 67:14 93:20 94:13
**convicting** [3] 70:18 84:21 93:22
**conviction** [2] 80:19 85:4
**conviction-versus-sentence** [1] 93:9
**convincing** [1] 44:22
**core** [1] 27:7
**correct** [38] 8:2,3,14 9:3 11:1,2 13: 5 30:8 37:3,9 40:8,13,14 41:14 42: 10 43:2,8,9,18 44:11,12,17,23 45: 12 48:1,10,11 51:2,9 52:20,21 53: 18,19,20 70:23 72:14 95:3 101:23
**correctly** [1] 23:11
**couldn't** [5] 11:21 21:1 25:3 29:3 30:21
**counsel** [13] 19:24 21:13 39:7 46: 24 48:13 58:14 65:21 73:2 84:3 93:3,14 105:7 107:2
**count** [1] 78:21
**counterproductive** [1] 85:2
**country** [1] 88:17
**couple** [7] 61:6 85:6,16 91:25 96: 15,18 100:23
**course** [11] 12:10 62:5 70:1,17,19, 24 72:8,17,23 82:12 91:13
**COURT** [136] 1:1,14 3:10,11,20 4:2, 18,25 6:17,21,23 7:3,15 8:11,23 9: 20,21 10:18 12:6,9,11,14,16,18 13: 6,8,10 14:18 15:4,9,19 17:14,17, 23 24:20 25:24 26:9,24 27:15,16, 24 29:21 30:4 32:6,13,25 34:11, 22,23,24 36:8,11,19,21 41:10,12 42:6 45:6,9,10 46:17 47:15 49:23 54:10,25 55:25 56:1 57:1 58:19 59:17,22 60:7,15 61:12,24 62:1, 18 64:4,7 65:4 66:9,20 67:11 68:8 69:2,14,23 70:15,18,24 71:5,6,9, 10 72:9,21 75:5,9,18,24 76:8 81: 82:14,15,16,19,21 83:4,5,6,7 85: 21 86:8,21 87:16 88:3,13,17,19 89:21 90:22,24 92:13 93:21,22 95: 17,18 96:9 98:7,12 99:1,10 100: 25 101:12 106:10,18,25
**court's** [10] 5:6 56:6 58:20 59:11 60:4,11,17 82:18 101:1,5
**courts** [5] 20:12 23:19 39:5 95:23 100:3
**covered** [1] 40:17
**create** [1] 8:20
**created** [1] 28:19
**crime** [14] 13:15,24 19:4,15,15,16, 20 20:23 21:6 22:6 33:8 42:8 52: 20 80:19
**Criminal** [8] 36:8 59:22 65:4 69:2 87:17 88:3 89:22 95:18
**critical** [3] 17:25 20:25 61:11
**Cuellar** [10] 19:12 40:11 51:1,6 52: 7,14,19,24 84:13 88:23
**Cuellar's** [4] 19:11 37:16 52:6 89: 8
**culpability** [1] 84:13
**cure** [2] 4:16 41:18
**cures** [1] 32:11

**current** [4] 13:20,21 15:6 39:7
**currently** [2] 62:12 86:4
**custody** [2] 61:15 98:6
**cut** [1] 16:3

# D

**D.C** [1] 1:10
**DA** [31] 22:21,23,25 23:2,16,19 24: 13,22,25 25:2,8,17,18 26:6,12,13, 19 27:5 29:9 31:24 41:13 44:15, 19 53:14 66:2 68:6 71:7 94:14,14, 18,18
**DA's** [4] 23:8 24:24 66:1 71:6
**dancing** [1] 45:23
**day** [1] 92:13
**dealing** [1] 94:1
**death** [30] 4:7,10 13:16,20 14:11, 22,23 15:6 16:17 20:6 22:2,12,14 36:9 42:5,9 43:15,17 44:7 46:3 52: 2 71:21 72:10 80:20 86:17,19 90: 2 93:7 95:13 96:3
**death-eligible** [1] 44:11
**death-ineligible** [10] 18:16,22 22: 8 33:3,6 37:11,12,23 42:17 48:16
**decedent** [3] 19:1 21:3,8
**decide** [2] 14:3 76:10
**decided** [5] 5:21 6:23 13:2 26:2 84:8
**decision** [4] 22:23 23:3,8 34:10 36:6,9 54:18 59:23 72:8 95:1 96:2, 5 101:1,5
**decisions** [2] 5:1 17:25
**declaration** [3] 36:15 82:10 83:1
**declaratory** [58] 3:15,23 4:5 5:5,6, 12,17,19,22,25 6:5,12 7:13 9:8,15, 16,20 10:1,6,7 11:25 12:3 23:1 27: 18 29:17,23,24 30:3,15 34:21 35: 5,18 36:4,5 42:20 58:20,25 59:12, 24 60:4,11,20 65:17 73:9,16,21,24 75:14,16,20 77:20 82:13 83:20 95: 15 96:8 98:25 100:24 101:2
**declare** [1] 31:6
**declared** [2] 8:1 36:19
**declaring** [1] 92:22
**decoupled** [1] 90:22
**deeper** [1] 63:10
**defeat** [11] 6:25 26:16 29:13,16 30: 18 50:5 51:7,20 58:3 61:23 82:10
**defeats** [1] 82:22
**defendant** [22] 9:1 10:15 35:7 49: 9 50:4 53:15,18,23 56:15,20 75:2 77:1 82:10 83:24 93:19 95:7 103: 10,18,19,24 104:1,14
**defendant's** [2] 81:4 103:21
**defendants'** [1] 92:22
**Defender** [1] 1:18
**defenses** [1] 56:14
**defined** [1] 60:8
**degree** [1] 63:22
**delay** [10] 36:12 46:12,21 47:6,17 56:25 57:10,13,17 69:3
**deliberations** [1] 69:25
**demonstrate** [2] 61:16 98:8
**denial** [14] 35:17 58:22 60:9 61:2,8

**74**:10 78:23 79:11 80:13 93:12 94: 2 102:17,21 105:15
**denied** [5] 39:15 47:2 68:7 69:18 73:12
**deny** [11] 3:19 5:8 25:18 26:6 27:5, 14 46:2 55:18 59:10 72:13 103:25
**denying** [4] 4:23 29:1 35:24 59:2 61:13 67:18 68:21 74:1
**dependent** [1] 52:15
**depends** [1] 46:6
**deprive** [2] 63:24 64:20
**deprived** [1] 63:16
**depth** [1] 96:15
**Deputy** [1] 1:21
**designed** [6] 8:20 13:22 14:3 17:2 20:20 22:13
**detector** [1] 19:23
**determinant** [1] 67:13
**determination** [14] 7:11 8:19 9:22 13:9 15:22 16:1,5,11 24:25 28:8 29:19 34:23 36:21 47:9
**determine** [4] 13:23 45:6 57:23 76:13
**determined** [1] 4:18
**develop** [2] 25:15 35:1
**developed** [5] 4:14 19:7 22:14 32: 25 85:23
**difference** [4] 62:19 96:4 99:4 100:16
**different** [9] 9:25 18:23 32:6 35: 12 55:4,21 65:7 73:6 79:23 89:15 90:8 92:15
**differentiation** [1] 21:25
**direct** [6] 74:22 87:21 93:23 94:1 101:20,24
**directed** [1] 10:14
**directly** [1] 93:24
**disagreement** [1] 100:1
**discovered** [3] 19:23 21:17,20
**discretion** [20] 30:10,11 54:23 66: 12,25 68:3,15 70:3,9 75:6,13 76: 17 83:3,14,16,22 85:13,15 94:17, 20
**discretionary** [17] 6:20,22 11:24 22:24 23:8 24:18,24 31:19,24 32: 2 48:24 54:18 66:16 68:4,10 75:5 94:7
**discussions** [1] 56:13
**dismiss** [2] 8:14 56:16
**dismissing** [2] 8:7,11
**disrespect** [1] 58:9
**dissent** [1] 66:6
**dissenters** [1] 11:18
**distinction** [9] 64:11 83:9,13 93:9 95:11 96:2 97:22 98:22,23
**district** [16] 4:25 5:6 6:18,23 7: 2,21 9:2,9,12,14,18 10:18,25 11: 23 12:4,8 13:10 14:18 15:4,9 24:4 26:2,24 27:11,16,20 35:7 36:2, 15 42:6 45:25 47:14 48:17 54:24 58:20 59:11,18 60:4,11 64:4,6 76: 18,19 83:15 86:7,21 95:2,7,8,10, 19,20,21 96:4 106:10

**DNA** [73] 4:7,11,20 6:7,25 9:7,19 13:22 14:3 17:4,5,7 18:13,24 19:6 21:10 22:3,24 23:25 24:9 25:11 26:7,9 30:23 31:17 32:1,22,24,24 33:13,14,22 35:17 36:7 37:1,3,6,8, 16 38:1,4 40:10,15 41:13 42:14, 24 48:9,15 50:20,22,24 53:2 58: 22 60:9,20 61:17 63:12,25 64:21 66:2 67:14 76:2 82:9 85:9 89:8,12, 24 95:2 96:14 98:9 101:10,23 105: 15
**doing** [5] 14:2 84:9 86:22,23 106: 15
**dollars** [2] 19:17,19
**done** [12] 24:36:11 39:3 65:5 92: 4 94:4 98:14 99:5
**down** [6] 17:21 39:23 44:1 50:15, 16 83:5
**down-the-road** [1] 80:24
**drunk** [2] 52:15 89:18
**due** [40] 4:24 7:16 12:15 13:17 15: 3,8,18 16:18 17:18 18:22 26:1 32: 18 35:16 42:20 43:20,21,22 46:7 47:25 49:6 50:17,18 53:17,22,25 63:19 64:1,21 68:14 80:17,22 85: 21,24 86:9,25 90:5,9 91:22 99:24 104:3
**during** [1] 52:20

# E

**each** [1] 88:15
**earlier** [4] 53:8 84:15 85:12 92:21
**easily** [1] 17:6
**eat** [1] 40:23
**effect** [15] 5:19 6:11,16 9:16 29:18 30:3,24,25 34:12,17,21,23 35:6 36:6,20 55:6 75:18 82:15 83:19
**effected** [1] 95:14
**effectively** [2] 14:12 15:16
**Either** [1] 74:14
**elect** [1] 43:6
**elects** [1] 43:1
**eligibility** [10] 13:20 14:11 36:10 42:5 43:15,17 44:7 46:4 95:13 96: 3
**eligible** [4] 14:24 42:9 45:7 90:2
**eliminate** [13] 5:7 29:4 59:1 61:6 73:10,16 77:20 99:2 100:5 102:16, 22 104:22 105:1
**eliminated** [2] 62:11 98:25
**eliminates** [2] 3:25 60:21
**eliminating** [1] 3:17
**encompasses** [1] 43:23
**end** [3] 47:18 81:9 104:5
**enjoining** [1] 24:13
**Enmund/Tison** [2] 19:4 90:3
**enough** [5] 20:25 21:5,9 31:1 73:8
**entered** [2] 41:3 97:3
**entirely** [3] 25:19 26:7 45:25
**entirety** [1] 25:14
**entitled** [7] 12:21,22 47:18 48:13 67:14 92:12,14
**entwined** [1] 40:6
**environmental** [1] 81:10

**equivalent** [1] 24:7
**error** [4] 12:22 14:13 15:16,20
**ESQ** [3] 2:3,6,9
**essence** [1] 12:22
**essentially** [5] 61:19 66:11 76:10
91:12 94:17
**establish** [3] 60:5 103:4 104:24
**establishes** [1] 104:21
**establishing** [3] 93:6 97:11 103:3
**ET** [3] 1:6 56:25 57:1
**evaluated** [1] 28:8
**Evans** [1] 8:18
**even** [20] 4:2 12:22 14:9 16:4,22
22:23 23:4 25:3 35:5 44:6,21 46:2
47:16 51:11 61:21 88:5 89:23,25
97:24 98:9
**everyone** [1] 19:12
**everything** [1] 71:8
**evidence** [142] 4:14,20,23 6:25 9:7
10:19 12:5 15:14 16:2,21,24,25
17:6,12,14,19,22,23,24 18:23 19:2,
5,6,7 20:5,13,21 21:2,5,9,11,16,18,
19,21,25 22:1,4,4,9,15,16,17,24
23:22 24:9 25:18 26:7,9 27:6,13
29:2 30:10,23,23 32:1,25 35:24
36:7 37:1,3,7,8 38:11,12,14 40:24
43:16 44:8,10,19,21 45:7,14 52:8
54:16,19 58:23 59:6,10,19 61:1,3,
23 63:16,25 65:18 66:3,13 67:5
68:7,9,21 69:16,18,19 70:1,16,19,
20 71:11,12 73:12 74:2,11,19 75:
1 78:24 79:1 80:14 82:9 83:18 84:
12,17 85:18,22 86:15,24 87:1,18
88:6 89:23 90:14 92:14,16,23,24
93:12 94:15 95:3,9,12,13,21,23
96:14 97:7,25 100:18 102:21 104:
7 105:15
**evident** [2] 68:18 71:10
**evidentiary** [1] 88:20
**eviscerates** [1] 49:14
**exact** [1] 61:20
**exactly** [12] 18:14 22:22 26:20 28:
23 36:22 38:10 43:3,9 45:8,15 58:
7 65:3
**example** [5] 46:13 47:7,8 81:10 90:
16
**exclusion** [1] 78:18
**exculpatory** [5] 61:18 88:6 90:1
97:25 98:10
**excuse** [1] 21:3
**executive** [1] 30:2
**exercise** [5] 30:10 66:24 68:15 83:
3 85:15
**exercises** [1] 83:16
**exhaustive** [1] 19:9
**exist** [2] 31:22 49:4
**exonerate** [1] 21:11
**explain** [3] 18:18 20:19 66:1
**explaining** [1] 62:2
**extent** [8] 21:21 27:4 57:7 58:9 80:
18 103:22,23 104:14
**eye** [1] 67:1

**F**

**face** [2] 94:24 105:3
**fact** [7] 51:10 60:2 62:9,11 65:16,
17 88:18
**factor** [4] 23:5 69:2,4 101:5
**factors** [1] 23:7
**facts** [5] 37:4 39:13 47:23 78:7 86:
2
**factual** [1] 39:8
**fail** [1] 35:25
**failed** [1] 84:4
**fair** [9] 49:1 53:13 79:11,15 80:2
83:21,22 91:8 92:13
**faithful** [1] 104:20
**familiar** [1] 14:9
**far** [1] 97:6
**favorable** [1] 7:13
**February** [1] 1:11
**Federal** [12] 1:18 12:6 13:10 17:17
25:24 34:24 36:19 39:2 46:17 72:
21 77:4 83:7
**feel** [2] 38:25 70:22
**few** [1] 48:5
**Fifth** [15] 5:16 6:4 8:14,21 12:14
14:18 27:3 28:17 62:13 86:4 101:
3 105:23 106:11,13,20
**fight** [1] 57:14 104:12,13
**fighting** [5] 46:23 58:8 84:9,11,19
**figure** [1] 12:20 13:22 17:3,6,15 25:
7 50:15
**figuring** [1] 17:11
**file** [6] 9:13 6:8 18:15 20:18 22:17
39:9 44:25 55:16,16 93:20,20
**filed** [5] 39:1,6 42:14 48:12 94:4
**filing** [1] 47:10
**final** [2] 65:12 86:13
**find** [3] 33:1,1 63:14
**finding** [1] 89:1
**finds** [1] 3:23
**Fine** [1] 73:22
**finger** [2] 40:6 51:14
**fingernail** [2] 51:13 52:23
**fingernails** [3] 40:2 53:2 89:14
**finish** [1] 68:3
**finite** [1] 78:6
**first** [16] 6:6 39:2 43:5 48:6 49:10
60:1 62:5 65:10 85:8,17 98:5 105:
22 106:1
**FISHER** [138] 1:18 2:3,9 3:6,7,9 5:
14 6:2,4,21 7:7,17 8:3,9,13 9:3,10,
13 10:3,11,16 11:2,6,8,21 12:25
13:5,18 14:5 15:1,21 16:7,10,20
17:16 18:14,20 19:22 20:12 21:3,
19 23:10,17,20 24:10,16 25:9,14,
20 26:12,20 27:9,23 28:14 29:14,
16 30:13 31:3,16,21,25 32:9,17,23
33:7,14,22 34:15,20 35:9,21 36:
14 37:8,13,22 38:6,9,25 39:19,25
40:4,8,14,21 41:4,11,16,18,23 42:
1,11 43:3,9,19 44:12,16,24 45:5,
12,15,18,21 46:6,11,16,20 47:5,9,
13,15,17,25 50:6,9,21 51:3,
10,15,17,25 52:7,12,21 53:1,20 54:
2,22 55:9 57:5,15,18,21,24 58:7
63:5 105:8,9,11

**fit** [1] 28:23
**focus** [3] 4:6 58:2 90:24
**focuses** [1] 99:19
**focusing** [1] 104:16
**follow** [4] 14:6 53:9 70:22 106:19
**following** [1] 7:13
**follows** [1] 72:21
**footnote** [3] 8:22 81:6 106:14
**forbid** [1] 4:1
**force** [4] 12:4 30:14 66:10 106:20
**forensic** [1] 41:10
**forget** [1] 98:18
**form** [1] 19:6
**formal** [1] 70:10
**forward** [4] 26:18 73:11 74:1 81:
14
**fought** [1] 52:16
**found** [20] 4:17,25 5:3 15:4,8 19:8
24:1,3 25:24 32:12 34:11 36:16
37:16,17,18 40:15 51:19 52:17 89:
17,18
**friend** [1] 89:4
**functioned** [1] 61:19
**further** [1] 93:15
**future** [2] 82:21 87:3

**G**

**Garcia** [2] 40:12 51:1
**gather** [2] 18:12 37:6
**General** [3] 1:21 10:15 64:17
**generosity** [1] 63:23
**getting** [10] 11:5 28:12 56:9 63:11
71:25 78:4 91:10,21 99:23 104:6
**Ginsburg's** [1] 90:23
**gist** [1] 15:17
**give** [14] 9:19 22:24 32:18 34:23
35:19 40:25 43:1 49:5 53:21 66:
12 70:15 71:10 75:11 87:4
**given** [5] 4:13,22 15:14 41:20 95:
23
**gives** [2] 106:15,17
**giving** [1] 26:9
**goal** [1] 80:14
**GORSUCH** [33] 14:5 15:12 16:6,8,
15 44:4 45:20,21 46:9,12,19,22
47:8,13 48:2 55:16 56:18 58:10
62:15 71:15,19,23,24 72:4,16,19,
23,25 88:4 90:4,19 92:9 100:21
**Gorsuch's** [1] 45:20
**Got** [6] 53:3 84:21 89:3,20 92:13
96:9 100:8 102:5
**government** [1] 30:9
**Gracia** [1] 51:2
**grant** [3] 7:21 30:11 54:15
**granted** [1] 11:9
**granular** [1] 102:25
**ground** [6] 64:8,10 78:1,3,18,20
**grounded** [1] 59:21
**grounds** [22] 46:2,7,15 47:1 50:12,
13 55:17 59:9,10,21 61:4 62:8,10,
24 67:1 67:13 72:1,12 77:16 95:8,
16 106:1
**guess** [11] 12:24 16:15 30:19 50:1
55:14,19 66:21 75:9,24 82:24 99:

25
**guilt** [3] 22:1 95:12 96:3
**guilty** [1] 42:9
**GUTIERREZ** [31] 1:3 3:4,21 4:3,
19 5:15 13:2 18:21 20:1,25 33:3,
16,20 37:23 39:1 42:13 48:12 51:
9,19 59:15 60:1,8 62:22 63:17 87:
14 88:20 93:6 97:9 99:4,15 100:
14 105:13 106:5
**Gutierrez's** [5] 5:9 40:20 58:21 97:
1,14
**guy** [1] 76:1

**H**

**habeas** [18] 4:10,13 6:14 11:17 18:
2 20:18 22:12,18 25:16 35:1 37:
24 38:18 39:3 52:3 85:19 90:20
91:1,4
**hair** [5] 40:5 51:13 52:24 89:14,16
**hand** [5] 5:22 9:21 26:11 54:19 59:
5,18 83:18
**happened** [3] 19:13 101:3,11,16
**happens** [1] 70:10
**happy** [1] 90:18
**hard** [2] 86:11 96:1
**harmless** [4] 12:22 14:13 15:16,
19
**harmlessness** [1] 62:16
**Harrison** [1] 89:5
**he'll** [1] 78:12
**head** [2] 39:23 106:23
**hear** [2] 3:3 50:2
**heard** [4] 64:24 90:14
**hearing** [2] 88:19,20
**heart** [1] 5:4
**Heck** [1] 91:1
**held** [3] 3:11 36:3 89:23
**help** [2] 37:20 38:1
**helpful** [1] 96:16
**Higginson** [1] 65:1
**Higginson's** [1] 64:25
**high** [1] 64:10
**higher** [1] 28:19
**highly** [1] 40:16
**himself** [1] 97:9
**historically** [1] 55:22
**history** [1] 48:7
**hold** [2] 3:20 72:9
**holding** [3] 16:22 65:5 105:21
**home** [4] 18:25 19:18 21:9 37:7
**Honor** [36] 5:14 6:22 7:7 8:4,13 9:
4,13 11:3,6,22 13:1 15:1,21 16:23
20:15 23:11 24:17 25:21 28:15 29:
14 31:16 35:23 38:15 39:1,25 41:
4 42:11 43:10 44:12,17 48:1,12
54:23 55:9 91:18 105:11
**Honor's** [2] 36:1 47:6
**hope** [1] 32:23
**house** [4] 21:4 33:17,21 38:1
**However** [1] 9:14
**hundreds** [2] 19:16,18
**hurdle** [2] 71:25 76:8
**hurt** [2] 33:18 44:1
**hypothesize** [4] 46:14,25 47:16,

20
**hypothetical** [8] 36:1 45:22 46:23
47:6 56:18 57:10 76:24 78:14

**I**

**idea** [2] 12:2 97:7
**ideas** [1] 76:19
**identical** [1] 98:5
**identified** [1] 91:25
**identify** [2] 91:24 103:10
**identity** [1] 69:2
**idiosyncratic** [1] 92:7
**III** [3] 7:9 30:18 106:23
**illusory** [3] 16:13 20:18 22:18
**imagine** [2] 24:11 47:5
**immediacy** [1] 79:21
**imminent** [1] 75:18
**impact** [1] 26:22
**implicate** [1] 31:5
**implications** [1] 76:4
**imply** [2] 57:8,25
**important** [3] 4:4 48:19 86:1
**imported** [1] 77:16
**imports** [1] 56:12
**imposed** [1] 106:20
**improper** [2] 101:18,22
**inadequate** [2] 5:3 15:24
**include** [3] 19:8,10 73:19
**includes** [3] 42:21,22 77:10
**including** [3] 39:10 84:13 92:5
**inconsistent** [2] 51:21,22
**increase** [3] 54:14 59:3,4
**independent** [15] 4:24 46:15 47:1,
3,20,24 55:17 59:8,20 62:24 72:1,
7,11 100:6 105:25
**ineligibility** [4] 9:8,10 15:7 20:6
22:2,12,14 52:2 80:20
**ineligible** [2] 13:15 93:7
**infirm** [1] 103:2
**infirmity** [4] 4:17 32:12,15
**influence** [4] 23:2,8,12 36:9
**influenced** [1] 54:20
**informal** [1] 94:16
**inherent** [1] 4:8
**initial** [3] 28:1 52:8 57:6
**initially** [2] 24:8 33:17
**injunction** [12] 10:2,4,5,10,17,25
24:7,12,12 41:15,21 45:10
**injuries** [1] 92:15
**injury** [39] 3:17,22 5:9 7:12 46:16
55:25 56:2,7 58:21 59:25 60:2,9
61:1,8 65:18 74:9,10,18,22 75:6
78:22 80:6 81:3,20,21 86:12 92:3
93:11 100:8 102:20,25 103:1,1,5,
9,12,16 104:13 105:14
**innocence** [1] 20:6
**innocent** [11] 13:14,14,23 14:4 17:
4,8 20:22 42:7,15 43:17 86:19
**inquiry** [1] 4:3
**inside** [2] 33:17 37:5
**instance** [1] 71:11
**instead** [1] 7:21
**intend** [4] 32:21 33:17 57:9 58:11
**interest** [2] 49:6 81:9

**interested** [2] 18:18 38:23
**interests** [2] 63:17 79:19
**internal** [1] 69:25
**interpretation** [1] 76:2
**interpreted** [1] 80:16
**interrupt** [1] 15:13
**involved** [4] 35:23 96:20 97:12,15
**irrelevant** [1] 61:25
**isn't** [11] 6:19,19,25 9:14 16:13 20:
8 38:12 57:12 73:8 75:12 90:8
**issue** [16] 4:5 13:17 14:17 44:14,
14 46:8 50:19 66:17,18 68:11,12
71:14 78:5 84:19 91:5 94:18
**issue's** [1] 14:20
**issues** [7] 21:17 26:3 48:19 57:1
76:11 91:1 105:20
**iteration** [1] 15:6
**itself** [3] 11:15 85:22 106:13

**J**

**J.A** [1] 60:13 68:19 80:6,7,7,7 87:
22 92:24,24,25 101:25
**JACKSON** [48] 18:5 26:15 27:2,21,
24 55:13,14 57:5,14 58:22 58:5,
12 62:25 65:23 67:17,21 68:1,6
69:11 70:4 73:1,3 74:9,12,16 75:4,
22 76:16,23 77:7,22,24 78:2,13,16,
25 93:2 102:11,12,23 103:7,12,22
104:9,23 105:5
**jail** [1] 84:23
**joined** [1] 54:9
**Joint** [2] 14:8 74:24
**Judge** [2] 64:25 65:1
**judgment** [62] 3:15,23 4:5 5:5,7,
13,17,19,22,25 6:5,13 7:13 9:8,15,
17,21 10:1,6,7 11:25 12:3 23:1,2
27:18 29:17,23,24 30:3,16 34:21
35:5,18 36:4,5 42:21 55:6 58:21
59:1,12,16,24 60:4,11,12,20 65:12,
17 71:9 73:9,16,21,24 75:21 77:
20 82:14 86:13 95:15 96:8 98:25
100:25 101:2
**judgments** [3] 67:4 75:15,16
**judicata** [5] 6:11,15 9:16 29:18 36:
20
**jump** [1] 61:5
**June** [1] 14:7
**jurisdiction** [3] 57:2 60:5,15
**jurisdictional** [3] 24:20 56:13 106:
4
**JUSTICE** [338] 3:3,9 5:11,23 6:3,
17 7:5,8,23 8:5,10,25 9:5,11,23
10:9,12,21,22 11:4,7,13 12:13 13:
4,11 14:5,15 15:12 16:6,8,15 17:9
18:3,5,6,7,9,10,17 19:21 20:3 21:
12,13,14 22:3,9,19 23:15,18 24:6,
8,11,19 25:13,17 26:4,14,15 27:2,
21,24 29:6,8,15 30:7,11,12,12,13
13,18,23 32:5,14,20 33:5,12,20 34:
2,7,7,8,18 35:3,13 36:2,24,25 37:
10,14 38:4,7,19 39:17,20,20,22 40:
1,5,9,19,22 41:5,7,8,12,17,19,24
42:2,18,23 43:4,5,11,25 44:4,4,13,
18 45:2,8,13,16,19,20,21 46:9,

12,19,22 47:8,13 48:2,3,3,5,21,22,
23 49:7,8,17 50:7,7,10,11,23,24 51:
4,12,16,18 52:4,10,18,22 53:3,5,5,
7,9,21 54:3,11 55:1,10,12,12,14,
15 56:18 57:5,8,12,16,19,22 58:5,
10,12,13,19 60:18,24 61:9 62:4,14,
15,20,25 63:2 64:2,13 65:9,21,23,
25 69:6,11,12,22 70:4,5,7,8,17,21
71:1,2,3,15,19,22,24 72:4,16,19,
23,25 73:1,2,3 74:8,12,16 75:4,22
76:15,23 77:7,22,24 78:2,13,16,25
79:3,6,13,15 80:5,8,10 81:5,7,18
82:2,4,19 83:2,11,21 84:1,3 85:7,
7,11,20 86:6,16 87:5,10,12 88:3,9,
14,22 89:9,11,13 90:4,6,19,23 91:
6 92:9 93:2,13,15,16,25 94:6,10,
21,22,22,23 95:5,5,6 96:6,12,23
97:6,11,17,18,18,20,21,23 98:12,
21 99:6 100:9,19,20,20,22,23 101:
6,9,21 102:3,7,9,9,11,12,23 103:7,
12,22 104:9,23 105:5,6 107:1
**justifica** [1] 77:8
**justification** [8] 59:2 62:11 74:3
77:6,19,21 78:1 104:22
**justifications** [16] 60:19 62:21 67:
25 68:23 73:10,19,25 98:24 99:3
100:5,6,14,15,17 102:17,22
**justify** [1] 86:21

**K**

**KAGAN** [22] 10:22 11:4,7 24:8 29:
6 45:19 61:9 62:4,14,20 63:2 64:3,
13 65:9 91:6 97:20,21 98:12,21
99:6 100:9,19
**KAVANAUGH** [50] 10:21 11:13 12:
13 13:4,11 14:13 18:3,7,10,17 22:
10 48:4,5,21 49:7,17 50:7,10,11,
23 54:3,12,16,18 52:4,10,18,22 53:
3,9 79:3,6 80:5,8,10 81:5 82:4,19
83:2,11,21 84:1 90:6 100:22,23
101:6,9,21 102:3,7
**Kavanaugh's** [2] 43:5 54:11
**keeps** [1] 106:5
**key** [3] 16:21 29:25 101:7
**kill** [4] 19:1 21:2 33:9,9
**killed** [2] 19:13 21:8
**killing** [1] 41:3
**kind** [24] 4:15 45:23 56:2 62:16 64:
17 82:23
**knocked** [1] 61:22
**knowing** [2] 38:23 67:2
**known** [1] 3:14

**L**

**lack** [6] 8:7,12,15 22:1 77:17 95:12
**lacks** [1] 60:15
**late** [1] 106:8
**later** [3] 62:1 75:18 85:23
**Laughter** [1] 44:3
**law** [20] 20:1,24 21:25 39:13 41:21
59:9,21 61:3 63:20 77:6,8,25 78:3,
9 99:12 103:13,24 104:2,2,17
**law's** [1] 99:13

**lawful** [1] 4:1
**lawsuit** [3] 31:6 34:5 104:5
**lawyers** [1] 94:14
**lays** [1] 74:24
**lead** [2] 91:16 95:1
**leads** [1] 49:18
**least** [4] 55:23 74:17 84:24 93:3
**led** [2] 39:6 67:25
**legal** [6] 12:5 30:2 39:8 84:19,20
85:1
**legislature** [2] 67:12 85:9
**less** [1] 84:20
**letter** [2] 60:12 105:23
**level** [6] 61:3 63:10 95:18
**liability** [1] 19:4
**liable** [1] 44:8
**liberty** [2] 49:5 63:17
**lie** [1] 19:23
**lies** [1] 98:23
**life** [1] 33:10
**light** [1] 30:10
**likelihood** [4] 7:24 54:14 59:4,5
**likely** [4] 27:19 28:8 54:9 60:22
**limit** [2] 16:24 20:20
**limitation** [4] 17:1,1 20:4,20
**limitations** [3] 77:5,9,11
**limiting** [2] 41:5 85:22
**limits** [2] 38:11 43:23
**line** [1] 102:13
**lingering** [1] 14:20
**list** [2] 19:9 77:11
**listen** [1] 26:8
**listing** [1] 18:19
**litigant** [1] 92:8
**litigate** [1] 57:16
**litigated** [1] 72:12
**litigation** [2] 38:21 75:19
**little** [7] 17:19 46:24 51:22 55:19
101:11,15 106:16
**live** [4] 62:7,12 65:15,15
**living** [1] 89:9
**logical** [1] 14:2
**long** [6] 14:20 38:20 48:6 52:11 79:
13
**look** [13] 7:20 8:24 15:24 18:1 30:
22 31:20 52:8 61:10 86:22,25 91:
8 98:7 106:14
**looked** [4] 44:15,20 64:7 99:8
**looking** [7] 14:8 30:9,13 38:12 45:
13 69:7 85:23
**looks** [1] 30:23
**lose** [4] 44:23 46:18 47:12 50:16
**loser** [1] 81:18
**loses** [1] 100:10
**losing** [1] 80:23
**lost** [2] 10:5 11:8
**lot** [4] 40:23 45:23 55:20 71:16
**LUIS** [1] 1:6
**Lujan** [3] 8:17 79:14,16

**M**

**made** [11] 5:1 7:3 13:9 15:2 22:25
26:24 36:15 47:10 66:3 87:16,17
**main** [3] 87:9 89:21 92:1

maintained [1] 33:24
major [6] 19:3 22:5 33:7 38:3 76:3, 7
man [1] 63:24
manage [1] 64:20
maneuvering [1] 85:2
marry [1] 100:7
matching [1] 66:15
materials [1] 40:16
matter [6] 1:13 21:7 49:25 57:2 75:11 84:23
mayor [3] 35:14,14,23
mean [4] 10:23 13:12 17:14 26:16 27:25 29:8 30:21 31:21 38:22 49:17 50:2,14 57:12,13,25 61:10 63:7 64:6,14 65:5 66:25 67:19 71:13 73:13 77:8 79:6,13 81:17 83:22 84:22 89:2 90:11 91:6,13 92:10 93:10 94:9,16 95:19 99:7 101:7 103:18 104:11
meaning [2] 28:10 53:22
meaningful [1] 17:22
means [5] 10:14 53:14 59:24 69:25 86:18
measure [1] 94:19
mechanism [2] 29:24,25
meet [2] 21:19 33:11
meeting [1] 79:20
mentioned [3] 95:17 100:24 106:10
mentions [1] 91:19
merits [3] 23:21 24:14 50:13 56:13 57:13,14 60:7 79:8 106:1
met [2] 70:13,21
might [7] 7:24 23:7 40:10,11 44:22 50:17,20,21 54:19 55:18 56:15 67:14 70:6 71:3 73:15,22 85:25 86:20,20 88:23 94:13,18 96:14 101:21
minor [1] 100:1
Miscellaneous [2] 48:14 101:17
misstatement [1] 84:15
misunderstanding [1] 71:3
mix [1] 17:5
mixing [1] 66:15
Mm-hmm [3] 13:4 78:15 98:11
moment [2] 64:15 91:11
Monday [1] 1:11
money [2] 84:18,18
moot [1] 59:13
morning [1] 3:4
most [5] 37:2 38:7 63:13 68:18 96:9
motion [6] 6:10 13:7 35:11 39:2,6, 10 45:1 47:11 48:12,13,15 56:16 61:13 93:21 101:17,18
Ms [135] 3:6,9 5:14 6:2,4,21 7:7,17 8:3,9,13 9:3,10,13 10:3,11,16 11:2,6,8,21 12:25 13:5,18 14:5 15:1, 21 16:7,10,20 17:16 18:14,20 19:22 20:15 22:3,19 23:10,17,20 24:10,16 25:9,14,20 26:12,20 27:9,23 28:14 29:14,16 30:13 31:3,16,21, 25 32:9,17,23 33:7,14,22 34:15,20

35:9,21 36:14 37:8,13,22 38:6,9, 25 39:19,25 40:4,8,14,21 41:4,11, 16,18,23 42:1,11 43:3,9,19 44:12, 16,24 45:5,12,15,18,21 46:6,11,16, 20 47:5,9,24 48:11 49:3,16 50:6,9, 21 51:3,10,15,21 53:2,7,12,21 53:1,20 54:2,22 55:9 57:5,15,18,21, 24 58:7 63:5 89:4,5 105:8,11
much [7] 17:11,12 31:2 38:22 39:18 79:16 84:6
multiple [5] 46:1,15 47:1 60:19 95:8
murky [1] 101:11
must [2] 49:6 78:23

## N

nail [2] 84:10,12
names [1] 51:2
narrow [4] 59:11 60:4 75:8 76:1
nature [3] 24:18 54:7 72:5
near [1] 19:17
necessary [1] 14:6
necessity [1] 14:1
need [1] 7:20,23 15:24 18:21,23 35:24 52:2 87:7 103:3,9,19
needs [3] 22:7 75:20 92:2
neither [1] 60:5
nephew [3] 19:11 52:14 89:10
never [14] 4:15 5:21 13:1 22:5 32:9 75:6,7 82:9,20,21 83:3,4 102:5 105:13
new [8] 8:16,16,20 17:19 18:11,23 28:3 35:11 43:16 44:10,19,21 45:7,13 47:10 86:20,25 104:25 105:20,25 106:19
newly [6] 4:14 19:7 21:17,20 22:14 32:25
news [1] 36:3
next [2] 67:2 99:11
nicely [1] 74:24
night [1] 73:18
nit-picking [1] 63:3
Nixon [1] 49:24
non-parties [1] 75:23
None [4] 4:22 106:9
nor [1] 4:18
normal [1] 79:20
normally [1] 94:11
noted [1] 62:18
nothing [2] 39:3 58:3
notice [1] 81:23
notwithstanding [1] 29:9
nowhere [2] 51:19 78:8

## O

object [1] 84:8
objective [1] 32:21
obscure [1] 78:11
obstruct [1] 4:12
obtain [1] 63:18
obtained [1] 59:16
obtaining [2] 4:11 9:7
obviously [5] 54:5 61:24 71:6 80:14 82:17

occurred [1] 19:20
odd [2] 84:11 104:18
oddity [2] 83:23 93:25
offered [1] 39:4
Office [6] 24:4 26:11 66:2 70:1 94:18,19
officer [1] 88:21
official [3] 7:12,25 72:21
often [1] 52:16
okay [26] 12:20 26:14 37:10 41:25 43:14 44:1,2 46:10,14 48:21 52:22 53:3,7 54:3 55:1,10,11 68:25 69:22 84:5 92:14 97:17 101:10,23 102:3,7
once [2] 32:17 43:6
one [26] 33:14 38:2,10 39:11,15 41:3 42:4 43:13 53:15,16 61:14 64:8, 12 67:22 68:3 71:19 77:10 82:4,5, 17 84:7 90:13 92:11 96:9 99:19 102:18
only [15] 7:14 20:13 40:14 42:14 48:14 52:16 80:18 86:23 87:6 88:16 90:24 91:25 97:8,13,14
opening [1] 60:7
operate [1] 15:15
operating [1] 57:23
operative [2] 60:6 74:23
opinion [5] 5:18 75:17 79:14,15 81:7,8 90:23
opportunity [1] 87:14
oppose [3] 48:9,20 102:2
opposed [2] 10:1 20:6
oral [1] 1:14 2:2,5 3:7 26:25
order [27] 6:18,21 10:14,18 14:7 41:10,13,13 49:23 54:11 56:1,1,6 71:7 76:12 81:12 82:17,18,19,21 83:4,5,6 92:22 102:16,17 103:4
ordered [1] 12:9
orders [4] 70:18 71:5 72:22 75:9
Osborne [9] 11:15,25 42:25 49:2, 11,14 53:11,12 67:12
other [10] 20:14 19 21:15,16,20 22:8 27:4,5,12,22 28:11 32:8,24 37:7,19 38:8 40:9,25 46:1,6 47:19 49:14 50:12,13 56:14,25 61:20 65:14 72:1 74:3 76:11 78:2,18,20 86:3 88:2 91:18 92:4 93:4 95:16 96:25 105:1
otherwise [1] 57:9
out [26] 11:18 12:20 13:22 14:13, 19 17:3,6,11,15 22:22 23:7 25:7,8 37:5 50:15 53:11 62:7 68:25 74:25 76:9,19 78:8 89:9 90:15 91:1 96:7
outside [4] 54:4,4,4 70:10 85:13
over [39] 6:7,25 10:19 12:5,9,10,17 23:22,25 25:11 26:11,21 27:19 29:11 30:6,15 32:1 36:7 49:25 54:19 59:5,18 60:16 71:11 76:8 80:11, 11,12,12 82:9 83:3,18 89:20 92:25 95:2,9,20,24 98:3
overall [2] 96:21,23
own [3] 21:23 39:23 72:7

## P

PAGE [6] 2:2 61:11,11,25 64:12 98:18
pages [1] 68:18
paragraph [7] 10:24 61:12 63:14 74:23 90:15 91:17 99:11
paragraphs [1] 68:19
paraphrase [1] 106:16
parcel [1] 5:1
park [2] 19:12,17
part [12] 4:25 20:16 22:8,25 47:25 52:1,1 67:8 77:11 84:25 85:20,24
participant [4] 19:3 22:6 33:8 38:3
particular [4] 7:20 76:1 92:7 103:19
particularized [1] 7:10
particularly [1] 51:5
parties [5] 6:11 9:17 20:2,24 30:2 36:21 75:23
party [5] 20:23 21:6,10,10 29:19
passed [1] 84:16
passing [1] 73:17
past [1] 71:25
paste [1] 16:4
pause [2] 106:15,17
penalty [12] 13:16 14:23 16:18 33:19 42:9 71:21 72:10 80:20 86:17, 19 90:2 93:7
pending [1] 62:12
Pennsylvania [1] 1:19
people [10] 20:21 37:7,20 38:8 51:4 96:20,21 97:8,12,15
perceived [2] 51:23 56:24
perhaps [1] 65:20
period [2] 87:19,20
permit [3] 43:15,16 67:4
permits [1] 41:10
person [11] 21:8 28:9 56:21 64:21 73:20 76:12 77:12 78:3 79:18 84:22 99:22
petition [5] 18:2 22:18 35:2 85:19 94:5
Petitioner [9] 1:4,20 2:4,10 3:8 17:17,20 18:15 105:10
phase [3] 33:19 68:4,10
Philadelphia [1] 1:19
phrase [1] 55:4
pick [2] 63:8 65:2
piece [2] 74:6 86:1
place [1] 96:25
places [1] 91:18
plaintiff [4] 56:9 102:15,24 106:21
plaintiff's [2] 7:12 56:7
plaintiffs [2] 86:3 92:4
plate [1] 56:7
plays [1] 53:11
pleading [3] 25:1 62:5 100:12
please [5] 3:10 39:25 58:19 65:22, 25
plus [2] 13:18 36:10
point [22] 5:17 42:18 45:22 54:11 62:6,7,9 63:9 80:3 81:20 83:22 84:8 85:1,14 87:6,19 89:21 90:11 99:21 101:7 105:21 106:12

pointed [4] 11:18 14:13 89:9 90:15

pointing [1] 88:4

points [4] 42:4 53:10 66:6 90:14

policy [3] 26:10 67:8,9

polygraph [1] 84:14

portion [1] 97:13

posited [1] 56:19

position [10] 12:25 22:23 23:1,9 28:15,22 34:16 35:8 36:22 106:5

possibility [2] 11:5 87:6

possibly [2] 37:2 74:4

post-conviction [1] 3:14

potential [1] 84:13

pounds [1] 29:11

power [2] 10:18 30:16

preclude [3] 15:19 28:11 78:3

preclusive [4] 55:6 75:18 82:15 83:19

preponderance [1] 86:14

preponderance-of-the-eviden ce [1] 64:9

prerequisites [1] 70:14

present [6] 5:20 18:21 38:14 40:25 52:2 87:24

presented [5] 7:6,10,19 15:14 85:17

President [1] 49:24

press [1] 26:18

presumably [1] 12:18

presuppression [1] 88:19

pretty [5] 17:6 63:3 71:9 99:9 104:11

prevail [1] 86:13

prevailed [1] 62:10

prevent [2] 25:22 56:9

preventing [5] 91:10,21 99:22 103:3,13

prevents [2] 63:11 93:6

previous [1] 42:12

previously [1] 16:9

primarily [2] 99:12,15

primary [3] 19:11 67:13 99:18

prior [2] 17:25 48:13

prisoner [1] 3:12

prisoners [1] 4:13

privilege [1] 50:2

probably [4] 50:13 65:6 89:12 99:25

probative [1] 40:16

problem [4] 12:16 35:22 50:18 52:24 56:20 75:17 76:25 77:10 78:21 92:1 104:3

problematic [3] 51:6,7,8

problems [1] 77:10

procedural [22] 12:15 13:17 50:17,18 53:17,22,25 68:13 79:17,18,22 80:6,17,22 81:20,21 90:5,8,12 91:13 104:2 105:14

procedurally [3] 101:18,22 103:2

procedure [6] 11:14 31:14 32:15 49:4 53:14 99:19

procedures [41] 3:13,16,18,24,25 4:11,16 5:3 6:13 12:6 13:25 15:10,

23 17:2 20:17 25:15 34:25 39:4 49:1 63:11,18,24 64:1,18 66:19 79:12,15,18 90:8 91:9,9,25,9 91:9, 25 91:9,14,16,19,20,24 92:2 99:22

proceeding [8] 12:19 53:24 54:1, 5 55:7 76:22 93:17 97:5

proceedings [2] 35:11 72:10

process [45] 4:24 7:16 11:12 12:15 13:17 15:3,8,18 16:18 17:18 26:1 32:19 35:16 42:20 43:20,22, 22 46:7 47:25 49:6 50:17,18 53:18,23,25 63:20 64:1,22 66:1 68:14 70:10 74:20 80:17,22 85:21,24 86:9,25 90:6,9 91:22 94:7 99:24 104:3 106:8

project [2] 81:10,13

project's [1] 81:14

prong [1] 35:25

propelling [1] 27:3

propose [1] 102:15

prosecute [1] 68:14

prosecutor [30] 6:19 12:17 49:9, 19,22 54:11,15 59:5,9 67:1,7,10 68:8,15,21 69:15,17,17,23,24 70:9 72:7,20 73:11,18 74:1 75:3,7 83: 24 87:25

prosecutor's [4] 3:18 54:18 59:1 66:24

prosecutorial [4] 66:11 85:12 94:17,19

prosecutors [1] 67:18

protect [1] 79:19

prove [9] 37:6,19 42:7,8 58:2 86:18 95:12,13 106:21

provide [3] 49:6 53:13 70:19

providing [1] 60:19

provision [8] 15:2 24:20 25:24 39:10 103:13,24 104:1,2

provisions [2] 25:25 31:7

public [1] 72:20

pulling [1] 76:19

purely [1] 83:17

purpose [2] 25:21 40:18

purposes [2] 36:11 73:9

push [2] 79:4 84:4

put [6] 64:18 67:11,23 68:12 74:1 88:11

puts [2] 31:8 88:8

putting [3] 26:7 41:6 66:18

## Q

question [32] 7:6,10,19 12:7 14:10 20:4,8 21:24 26:5 29:8 30:20 43:5 48:22 49:10 52:11 56:5 57:8,20, 25 58:25 60:24 66:22,23 70:5 77: 15 82:5,13 83:17 84:4 87:12 91:7 96:13

questions [15] 5:10 36:25 41:25 45:24 48:5 49:8,18 50:25 53:8 55: 16 60:17

quite [6] 42:21 55:15 65:11 71:22 72:3 101:13

## R

race [1] 25:6

raise [3] 53:24 56:15 105:25

raised [2] 48:22 105:22

raising [1] 21:16

re-articulating [1] 28:3

reach [1] 44:7

reached [1] 65:7

react [1] 49:20

reacting [1] 106:6

reaction [2] 50:6,9

reactions [1] 90:17

read [9] 10:23 63:4,22 64:3,4 65: 19 80:11 92:17 104:20

reading [4] 7:9 91:8 92:20 104:24

real [1] 56:11

really [8] 8:6 11:15 17:24 20:24 21:7 23:24 24:15 44:20 63:8 67: 12 75:19,24,24 79:7 84:19 91:18 96:1 99:9

realm [1] 63:10

reason [7] 3:19,21 4:1 10:25 25:5, 6 44:22 53:2 54:8 64:6 68:6 69:17 73:11 80:5 96:2 102:5 105:19

reasoned [1] 61:13

reasons [4] 4:22 5:7 7:25 14:2 23:13,17,20,25 24:2,3,14 25:10,12, 19 27:11,22 28:25,25 29:4,5 31:4 39:11,15 43:13,21 47:20,25 58:1 61:14 67:22 69:20 95:22

REBUTTAL [3] 2:8 105:8,9

recalcitrance [2] 23:23 30:5

recalcitrant [1] 50:4

receive [1] 14:12

recently [1] 3:11

recite [1] 16:4

recognized [2] 11:16 51:10

recognizes [1] 4:8

record [5] 8:24 16:2,25 19:6 20: 14 21:5 22:4 38:12 44:8 45:25 68: 10 85:22 86:2,24 102:6

record's [1] 101:14

recovered [1] 40:17

redefining [1] 60:1

redress [12] 3:16 5:8 7:12 58:21 59:25 61:8 65:17 75:19 86:12 87: 4 96:11 103:19

redressability [37] 24:22 28:4,7 34:14,19 38:17 47:22 50:5 55:8, 18,22,24 56:5,10,21,23 58:24 73:5, 8,15,22 74:5 75:7,13 76:5 77:3,17 78:5,17,21 79:8,21 81:16 82:11, 22 90:5 94:25

redressable [11] 3:22 27:6 46:5, 15,17 47:4 49:21 55:5 76:14 83:8 106:22

redressed [3] 9:8,11 78:23

reduction [1] 63:18

Reed [64] 3:12 6:23 7:2 8:16,19,23 10:7 12:1 14:22,23 25:10 28:4 73:5, 24,25 27:15,17 28:2,6,16,18,23,25 30:1 34:16 35:12 38:23 49:12,13 54:7,9,24 58:24 59:8 61:10,12,16, 21 62:2,4,5,17,20,20 65:2,10,14 66:6 67:24 77:18 86:3 92:5 94:23,

24 97:23 98:4,23 99:12 100:10 104:20,20,24 105:2 106:14,18

Reed's [3] 3:17 26:23 61:13 99:8

refashion [2] 60:3,10

reference [1] 62:1

refuse [1] 95:9

refused [1] 59:22

refusing [2] 63:15 75:1

reinstated [1] 5:25

rejected [4] 7:3 27:16 60:14 85:19

related [2] 55:24 65:4

release [2] 63:15 75:1

relevant [2] 70:2 94:8

reliance [1] 3:18

relied [2] 26:19 59:9

relief [22] 4:13 7:21 11:9,11 14:12, 24 28:10,12 30:12 46:2 48:14 56: 9,23 76:12 78:4,18,20 96:10 101: 17 103:4,25 105:1

rely [10] 5:8 8:11 12:11 24:5 26:2 27:11 29:3 32:3 67:18 95:10

relying [3] 86:23 103:24 104:1

remain [1] 61:7

remains [1] 22:18

remedied [1] 55:25

remedy [5] 56:2,6 75:3 92:2 102: 20

remember [1] 4:5

removed [1] 39:13

reopen [1] 86:10

reply [1] 60:10

representations [1] 93:4

request [4] 47:2 61:23 66:2 72:13

requested [1] 54:15

requesting [1] 92:22

require [3] 7:9 31:2 78:17

required [4] 21:22 31:13 32:16 34:5

requirement [3] 30:9 86:3 99:13

requirements [21] 21:20 32:7,8 85:9

requires [4] 4:11 6:13 22:13 31:2

res [5] 6:10,15 9:16 29:18 36:20

resisting [1] 95:22

resolve [1] 57:2

resolved [1] 72:12

respect [3] 29:22 64:2 79:12

respectfully [1] 34:3

Respond [1] 23:17

Respondents [12] 1:7,22 2:7 4:1, 23 5:8 6:6 23:21 28:18 58:17 105: 22 106:7

Respondents' [1] 105:18

responds [1] 61:1

response [3] 48:18 55:15 106:10

responses [2] 65:8 85:6,16

rest [1] 106:24

result [2] 103:7 104:5

results [2] 61:17 98:9

rightly [2] 62:7 99:1

rights [5] 20:10 25:23 35:16 79:17, 22

road [2] 50:15,16 83:5

robbery [3] 84:25,25 88:16

**robbing** [1] 89:5
**ROBERTS** [20] 3:3 17:9 29:15 30:7,19 31:11 34:7 39:20 45:19 48:3 53:5 55:12 58:13 93:13 94:22 97:18 100:20 102:9 105:6 107:1
**Rodney** [4] 3:12 10:7 35:12 36:23
**role** [4] 19:25 38:2 52:6,16
**room** [2] 88:8,11
**RUBEN** [1] 1:3
**Rule** [2] 86:8 106:19
**ruled** [1] 69:3
**ruling** [3] 12:6 15:2 17:21

---

**S**

**SAENZ** [4] 1:6 3:5 48:17 59:18
**same** [18] 3:18,21 8:17 22:16 25:5,9 26:3 29:4 35:19 43:20,21 61:20 62:14 65:20 81:6,22 98:15 99:14
**sand** [1] 10:17
**satisfy** [3] 34:13,19 71:8
**save** [1] 75:8
**saves** [1] 75:16
**saw** [1] 8:21
**saying** [36] 15:18,22,23 25:10 26:8 30:5,8 31:3 44:9,14,16 47:13 53:17 58:6,8 64:24,25 65:1 68:13 69:13,16 70:12 72:6,6 73:23 76:18 77:14 78:19,20 82:20,25 86:22 98:15 103:15,17,20,25
**says** [15] 29:10 44:6,20 54:7 61:14 63:15,21 73:18 74:25 90:24 92:21 99:10,11 104:21,22
**Scalia** [1] 81:18
**Scalia's** [3] 79:14,15 81:7
**scheme** [2] 96:22,23
**scope** [7] 16:21 17:24 22:17 60:2,3,10 65:12
**scrapings** [3] 40:2 51:13 52:23
**searching** [1] 4:3
**second** [8] 39:6,9 42:19 48:21 61:16 64:10 92:18 106:12
**section** [3] 22:11,12,13
**see** [11] 6:6 16:2 28:2 30:22 44:16 49:21 68:17 86:11 88:25 96:1 104:1
**seek** [4] 4:13 9:6 10:4,4,6,14,20 14:24 42:5
**seeking** [3] 11:11 28:10 78:4
**seem** [5] 14:16 21:23 58:6 73:23 84:18
**seems** [10] 11:19 27:2 56:4 75:25 80:2 81:1 84:11 90:21 100:2 104:9
**seen** [1] 16:3
**sense** [3] 23:12 66:25 99:10
**sentence** [3] 63:19 88:7 90:1
**sentence-versus-conviction** [2] 63:9 64:11
**sentences** [1] 16:4
**sentencing** [1] 99:17
**separate** [4] 20:8 90:25,25 91:5
**separately** [2] 20:16 25:16
**serious** [1] 29:12
**set** [5] 63:23,25 73:11 78:6 85:9

**sets** [1] 48:25
**setting** [3] 28:2 78:17 101:19
**several** [8] 48:8 59:8 60:21 61:4 62:7,23 92:20
**severe** [1] 48:19
**ships** [1] 73:17
**shirt** [1] 51:14
**short** [1] 6:17
**show** [44] 4:7 9:6 10:13 13:14 14:4 17:4,7 18:22,24 19:2,3 20:21 21:2,5,9 22:5,7,7,13 28:20 32:22,23 33:12,13,23 34:4,5 37:2,12,22,24,25 38:2,5,7,16,16 40:11,12,24 42:15 43:16 44:10 48:16 50:20 106:22
**showing** [1] 33:2
**shows** [3] 20:5 22:1,1
**side** [1] 89:7
**side's** [1] 93:4
**sidetracked** [1] 87:12
**significant** [1] 54:13
**significantly** [2] 59:3,4
**similar** [3] 64:23,25 99:9
**simple** [1] 23:23
**simply** [16] 4:6 6:24 8:6,16 13:19 15:5 16:3,23 24:24 26:21 30:5 36:14 62:22 66:17 106:6,12
**since** [2] 18:13 68:23
**situation** [4] 26:18 27:25 74:2 76:9
**six** [1] 47:19
**Skinner** [10] 11:15 12:1 42:25 49:2,11,15 53:11,12 90:23 104:8
**slapping** [1] 13:19
**sleeper** [1] 104:16
**Slow** [1] 44:1
**small** [1] 75:25
**Solicitor** [1] 1:21
**somebody** [2] 37:14 43:14
**somehow** [3] 28:18 64:20 84:19
**someone** [2] 17:7 22:6
**someone's** [1] 22:5
**something's** [1] 49:21
**sometimes** [1] 70:10
**somewhere** [1] 40:6
**sorry** [8] 8:10 9:1 15:13 25:25 35:25 45:21 52:11 82:2
**sort** [12] 8:20 11:23 13:19 16:3 17:10 27:7 67:3 73:17 76:17 99:20 102:13 104:16
**sorts** [1] 21:16
**SOTOMAYOR** [53] 7:5,8,23 8:5,10 39:21,22 40:1,5,9,19,22 44:5,12,17,19,24 42:2,18 43:4,11,25 44:4,13,18 45:2,8,13,16 48:23 70:5,8,18,21 71:1,3 73:2 82:2 84:3 85:7,11,20 86:6,16 87:5,10,23 88:9,14,22 89:11,13 97:19
**Sotomayor's** [1] 50:25
**sought** [6] 9:25 10:7,10,17 24:7 95:15
**sound** [1] 95:14
**sounds** [1] 101:12
**speaks** [1] 73:25
**special** [1] 79:14

**species** [1] 66:11
**specific** [4] 7:11 61:21 64:14,15
**specifically** [2] 75:14 91:20
**speculation** [1] 59:15
**spend** [1] 84:23
**spent** [1] 84:6
**spot** [2] 44:6,21
**spotty** [1] 101:15
**squelched** [2] 18:2 38:13
**stab** [1] 89:4
**stack** [1] 36:4
**stage** [7] 14:22,23 16:18 25:1 62:6 71:21 100:12
**standard** [2] 8:16 64:9
**standards** [1] 79:21
**standing** [53] 3:12,21 4:4 7:1,9,15,18 8:8,12,15,19 9:24 10:10,17,20 22:20 26:16,22 28:21 29:13,17 30:18 31:1,1,5 34:6,13 35:4 36:1,13 38:17 41:20,22 45:3 50:1 54:8 56:12,21,25 57:20,23,24 62:2 76:4,7 77:16 87:7 102:18 104:10,17 105:19 106:9,23
**state** [53] 7:11 8:24 9:20,21 12:11,14,16,18 13:6 25:22 29:21 30:4 32:17 34:22,22 35:10 36:21 43:1 49:4 52:5,13 54:10,14,17 59:1,8,16,21 61:3 63:18 67:12 72:21 77:2,2,6,8,8,9,25 78:2 82:14 85:3 91:4,4 93:21 96:9 98:7 100:25 101:1,10,12,22,25
**state's** [11] 51:7,8,20 52:5,18 96:19
**stated** [2] 102:23,24
**statement** [7] 19:10 28:1 33:23 44:5 88:8,11 103:5
**statements** [2] 62:24 88:15
**STATES** [2] 1:1,15
**status** [1] 30:2
**statute** [38] 3:14 4:9,10,21 5:2 6:8,14 12:12 13:3,21,21 15:14 20:5 24:1 29:3,19 32:11 36:16,19 44:7 50:19 62:8 76:3 77:4,9,11 78:9 100:6
**statute-of-limitations** [3] 56:19 76:25 77:15
**statutory** [4] 3:25 24:2 58:1 61:4
**stems** [1] 11:15
**step** [1] 39:24
**still** [18] 4:4 11:4 14:11 17:22 21:4,5 29:18 36:17 44:8 45:9 46:17 56:22 61:7 65:15 71:25 72:11 86:9 96:10
**stone-cold** [1] 81:17
**stop** [6] 67:2 81:9,12 84:1
**strategic** [1] 87:17
**strikes** [1] 80:24
**stringent** [1] 99:13
**struggling** [1] 16:16
**submitted** [2] 107:3,5
**subsequent** [4] 22:18 35:1 37:24 38:18
**substantial** [1] 39:8
**substantially** [1] 54:9
**substantive** [3] 31:17 81:9 90:13

**success** [1] 7:24
**successive** [1] 85:18
**sue** [1] 11:23
**sued** [3] 22:20 23:18 35:13
**suggest** [2] 40:10 56:4
**suggesting** [3] 28:7 65:6 98:21
**suing** [1] 35:14
**suit** [2] 53:15 82:23
**summarizing** [1] 15:17
**support** [3] 41:1,2 74:4
**suppose** [8] 11:14 29:8 37:14,15,19 45:24 87:3 94:12
**supposed** [2] 17:3,15
**supposedly** [1] 105:25
**supposition** [1] 59:14
**SUPREME** [2] 1:1,14
**surely** [1] 66:25
**surprised** [1] 55:15
**surprising** [2] 37:16 89:17
**suspect** [4] 17:20 19:11 52:8 71:13
**switching** [1] 106:5
**swore** [1] 36:3
**system** [3] 13:13 48:24,25

---

**T**

**table** [3] 24:9 29:12 61:22
**talked** [1] 63:5
**talks** [1] 61:12
**tapes** [1] 49:25
**TCCA** [7] 14:7,21 15:13 44:5 46:1 90:10 94:2
**tend** [1] 37:12
**terms** [2] 67:24 76:6
**test** [20] 8:16,17,17,20 15:20 16:12 19:23 22:15 28:3,16 36:1 38:10 42:16 84:7 87:18,25 89:24 104:21,25,25
**testing** [56] 3:19 4:1,7,12 5:8,12 6:16 9:7 12:21,23 13:2,23 14:4 31:17 32:10 35:17 39:12,16,16 40:10 41:10 42:5,14,25 43:2,24 45:7 48:9,15,20 50:20,22,24 58:22 59:2 60:9,20,23 63:12,16 64:21 67:15 75:2 76:2 77:13 78:19 85:5,10 87:15 89:24 91:10,14,21 99:23 101:11,23
**Texas** [25] 1:22 3:11,14 4:12 8:7,9 14:2 15:23 20:5,11,12 21:25 23:1 31:13 32:18 36:8 39:4 41:9,21 47:15 48:9 53:13 65:4 85:8 95:23
**Texas's** [1] 33:15
**theory** [30] 3:7 33:15 51:7,8,20 52:5,18,25 57:22 73:4 78:5,11,21 82:1 82:1 85:4 88:18 93:10 96:19 104:11 105:14
**there's** [24] 18:12 31:16 42:19,25 45:22 47:17 49:5 52:8 63:23 64:6,16 66:4,5,7 68:9 70:1,8 79:16 81:23 83:8 85:12 93:23 98:5 99:19
**thereby** [1] 59:3 62:10
**therefore** [1] 83:6
**they've** [2] 12:23 88:5

thimbleful [1] 17:13
thin [1] 76:20
third [2] 49:8 59:23
THOMAS [27] 5:11,23 6:3,17 31:
12,13,18,23 32:5,14,20 33:5,12,20
34:2 36:25 41:8 42:23 48:22 60:
18,25 93:15,16,25 94:6,10,21
Thomas's [1] 66:6
though [12] 13:19 14:18 22:23 30:
20 35:6 62:19 71:16 87:12 89:21
91:24 92:10 101:7
Thoughts [1] 14:25
thousands [2] 19:16,18
three [7] 88:15 89:22 96:20,21 97:
8,12,15
three-year [1] 87:20
threshold [2] 33:2 56:12
throughout [2] 68:17 105:16
thrust [3] 29:7 79:11 87:9
tie [1] 24:21
tied [2] 23:13 84:18
tiny [1] 17:13
today [2] 65:16 92:6
together [1] 64:18
took [3] 34:16 59:16 96:8
tool [2] 27:10 35:10
tooth [2] 84:9,11
top [1] 89:7
top-side [2] 66:15 88:4
totally [1] 49:14
touched [1] 48:23
touching [1] 89:19
towards [2] 67:1 69:7
traceability [1] 35:22
track [7] 68:7,8 69:14,15,23,23,24
traditionally [4] 28:4 73:13,13 76:
5
trailer [6] 19:12,17 51:5,9,24 52:19
transpired [1] 51:23
trial [20] 16:24 17:6 18:13 19:24 21:
19 36:10 47:15 52:5,13,19 71:10
86:24 87:15,24 88:19 95:18 97:4,
7 98:7 101:12
tried [4] 10:4 20:1 49:12 59:17
true [3] 33:24 44:9 61:10
truth [1] 79:16
try [2] 26:10 70:6
trying [10] 24:8,21 25:7 39:22 44:1,
2 47:5 54:6 73:4 104:19
turn [22] 6:7,24 10:19 12:5,9,10 23:
25 25:11 27:19 30:6,15 32:1 36:7
49:25 71:11 82:9 83:3 95:2,9,20
96:7 106:23
turned [3] 12:17 17:20 95:24
turning [3] 23:22 26:21 29:11
turnover [1] 94:15
turns [2] 58:25 74:9
twice [2] 14:21 60:16
two [19] 16:4 18:22 19:15 37:24 40:
15,25 42:4 43:12,15,19,21 61:14
64:7 65:8 66:5,7 88:14 92:15 105:
25
two-page [1] 48:18
types [2] 18:23 38:14

typically [1] 104:11

## U

U.S.C [1] 94:5
ultimate [1] 80:14
ultimately [3] 32:21 34:4 103:25
unable [1] 96:10
unaffected [1] 59:11
unconstitutional [28] 3:16,24 5:2
8:1 12:7,12 23:6,14 24:3 25:2,5,6,
12 26:1,3 29:20 31:8,9 34:10,25
35:19 36:17 42:12 74:20 80:16 93:
11 99:14,16
unconstitutionally [1] 15:15
under [38] 4:20 5:1 6:7 13:3,12 20:
1 21:25 28:23 32:10 33:2 35:11
40:2 41:20 42:13 47:11 48:10 52:
23 53:2 56:17,18,21,23 58:24 61:
3 62:8 67:13 70:12 76:8 78:5,20
82:16 83:17 86:8 89:13 90:3,21
94:5 95:24
undergird [1] 11:20
underlying [3] 13:15 79:12 80:19
undermines [1] 51:22
understand [26] 16:16 21:12,14
22:21 24:23 26:17 38:19 39:18 54:
6 66:22 71:15 72:5 73:4,7 74:6 76:
4 77:22 90:11,19 94:10,24 95:4
97:22 98:4 99:7 102:14
understanding [6] 23:11 48:8 54:
20 57:7 66:23 96:17
understood [6] 27:7 28:5 55:23,
23 56:10 79:10
Undue [8] 46:12,21 47:6,17 56:25
57:10,12,17
unfair [2] 84:4 90:10
UNITED [2] 1:1,15
universe [1] 56:8
unless [1] 74:2
Unlike [1] 59:7
unsettle [1] 89:1
until [1] 46:21
unusual [1] 49:12
up [18] 14:6 24:21 28:2 40:23 46:7,
13 48:25 53:9 58:3 63:5 64:12 66:
13 68:16 78:11,17 100:7 105:20
106:7
upfront [1] 57:3
upheld [1] 59:23
uphold [1] 6:5
using [4] 63:17 74:20 95:11,12
Utah [1] 8:18
utilize [1] 39:3

## V

vacated [1] 101:2
value [2] 94:24 105:3
various [1] 62:8
vary [1] 94:18
version [12] 4:20 5:2 6:8,12 13:3
27:12 29:3 32:11 36:18 42:13 43:
7 47:11
versus [3] 3:5 8:18 75:23
victim [2] 37:18 40:3

view [3] 76:9 81:21 102:14
vindicate [5] 5:4 6:14 10:13 15:11
16:12
violate [1] 25:23
violated [3] 26:1 35:16 81:2
violates [2] 53:17 80:21
violation [15] 4:24 15:4,8 20:10 43:
20,22,23 46:8 48:1 63:19 68:14
80:17 86:24 91:22 99:23
violative [2] 64:1,21
voluntary [1] 89:2

## W

wanted [2] 39:16 89:23
wanting [1] 73:6
wants [4] 75:3 90:13 91:13 104:6
Washington [1] 1:10
watching [1] 89:4
way [33] 8:21 9:24 14:19 16:13 24:
23 25:5 30:22,22 34:11,25 39:1
42:22 49:14 50:5 55:4,17 57:3,11
58:11 61:20,22 63:3 65:20 66:7
73:14 74:13,17 81:22 97:12 98:15
99:14 102:25 104:17
ways [4] 25:22 43:23 66:5,7
wealth [1] 44:19
weapon [1] 35:20
weeks [1] 19:15
weight [1] 17:12
welcome [2] 5:10 60:16
whatever [4] 30:24,25 73:20 102:
5
whatsoever [2] 34:12 35:6
Whereupon [1] 107:4
whether [31] 4:19 7:11,20 13:2 14:
22 15:10 20:4,9 21:24 22:24 28:2
38:23 42:15 54:18 55:25 56:1,5,7
57:17 58:25 60:25 67:4 71:20 76:
11,13 82:13 83:15,17 84:7 92:12
104:12
who's [2] 13:23 17:3
whole [3] 25:21 63:10 81:7
wholly [1] 68:16
will [23] 3:3 7:12 15:25 16:12 22:4
27:18,19,20 28:9 32:25 33:1 49:
19 56:6 58:3 59:25 65:21,25 75:
21 82:9,20,21 83:2,4
WILLIAM [3] 1:21 2:6 58:16
win [17] 6:2 33:4 34:4 38:18 42:2,3
50:19,22 58:4 79:25 106:21
winning [1] 80:22
withholding [1] 92:23
within [3] 15:10 24:1 75:14
Without [3] 6:21 49:13 79:20
won [2] 12:14
wondering [1] 38:20
words [4] 16:22 27:4 30:1 61:20
work [6] 50:3 93:17 94:7,11 98:14,
16
works [2] 66:1 94:9
world [3] 64:19 75:5 104:10
worried [2] 27:8 57:4 75:24
wow [1] 64:18
wrapped [2] 46:7,13

written [1] 28:23
wrote [1] 48:18

## Y

years [2] 38:22 48:8
yep [2] 40:21 51:17